# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

HALEIGH K. MCLENDON,                          )
                                              )
      Plaintiff,                           )
                                              )
v.                                            )
                                              )
UNITED STATES TENNIS                          )
ASSOCIATION INC., USTA                        )
PLAYER DEVELOPMENT INC.,                      )
GRASSROOTS TENNIS ASSOC.,                     )
LLLP, IN DEPTH ACADEMY,                       )
DOROTHEA L. JOYNER, LEROY                     )
THOMAS JOYNER, Jr., and                       )
Fictitious Defendants "A", "B", "C"           )
and "D", whether singular or                  )
plural, those other persons,                  )
corporations, firms or other entities         )
whose wrongful conduct caused or              )
contributed to cause the injuries             )
and damages to the Plaintiff, all of          )
whose true and correct names are              )
unknown to Plaintiff at this time,            )
but will be substituted by                    )
amendment when ascertained,                   )

      Defendants.

---

## AFFIDAVIT OF DOROTHEA JOYNER

---

## MUSCOGEE COUNTY, GEORGIA

Pursuant to 28 U.S.C. §1746, I hereby declare as follows:

1.

I am over the age of 21 and suffer no legal disabilities which would render me legally incompetent to give this affidavit.

2.

The facts set forth herein are based upon my personal knowledge of same and are true and correct.

3.

I am a resident of Columbus, Muscogee County, Georgia.

4.

On September 24, 2004 Leroy Thomas Joyner, Jr. and I were married in the State of Louisiana. A copy of the Certificate of Marriage is attached. **[Exhibit A]**

5.

In 2011 Leroy and I moved to Ariton, Alabama with our three daughters, renting an office and apartment located at 17 West Main/18 Atlantic Road. In 2015 we relocated the entire family to Columbus, Georgia. My youngest daughter Caylin and I moved first while Leroy and the two others daughters remained in Ariton.

6.

Upon moving to Columbus, Caylin and I lived at Woodspring Hotels located at 1801 Victory Drive. I also worked full time at Woodspring. **[Exhibit B]** My middle daughter Jaida Edley moved to the hotel with us sometime in October 2015.

7.

I obtained a Georgia's Driver's License in 2016. **[Exhibit C]**

8.

On November 1, 2016, I entered into a lease for the residence located at 1016 Peachtree Drive Columbus, Georgia 31907 for our family. **[Exhibit D]**

9.

In 2018 Leroy and my oldest daughter Spirit relocated from Ariton, Alabama to Columbus, Georgia. From 2018 until 2024, Leroy and I lived at 1016 Peachtree Drive, Columbus, Georgia as husband and wife with our daughters.

10.

In June 2020, after Leroy was charged and arrested for federal criminal offenses in United States District Court for the Middle District of Alabama. He was released from pre-trial detention and allowed to return to the home we shared on Peachtree Drive in Columbus while awaiting trial. Leroy continuously lived at 1016 Peachtree Drive from 2018 until his conviction in January 2024.

11.

After 2018, the office and apartment at 17 West Main/ 18 Atlantic Road in Ariton in Ariton were vacant until it was sold in 2021, after which we no longer had access to its premises to live or work. **[Exhibit E]**

12.

Since 2015 I have been, and continue to be, a citizen of the state of Georgia. My domicile is the state of Georgia.

13.

Since 2018 my husband Leroy has been a citizen of the State of Georgia. Not only was he physically residing in Georgia, he intended to permanently remain in Georgia. During that time, we lived together continuously in Columbus as husband and wife until his conviction in January 2024 and incarceration with the U.S. Bureau of Prisons.

14.

During my husband's two-day criminal trial in the United States District Court, Middle District of Alabama, Plaintiff's mother Shajuana L. McLendon drove Mr. Joyner to Dothan daily for trial.

15.

Between 2020 and 2024, Ms. McLendon also drove Mr. Joyner to scheduled pre-trial hearings. Sometimes she would pick him up from Peachtree Drive and other times I drove him to Eufaula where we met Ms. McLendon and she would drive him to Dothan and Montgomery, Alabama.

16.

I provide this declaration in support of the Removal Petition filed by defendants United States Tennis Association, Incorporated and USTA Player Development, Incorporated in the above captioned case.

17.

I consent to the removal of the above captioned case from the Circuit Court of Barbour County, Alabama to the United States District Court for the Middle District of Alabama.

18.

I declare under penalty of perjury that the foregoing is true and correct.

**FURTHER DECLARANT SAYETH NOT**

Executed on this the _4th_ day of September, 2025.

_Dorothea Joyner_
Dorothea Joyner

Sworn to and subscribed before me this _4th_ day of September, 2025

_Debra A. Kinder_
NOTARY

# Certificate of Marriage

## State of Louisiana, Parish of Jefferson

This is to certify that I the undersigned officiant, __VERNON J. WILTY, III_____, a

__JUSTICE OF THE PEACE_____, by virtue of the license duly issued by Jon A. Gegenheimer, Clerk of Court for the Parish of

Jefferson did on this __24TH__ day of __SEPTEMBER__, 20_04__, A.D., at __4:15_ o'clock _P_.M. unite in

## Holy Bonds of Matrimony

__LEROY THOMAS JOYNER, JR._____          __DOROTHEA LEE LATHAM_____
### Groom                                                    Bride

In testimony whereof I have caused the said parties with myself and two legal Witnesses, to sign these presents, the day and date aforesaid.

**Witnesses:**                                           **Parties:**

_____          _____
Signature of Witnesses                                Signature of Groom

_____          _____
Signature of Witnesses                                Signature of Bride

_____
Signature and Title of Officiant (Priest, Minister, Other)


EXHIBIT
A
ALL-STATE LEGAL®

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 069 |
|-----|------|-------|-------|-----------|-----|
| E4Z | 711123 | 188012 | | 0000330316 | 1 |

# Earnings   Statement



| Period Beginning: | 07/30/2016 |
|---|---|
| Period Ending: | 08/12/2016 |
| Pay Date: | 08/19/2016 |

**WOODSPRING HOTELS** | 8621 E 21st Street North
Suite 250
Wichita, KS 67206

DOROTHEA  LEE  JOYNER
1801  VICTORY  DR
COLUMBUS  GA  31901

Taxable Marital **Status:**   Married
Exemptions/Allowances:
Federal:          4
GA:                 1

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 1826.92 | | 1,826.92 | 12,441.52 |
| Ltd Er | | | 4.75 | 4.75 |
| Std Er | | | 6.46 | 6.46 |
| Overtime | | | | 734.03 |
| Bonus | | | | 200.00 |
| Worked Holiday | | | | 406.05 |
| **Gross Pay** | | | **$1,838.13** | 13,792.81 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Group Term Life | 2.08 | 2.08 |
| Blife Ax01 | | 2.54 |
| Ltd | | 4.75 |
| Std | | 4.75 |
| Pto Balance | | 6.16 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -97.57 | 110.56 |
| | Social Security Tax | -114.09 | 855.28 |
| | Medicare Tax | -26.69 | 200.03 |
| | GA State Income Tax | -84.95 | 402.90 |
| | **Other** | | |
| | Ltd Er | -4.75 | 4.75 |
| | Std Er | -6.46 | 6.46 |
| | **Net Pay** | **$1,503.62** | |
| | Checking Acct 1 | -1,503.62 | |
| | **Net Check** | **$0.00** | |

**Important Notes**
YOUR RATE HAS BEEN CHANGED FROM 10.0000 PER HOUR
TO 1,826.92.

Your federal taxable wages this period are
$1,840.21

©2000 ADP, LLC



**WOODSPRING HOTELS** | 8621 E. 21st Street North
Suite 250
Wichita, KS 67206

| Advice number: | 00000330316 |
|---|---|
| Pay date: | 08/19/2016 |

Deposited to the account of

DOROTHEA  LEE  JOYNER

| account number | transit ABA | amount |
|---|---|---|
| xxxxxx4019 | xxxx xxxx | $1,503.62 |

## NON-NEGOTIABLE

DRIVER'S LICENSE

Georgia

DL NO.
CLASS C
DOROTHEA LEE
JOYNER

1801 VICTORY DR
COLUMBUS, GA 31901-3444
MUSCOGEE
Restrictions B          End NONE
Iss  08/27/2016

DOB
EXP 11/08/2024

Sex F      Eyes BRO
Hgt 5'-04"  Wgt 160 lb

DD : 281905594640049600

EXHIBIT

C

ALL-STATE LEGAL®



### *Flournoy & Calhoun Realtors*
### 2520 Wynnton Road, Columbus, GA 31906

#### Occupancy Agreement

THIS AGREEMENT, made and entered into this **1st day of November, 2016** between Flournoy & Calhoun Realtors, located at 2520 Wynnton Road, Columbus, GA 31906, of the first part, hereinafter called "Landlord" and **Dorothea Joyner** called "Resident" it being understood and agreed that the word "Landlord" wherever mentioned herein shall embrace and include the heirs, executors, administrators, successors and assigns of the owner.

WITNESSETH: That in consideration of the mutual covenants herein contained the Landlord has rented to the **1016 Peachtree Drive Columbus, Georgia 31907**

1.  **TERM:** The initial term of this agreement shall be **12** months, beginning at 12:00 noon **November 1st, 2016 and ending at 12:00 noon October 30, 2016**

2.  **POSSESSION:** If there is a delay in delivery of possession by Landlord, rent shall be abated on a daily basis until possession is granted. If possession is not granted within (7) days after the beginning day of initial term, then Resident may void this agreement and have a full refund of all monies paid. Landlord shall not be liable for damages, for delay in delivery of possession.

3.  **RENT:** The total rent under this agreement shall be **$7,800.00** payable in equal monthly payments in advance without demand notice in the amount of **$650.00 payable by personal check, cashier's check, money order or an online ACH deposit**, the first full monthly payment being due on or before the **1st day of December 2016**, and continuing on or before the first day of each successive month thereafter until this agreement is terminated as provided herein. **Landlord will not be responsible in any way for payments dropped in the night drop box that aren't made payable to Flournoy & Calhoun Realtors.**

    **The pro- rated rent for the month of November will be $0**

Rental payments will be accepted in the office Monday thru Friday 9:00 to 5:00. Payments made after hours or on weekends may be dropped through the mail slot in the rental department door. Any payments dropped off in the night slot must be made payable to Flournoy & Calhoun Realtors. Landlord will not be responsible in any way for payments dropped in night drop box that aren't made payable to Flournoy & Calhoun Realtors.

**PARTIAL PAYMENTS:** Resident shall make all rental payments in full. Payment or receipt of a rental payment of less than the amount stated in the lease shall be deemed nothing more than partial payment on that month's account. Under no circumstances shall Landlord's acceptance of a partial payment constitute accord and satisfaction, nor will Landlord acceptance of a partial payment forfeit Landlord's right to collect the balance due on the account, despite any endorsement, stipulation, or other statement on any check.

Any modification to this lease must be made in writing signed by the Landlord, in which the Landlord states and agrees to the modification. The Landlord may accept any partial payment check with any conditional endorsement without prejudice to his/her right to recover the balance remaining due, or to pursue any other remedy available under this lease.

1

4. **LATE PAYMENTS & RETURNED CHECKS: Time is of the essence of this agreement and if Landlord elects to accept rent after the fifth of the month, a late charge of Fifty Dollars ($50.00) will be assessed. Rentals over $750.00 a month will have a $75.00 late fee.** Late fees are used as additional rent for liquidated damages to cover the extra expenses involved for bookkeeping and clerical services. A dispossessory warrant will be issued after the ninth of the month. In the event the Resident's check is dishonored by Resident's bank, Resident agrees to pay Landlord $40.00 or 5% of the amount of the check, whichever is greater as a handling charge, and if appropriate, the late charge as specified above. Cashier's check, certified check, or a money order must be used to redeem returned checks and to pay delinquent rent. In the event more than one check is returned, Resident agrees to pay all future rents by cashier's check, certified check or money order.

5. **SECURITY DEPOSIT:** Resident agrees to **deposit $900.00** with Landlord before taking possession of the premises as security for Resident's fulfillment of the conditions of this agreement. Said security deposit shall be deposited in an interest bearing trust account, at Columbus Bank &Trust (CB&T) Columbus, Georgia, Account Number 2386658 accrued interest going to Flournoy & Calhoun Realtors. **The deposit will be returned to Resident within thirty (30) days after premises is vacated if:**

    a) Term of agreement has expired; and
    b) All monies due Landlord have been paid; and
    c) Premises are not damaged and are left in its original condition, normal wear and tear accepted.

   Deposit may be applied by Landlord to satisfy all or part of Resident's obligations, and such act shall not prevent Landlord from claiming damages in excess of the deposit. Resident agrees that the deposit is not to be applied to any rent payment, and also agrees to pay the cost of re-keying locks if all keys are not returned. Resident acknowledges that he or she was given a list of any existing damages to premises prior to signing the security deposit was given the right to verify existing conditions prior to signing said list, and has approved said list except as previously specified in writing to Landlord.

6. **SPECIAL CHARGES:** All special or different charges which are inclusive of, but not limited to, late fees, pet fines, and damages to premises, shall be payable at the time that the next rental payment is due. Rent shall, at the discretion of Landlord, not be acceptable unless all special charges are paid in full. Failure to include special charges in rental checks or money orders may result in a late fee should Landlord have to return such instrument to Resident.

7. **ESCALATED CHARGES:** The monthly rental amount agreed to in paragraph 3 of this contract is based on the condition of the premises as stated in the "move in/ move out addendum. If the Landlord is required to make any additions, improvements, or repairs during this term or subsequent term of this rental agreement by any governmental authority or otherwise, Landlord reserves the right to increase Resident's monthly rental amount. Landlord is required to notify Resident of increase in writing.

8. **RENEWAL TERM:** Either party may terminate this agreement at the end of the initial term by giving the other party thirty (30) days written notice prior to the end of the term, but if no notice is given, then the agreement will be extended on a month-to-month basis with all terms remaining the same until terminated by either party upon thirty (30) days written notice. In this case Landlord must give tenant 60 days written notice to vacate at any time of any given month. **If 30-day notice given by tenant is given on any other day than the 1st of the month, then the running of the 30 days shall commence on the 1st day of the following month.**

9. **TERMINATION:** The normal termination of this agreement will be executed only after fulfilling the terms listed in paragraph 8 above. The Resident may be subject to early termination if Resident breaches any of the terms of this lease. When it is deemed that the Resident has breached his or her lease, Landlord

2

may send notification to Resident, specifying the terms of the early termination. The amount of time Resident will have to vacate the premises may range from 24 hours to 3 weeks, depending on the severity of Resident's breach. Landlord can only rely on complaints and information given with regards to Resident's breach and will not be responsible for providing conclusive evidence to Resident. Failure of Resident to vacate at the designated time may result in legal action, which may result in an eviction through county marshals, or sheriff's deputies. ___ / ___ / ___ **(Initial)**

**10. SUBLET:** Resident may not sublet premises nor assign this agreement without written consent of Landlord.

**11. FIRE DAMAGE:** In case the building, of which the rented premises form a part, shall be damaged by fire or other casualty not due to Resident's act or negligence, and shall not substantially destroy the building, then the premises shall be repaired with due diligence by the Landlord or his agents, and a just portion of the rent shall cease until such repairs are completed and the building ready for occupancy; but in case of damage or destruction such as to substantially destroy the building so that same cannot be fully repaired within sixty (60) days, then in that event this contract shall terminate, and any unearned rent paid in advance by Resident shall be refunded. In event of disagreement as to the exact extent of the damage or the amount of rent that should be paid, the differences arising shall be submitted to two disinterested arbitrators, one to be selected by each party, and should these two be unable to agree they shall select a third; the decision of the majority of said arbitrators, on the issues submitted, to be final.

**12. SMOKE DETECTORS:** Tenant is responsible to ensure that the smoke detector is not tampered with and that batteries are kept in the detector. Also, Resident is responsible for informing management of any problems with the smoke detector.

**13. HOLD OVER:** Resident shall deliver possession of premises in good order and repair to Management upon termination or expiration of this agreement. Should Resident continue in possession of the premises after having been duly notified by Landlord of the termination of this agreement, Landlord shall use appropriate legal means to obtain possession.

**14. RIGHT TO ACCESS:** Landlord shall have the right of access to premises, without notice, for inspection and maintenance during reasonable hours. In case of emergency, Landlord may enter at any time to protect life and prevent damage to the property. Where Resident has given notice to vacate, Landlord will be permitted to show the premises to others during reasonable hours. Where Landlord has instructions to sell the property, Landlord shall have the right of access to the property to show to prospects. Landlord will attempt to notify Resident of showing the property; however Landlord will be permitted to show the property without the consent of Resident. Should Resident not be at home, Landlord has the right to show the premises in the absence of Resident. If resident has an alarm, Resident must give Management alarm code or disarm the alarm as to allow Management free and uninterrupted access for whatever reason. In which case Management is denied access to the property while attempting to show to a prospective renter or buyer, **Resident will be charged a fee of $250.00 each time access is denied.** If residence is an apartment, Resident will grant access to "Pest Control Personnel" on a regular monthly schedule for pest control service. If Resident is not home, a passkey will be used to provide service.

**15. USE: Premises shall be used for residential purposes only and shall be occupied only by the persons named in Resident's application to lease, except in instances of additions to the family through birth or adoption.** If such addition to the family creates overcrowding, Resident may be required to accept a larger property or move. Resident will not display any signs on the premises. Property shall be used so as to comply with all State, County and Municipal laws and ordinances. Resident shall not use premises or permit it to be used for any disorderly or unlawful purposes, or in any manner so as to interfere with other Resident's quiet enjoyment of their property, nor use the same, or any part thereof, or permit the same, or any part thereof, to be used for any other purpose than as above stipulated, nor make any alterations therein, or additions thereto, without the written consent of the Landlord; and all additions, fixtures, or

3

improvements which may be made by the tenant, except movable household furniture, shall become the property of the Landlord; and remain upon the premises as a part thereof, and be surrendered with the premises at the termination of this contract.

16. **PROPERTY LOSS**: Landlord shall not be liable for damage to Resident's property of any type for any reason or cause whatsoever, except where such is due to Landlord's negligence. **Resident shall be responsible for obtaining fire, extended coverage, and liability insurance with respect to the premises and contents. (Tenant Homeowners Policy)**

17. **PETS**: No pets, birds, fish or animals of any kind allowed without written consent of Landlord. The fine for unauthorized pets will **be $250 per incident**.

18. **INDEMNIFICATION**: Resident releases Landlord from liability for and agrees to indemnify Landlord against all losses incurred by Landlord as a result of:

    a) Resident's failure to fulfill any condition of this agreement;
    b) Resident's failure to comply with any requirements imposed by any government authority; and
    c) Any judgment, lien or other encumbrance filed against premises as a result of Resident's action.

19. **FAILURE OF MANAGEMENT TO ACT:** Failure of Landlord to insist upon strict compliance with the terms of this agreement shall not constitute a waiver of Landlord right to act on any violation.

20. **REMEDIES CUMULATIVE:** All remedies under this agreement or by law or equally shall be cumulative. Upon failure of said Resident to keep any covenants herein, or in the event of insolvency or bankruptcy of tenant, this contract may be terminated immediately at the option of the Landlord, and said Landlord, or said Agents, shall have the right of resuming and retaking possession of said premises without delay, and to collect all rent due hereunder. Resident hereby waives and renounces for himself and family any and all homestead and exemption rights he or they may have or be entitled to under or by virtue of the laws of the State of Georgia, or the United States as against any liability that may accrue under this contract. Landlord reserves the privilege of putting a sign "FOR SALE" on said rented premises at any time, and of putting a sign "FOR RENT" on said property thirty days before the termination of this contract. The rights of the Landlord as herein set forth are merely commutative of the rights provided by law, and the provisions hereof shall not in any way constitute a waiver of such rights.

21. **NOTICES:** Any notice required by this agreement shall be in writing and shall be deemed to be given if delivered personally or mailed by certified mail to Management **2520 Wynnton Road, Columbus, GA 31906**, and to Resident at the premises. Either party may from time to time, in the same manner, notify the other where such notices shall be sent. If any of said premises are neglected, damaged or in an abused condition, Landlord may terminate this agreement.

22. **UTILITIES:** Resident shall pay all utilities and garbage fees on said property unless otherwise noted. Upon vacating said premises, Resident shall notify the respective utility companies to discontinue service

23. **RELATIONSHIP:** This agreement shall create the relationship of Landlord and Resident; no estate shall pass out of Landlord; Resident shall have only a usufruct, not subject to levy and sale and not assignable by Resident except by Landlord's consent.

24. **MAINTENANCE & UPKEEP**: Resident accepts property in "as is" condition as suited for the use intended. Resident understands and agrees that the premises, equipment and fixtures will be under the control of Resident and agrees to keep said premises together with the fixtures therein, in a clean, sightly, and sanitary condition.

4

a) **Yard-** Resident understands that the yard must be maintained in good condition at all times and the grass kept cut as needed excluding multi-family units. All flowerbeds must be kept free of weeds and must have the appropriate base (pine-straw or mulch) maintained. All plants, bushes and small trees shall be pruned accordingly. The yard must be kept in a neat condition, and must be treated with weed killer and fertilizer as to maintain acceptable standards of appearance. Resident further agrees to keep rooftop and drain gutters free & clear of leaves and debris to ensure proper flow. (Single Family Homes Only) Residents of multi-unit apartments must keep their designated area clean and free of any clutter.

b) **Automobiles/Parking-** Resident agrees to abide by the parking regulations established by Landlord. Parking is not permitted on any areas in which grass can grow. There shall be no automobile repairs performed except the prompt changing of tires and spark plugs. Resident further agrees not to have automobiles on the premises that are inoperable or wrecked, which would detract from the image of the property.

c) **Electrical-** If Resident experiences a power outage of any kind, Resident must first check the circuit breaker or fuse box before calling the Landlord. Tenant is responsible for replacing blown fuses or re-setting breaker. If an electrical problem is not corrected by re-setting the breaker or replacing a fuse, resident must then notify the Landlord. Note: If the need for re-setting the breaker or replacing of a fuse seems to be continuous, resident must cut off the power supply and notify Landlord immediately.

d) **Plumbing-** If there is a cut-off or drain for waterworks on said premises, Resident shall familiarize him or herself with cut off, in cases of leaks or busted water pipes. Resident shall notify Landlord in writing if cut-off and drains are not in working order. Resident also agrees to make sure water lines do not freeze in cold weather by keeping homes adequately heated and letting faucets or other outlets drip or run accordingly. Resident also agrees (at his/her own expense) to keep all drains and plumbing fixtures clear and free from blockage.

e) **Appliances –** For appliances that Landlord provides & warrants, all **servicing of these appliances will take place during normal business days & normal working hours.** In the case of a refrigerator malfunction, tenant shall use due diligence regarding perishables by temporarily using a cooler & ice, or other means so that no food or drink shall spoil. ***Landlord is not responsible for any losses regarding refrigerator outages.*** In the case of electrical appliances in which Resident feels may be unsafe, Resident must shut off power to the appliance by way of the breaker or simply unplug (if possible) the appliance & notify Landlord. Landlord is not responsible for washers, dryers, hoses or other accessories. Tenant should keep traps and hoses free of lint whether the dryer is furnished or not furnished as it poses a fire hazard.

f) **Locks/Lockouts-**If Resident locks keys in apartment or home and calls Landlord during workweek between the hours of 9:00 a.m. to 4:00 p.m., **Landlord will open the door for a $35.00 charge.** If Resident locks keys in apartment or home after these hours or on a weekend, Resident must call a locksmith to re-gain entry.

    i. Note: Most locks can easily have a lifespan that is over 15 years. If a service call is made and a locksmith determines that neglect or abuse took place or that Resident merely needed entry to apartment or house, Resident will be charged for the cost of the locksmith invoice.

g) **Filters-** Resident agrees to change furnace and air conditioning filters once every (60) days.

    i. Resident also agrees to change the vent hood filters as needed.

**Other-** Resident agrees that he/she will also keep all bulbs replaced in light fixtures.

**25. REPAIRS:** Landlord will make necessary repairs to the home or apartment with reasonable promptness after receipt of written notice from Resident. It shall be the duty of Resident to report any and all defects existent on the property so that repairs can be made by Landlord. If repair is an emergency, Resident must call Landlord at **(706) 323-2331** to arrange for maintenance and Resident must remain at his/her home or apartment, as to ensure entry for maintenance personnel. If repair is due to damage or neglect by Resident, then Resident will be charged as additional rent the cost to repair (See special charges). If Resident calls for maintenance and serviceman or contractor deem that there is in fact no problem with the systems or otherwise, Resident will be assessed for the cost of the service call. Resident may not remodel or structurally change apartment or home, nor remove any fixture therefrom.

5

**26. DAMAGES TO PREMISES: Resident will be responsible for the breakage of, or damages to all glass, windows, doors, walls, floors, ceilings, and fixtures of the subject premises, and any secondary damage to the premises resulting from such breakage or damage.** Landlord will be responsible for only breakage by landlord or its employees, contractors or agents. Resident may be responsible for property damage resulting from "break ins". Resident shall replace any broken or damaged items, or Landlord may replace it and charge back reasonable costs to Resident. Resident will be responsible for any and all damage to property resulting from Resident's failure to report defect or needed maintenance. Any replacement or repairs made by Resident must have prior written approval from Landlord.

27. **HOSTILE STATE:** Landlord encourages Resident to work amicably with members of Landlord, and maintenance personnel with regard to all issues related to the premises and any situations that may arise. If Resident engages in abusive language or becomes hostile in nature as to disrupt the normal lines of communication, Landlord reserves the right to terminate this lease agreement.

28. **MORTGAGEE'S RIGHTS:** Resident's rights under this lease shall at times be automatically junior and subject to any deed to secure debt which is now or shall hereafter be placed on premises. If requested, Resident shall execute promptly any certification that Landlord may request to specifically implement the subordination of this paragraph.

29. **DEFAULT BY RESIDENT:** Any breach or violation of any provision of this agreement by Resident or any untrue or misleading information in Resident's rental application shall give Landlord the right to terminate this agreement immediately, upon written notice of the election of Landlord to so terminate, whereupon, Resident agrees to immediately deliver possession to Landlord. Failure to immediately deliver possession upon demand caused by such breach shall authorize Landlord to remove Resident through dispossessory proceedings, with court costs and attorney fees to be assessed to the party failing to carry the burden of proof in such proceedings. Rent shall be paid by Resident in such circumstances through the date possession is delivered to Landlord.

30. **ABANDONMENT: In the event Resident shall abandon premises without terminating this contract in the manner provided, Resident hereby agrees to pay Landlord as liquidated damages for such breach, an amount equal to the rent which he would have been required to pay under the remaining term of this contract.** Resident hereby agrees that Landlord has the right to reenter the premises as at the end of the last rent period for which rent has been received for the purposes of preparing the premises for rent to others. If Landlord secures a new Resident before the expiration of the above term, the obligation to continue rent payments under this clause will cease on the effective date of a new contract procured by Landlord.

31. **RENTAL PERIOD:** The established monthly rental covers a period of the first through the end of the month. Therefore if a thirty-day notice is given after the first day of the month to terminate this lease, said thirty days will count from the first day of the month next following date of notice, requiring a full month's rent to be paid on the first of said month even though Resident is giving up the premises prior to the end of said month.

32. **CHECKOUTS: A notice to vacate shall be in written form only.** When Resident fully vacates he or she must turn all keys back over to Landlord with a forwarding address and a daytime telephone number. Once Landlord has receipt of all keys, Landlord will inspect the premises and compile a list of any damages or excessive wear that may exist. This final damage list will be the basis for any security deposit deductions regarding property damage.

33. **CONDEMNATION:** In the event of Condemnation proceedings against the property by the governing authority, this agreement will be cancelled on a sixty (60) day notice to Resident.

34. **INSOLVENCY OR IMCOMPETENCY:** Should Resident file bankruptcy, insolvency, assignment for the benefit of creditors, reorganization proceedings, and/or should Resident be judged mentally incompetent by medical authority, this agreement may be cancelled at the option of Landlord.

35. **RULES & REGULATIONS:** Resident agrees to abide by the rules and policies attached hereto and made a part of this agreement and new rules, if any, which may become necessary to promote orderly operation.

36. **ENTIRE AGREEMENT:** This agreement, the rules and regulations, and any other attached addendum's constitute the entire agreement between the parties and no oral statement shall be binding.

37. **REPRESENTATION:** Broker's office brokerage relationship policy is to represent Owners exclusively in all transactions and never to represent Resident.

38. **PREMISES LIABILITY & SECURITY:** Neither Landlord nor Property Owner has made any representation that the property is secure or that Resident is safe from theft, injury or damage. Resident understands and agrees that there have been no warranties of protection and that it is Resident's responsibility to take appropriate measures to protect his/her own person & property.

39. **JOINT & SEVERAL LIABILITY OF CO-RESIDENTS (ROOMMATES, HUSBANDS AND WIVES):** It is understood and agreed that all parties hereto are fully responsible for the obligations assumed under the terms of this lease and will continue so until expiration of the term established herein.

40. **DECORATING: (1)** Resident shall use only small finishing nails when hanging pictures on walls. **(2)** Resident agrees to be prudent with regard to the number of pictures he or she decides to hang. **(3)** For painted walls no more than 2 pictures are recommended. **(4)** Resident will not be allowed to place any nails in wallpaper under any circumstances.

41. **KEYS:** (Circle One) Resident was issued (1) or (2) sets of keys, which will be turned in at the end of the residency.

42. **MILITARY CLAUSE:** This rental Contract may be terminated with an authenticated copy of PCS orders transferring tenant away from the county of the rented premises, and written thirty days' notice from the first of any given month. Resident will be responsible for paying rental payment for the full (30) day period.

43. **PROPERTY TRANSFER:** Resident understands that in case the property is sold, or a change in management occurs, Resident's lease, application, and credit report may be transferred to the new owner or Management Company. Flournoy and Calhoun will no longer be responsible for disbursement of funds that may be due tenant.

44. **ATTORNEYS FEES:** In the event of any controversy, claim, or dispute relating to this Lease, or the breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorney's fees, and costs.

45. **Carpets:** Tenant must prior to vacating, have any carpets **professionally steam cleaned** (in which receipt from company is brought to the office or left on kitchen counter) and all other areas are to be cleaned thoroughly.

46. **SPECIAL STIPULATIONS:** The following special stipulations shall control in the event of conflict with any of the forgoing:

**Any change in tenants will require notification to the Property Management Company.**

7

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person or by a person duly authorized, the day and year first above written.

_____          _____
Leasing Representative                                        Resident


_____          _____
Resident                                                              Resident



Tom Calhoun Property Manager License # S-152451 ◆ Flournoy & Calhoun Realtors License # H-15567

8

ALL-STATE LEGAL®

**EXHIBIT**

E

STATE OF ALABAMA
DALE COUNTY   I, Judge of Probate
in and for said State and County, hereby
Certify that the within is a true and correct
Copy of ___Deed___ as it appears
on record in my office.
Given under my hand this ___2nd___ day of
___September___ ,20 ___25___ .
___Sharon A. Michalic___
JUDGE OF PROBATE

State of Alabama    )

                    )        **Warranty Deed**

County of Dale      )

DEED        336 · 540
Recorded In Above Book and Page
08/23/2021 08:49:57 AM
Sharon A. Michalic
Probate Judge
Dale County, Alabama

**KNOW ALL MEN BY THESE PRESENTS,** That in consideration of Twenty-Five Thousand and No/100 Dollars and other good and valuable consideration, to the undersigned Grantors in hand paid by the Grantees herein, the receipt whereof is acknowledged, JAIDA A. EDLEY, a single woman, GRANTOR do grant, bargain, sell and convey unto MIGUEL CUEYACTLE METZHUA and wife, BLANCA ROSA CANO MARTINEZ and son, CARLOS EMANUEL CUEYACTLE, GRANTEES, the following described real property situated in Dale County, Alabama, to-wit:

Parcel No. One: A lot or parcel of land in the town of Ariton, Dale County, Alabama, being more particularly described as follows: Commencing at the point of intersection of the South right of way line of Alabama Highway 123 and the West right of way line of Atlantic Street ad running thence South 74 degrees 22' 39" West along the South right of way of Alabama Highway 123 a distance of 121.53 feet to a point; thence South 15 degrees 56'04" East a distance of 127.64 feet to a point; thence North 72 degrees 41' 16" East a distance of 104.15 feet to a point on the West right of way line on Atlantic St; thence North 07 degrees 58' 33" West along said right of way line a distance of 125.68 feet to the Point of Beginning and containing 0.326 acre, more or less. Said land lying in and being a part of the SW ¼ of the NW ¼ of Section 11, Township 7 North, Range 23 East, Dale County, Alabama.

**This instrument is prepared by information provided by the parties. Title records were neither furnished nor searched.**

TO HAVE AND TO HOLD, the said property unto the said Grantee, her heirs and assigns, in fee simple FOREVER. And Grantors do hereby covenant with Grantee, her heirs and assigns, that they are lawfully seized in fee simple of said premises; that the same are free from all encumbrances; that they have a good and lawful right to sell and convey the same as aforesaid; and that they will for themselves, their heirs and assigns, warrant and defend the title to the same unto Grantee, her heirs and assigns, forever, against all lawful claims and demands of all persons.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on this the ___6th___ day of ___July___ , 2021.

___Jaida A. Edley___
JAIDA A. EDLEY

DEED    336    541

**State of Alabama )**

Russell of

**County of Dale**

**Acknowledgment**

I, the undersigned, a Notary Public in and for said County and State, hereby certify that JAIDA A. EDLEY, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that being informed of the contents of the conveyance, executed the same voluntarily on the day the same bear dates.

GIVEN under my hand and seal this 6th , day of July , 2021.

Notary Public

My commission expires: 06/04/2025

**This Instrument Prepared By:**
Jaida A. Edley
P.O. Box 605
Columbus, GA  31902

**Grantees Address:**
P.O. Box 605
Columbus, GA  31902

```
                                            DEED      336    542
                                   Deed Tax           25.00
                                   Recording Fee      20.00
      Real Estate Sales Validation Form   TOTAL       45.00
```

**Real Estate Sales Validation Form**

**This Document must be filed in accordance with Code of Alabama 1975, Section 40-22-1**

Grantor's Name — Jaida Edley
Mailing Address — P.O. Box 605

Columbus, GA  31902

Grantee's Name *Miguel Cueyactle Metzhva*
Mailing Address *Blanca Rosa Como Martinez*
*Carlos Emanuel Cueyactle*
*38 Pine st Ariton AL. 36311.*

Property Address — 17 W. Main St
Ariton, AL  36311

Date of Sale _____
Total Purchase Price $ 25,000.00
or
Actual Value      $ _____
or
Assessor's Market Value $ _____

The purchase price or actual value claimed on this form can be verified in the following documentary evidence: (check one)   (Recordation of documentary evidence is not required)

[✓] Bill of Sale
[ ] Sales Contract
[ ] Closing Statement

[ ] Appraisal
[ ] Other _____

If the conveyance document presented for recordation contains all of the required information referenced above, the filing of this form is not required.

---

**Instructions**

Grantor's name and mailing address - provide the name of the person or persons conveying interest to property and their current mailing address.

Grantee's name and mailing address - provide the name of the person or persons to whom interest to property is being conveyed.

Property address - the physical address of the property being conveyed, if available.

Date of Sale - the date on which interest to the property was conveyed.

Total purchase price - the total amount paid for the purchase of the property, both real and personal, being conveyed by the instrument offered for record.

Actual value - if the property is not being sold, the true value of the property, both real and personal, being conveyed by the instrument offered for record. This may be evidenced by an appraisal conducted by a licensed appraiser or the assessor's current market value.

If no proof is provided and the value must be determined, the current estimate of fair market value, excluding current use valuation, of the property as determined by the local official charged with the responsibility of valuing property for property tax purposes will be used and the taxpayer will be penalized pursuant to Code of Alabama 1975 § 40-22-1 (h).

I attest, to the best of my knowledge and belief that the information contained in this document is true and accurate. I further understand that any false statements claimed on this form may result in the imposition of the penalty indicated in Code of Alabama 1975 § 40-22-1 (h).

Date _____   25.00  11.00  9.00   Print *Miguel Cueyactle*

[ ] Unattested    $ 45.00

Sign *Miguel Cueyactle*

(verified by)      (Grantor/Grantee/Owner/Agent) circle one

Form PT-1