IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **HALEIGH K. MCLENDON,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **VS.** | * | |
| | * | **CASE NO. 2:25-CV-00745** |
| **UNITED STATES TENNIS ASSOC. INC,** | * | |
| **USTA PLAYER DEVELOPMENT INC.,** | * | |
| **GRASSROOTS TENNIS ASSOC., LLLP,** | * | **JURY DEMAND** |
| **IN DEPTH ACADEMY,** | * | |
| **DOROTHEA L. JOYNER,** | * | |
| **LEROY THOMAS JOYNER, Jr.,** | * | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

COMES NOW the Plaintiff, Haleigh McLendon, pursuant to 28 U.S.C. §1447(c) and 28 U.S.C. §1446(b)(1),(3) and requests that this Honorable Court remand this case to the Circuit Court of Macon County for lack of jurisdiction and an untimely removal. In support thereof, Plaintiff states as follows:

## I.    Introduction

This lawsuit arises out of the pervasive sexual abuse of minors and the failure to protect young athletes in the sport of tennis from a sexual predator. At all relevant times, Plaintiff Haleigh McLendon ("Haleigh") was a member of the United States Tennis Association ("USTA"). The USTA is the National Governing Body ("NGB") for the sport of tennis. As the NGB for the sport of tennis, USTA selects

the players and coaches that represent Team USA at the Olympic Games and other international tennis events. The United States Tennis Association Player Development Inc. ("USTA Development") is an affiliate of USTA. The mission of USTA Player Development is to educate and train young people in the sport of tennis through a clearly defined training structure and competitive pathway as well as through the implementation of a comprehensive coaching philosophy and structure.

In 2010, the United States Olympic Committee ("USOC"), notified its NGBs, including USTA, of the need to immediately strengthen child protection measures after several sex abuse allegations across the Olympic movement surfaced. Approximately, four years later, the USTA implemented its Safe Play Conduct, Policies, and Guidelines. Thus, since 2014 all USTA coaches, members and employees are required to comply with USTA's Safe Play Conduct, Policies and Guidelines which prohibit child abuse and sexual misconduct.

From approximately 2011-2024, Defendants Leory Thomas Joyner, Jr. ("Leroy Joyner" or "Joyner") was a member of USTA and a tennis coach. In 2011, Joyner and his wife Dorothea Joyner (also an USTA member) formed Defendant Grassroots Tennis Association ("Grassroots"). From 2013-2018 Joyner and Dorothea Joyner operated Grassroots in Ozark, Alabama. Grassroots

provided tennis lessons and coaching to underprivileged children and teens. Additionally, Leroy Joyner and Dorothea Joyner provided home-schooling to a group of children enrolled in Grassroots via a subsidiary business called InDepth Academy ("InDepth").

In 2013, Joyner recruited Plaintiff Haleigh McLendon ("Haleigh") – a 12-year-old living and attending school in Barbour County, Alabama – to play tennis for the Grassroots Tennis Association.  In May 2016 when Haleigh was 15 years old and Leroy Thomas Joyner, Jr. was 43 years old, Joyner\ began sexually assaulting, molesting and sexually abusing Haleigh. From May 2016 through May 2019, Joyner sexually assaulted, molested and/or sexually abused Haleigh in Barbour County, Alabama and on multiple occasions while the two trained and travelled together for tennis tournaments in Alabama Georgia, Louisiana and South Carolina. The USTA, USTA Player Development, Grassroots and other Defendants failed to protect McLendon from repeated sexual assaults committed by Joyner.

## II.    Factual Background and Procedural History

In January 2019, the FBI began investigating allegations that Joyner had sexually abused one of his female students, C.S., who, at that time, was 15 years old and living in Ozark, Alabama. During an interview with FBI Special Agent Heather Holt Whelan, C.S. alleged that, between 2017 and 2018, she and Joyner had

approximately 20 sexual encounters, including vaginal and oral sex. Whelan testified that the encounters reportedly occurred in both Alabama and Georgia.

The United States Government charged Joyner on February 12, 2020, with aggravated sexual abuse of a child between the age of 12 and 16, in violation of 18 U.S.C. § 2241(c). (Case No. 1:20-cr-00033, Doc. 1). On June 10, 2020, Joyner was placed on Home Incarceration. On October 27, 2020, the Government charged Defendant by superseding indictment with knowingly transporting a minor in interstate commerce with the intent that the minor engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). Then, on August 16, 2022, a grand jury sitting in the Middle District of Alabama returned a single-count indictment charging Leroy Joyner with knowingly transported a minor in interstate or foreign commerce with the intent that the minor engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2423(a).

On January 23, 2024, Joyner was tried and convicted of transporting a minor in interstate or foreign commerce with the intent that the minor engage in sexual activity. On August 8, 2024, Joyner was sentenced to 300 months in prison. On April 30, 2025, Plaintiff Haleigh McLendon filed a civil action in the State Court of Muscogee County, Georgia against Defendants USTA, USTA Development, Grassroots Tennis Association, InDepth Academy, Leroy Thomas Joyner, Jr., and Dorothea Joyner (e.g. the Defendants in the instant action).

Counsel for the Plaintiff was previously informed and led to believe that Leroy Joyner was a citizen of Georgia. However, the undersigned Counsel was later made aware of evidence that at all relevant times herein, Defendant Leroy Joyner was and is domiciled in Alabama. Consequently, on August 12, 2025, the civil action in filed in the State Court of Muscogee County, Georgia was voluntarily dismissed.[1]

Thereafter, on August 13, 2025, the current lawsuit was filed in the Circuit Court of Barbour County, Alabama and based on the newly discovered information, the Plaintiff properly pleaded that Defendant Leroy Thomas Joyner is a citizen of Alabama. The current lawsuit alleges common law claims of negligent and/or wanton supervision, training and retention; negligence and wantonness; sexual assault and battery; and intentional infliction of emotional distress. There is no federal question jurisdiction at issue in this litigation. On September 1, 2025, however, USTA and USTA Development removed this case to the U.S. District Court for the Middle District of Alabama.

USTA and USTA Development argue that this Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C §1332(a) because these Defendants assert "Plaintiff is alleged to be a citizen of the State of Alabama but none of the named Defendants are citizens of the State of Alabama." See Doc. 1, ¶4. Because

---

[1] Plaintiff's Counsel was unaware of the Sanders Litigation and the various Court Orders in that litigation when Plaintiff McLendon's first lawsuit against the Defendants was filed in Muscogee County, Georgia.

Leroy Thomas Joyner, Jr., is a citizen of Alabama and complete diversity of citizenship does not exist, on or about October 13, 2025, the Plaintiff filed a Motion to Remand this case to the Circuit Court of Barbour County, Alabama.

## III.    STANDARD OF REVIEW

Federal courts are limited in jurisdiction, and they possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992). In determining whether removal is appropriate, courts must begin with the presumption that there is no federal jurisdiction, with defendants burdened with proving that jurisdiction exists. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001). The federal removal statutes must be construed narrowly and doubts about removal must be resolved in favor of remand. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008); *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003).

When a case is removed on the basis of diversity of citizenship under 28 U.S.C. §§ 1441 and 1332, the defendant who removes the action has the burden of establishing that jurisdiction lies in the federal courts. *Alexander v. Electronic Data Systems*, 13 F.3d 940 (6th Cir. 1994). A removal under 28 U.S.C. § 1441(a) must be construed narrowly with all doubts concerning the Court's jurisdiction to be

construed against the removing party and in favor of remand of the action. *Diaz v. Shepard*, 85 F.3d 1502 (11th Cir. 1996).

Remand is favored where federal jurisdiction is not absolutely clear. *Lambert v. Mail Handlers Benefit Plan*, 886 F. Supp. 830 (M.D. Ala. 1995). "Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power. Whether raised by the litigants or not, the federal courts, including appellate courts, are duty bound to determine jurisdiction and dismiss [or remand] any case in which it is found to be wanting." *Edgerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983).

Because "removal is a statutory privilege, the removing party must comply with the procedural requirements mandated in the statute. *Golden Apple Management Co., Inc. v. GEAC Computers, Inc.*, 990 F.Supp. 1364, 1366 (M.D. Ala. 1998). "A removing defendant has the burden of establishing both federal jurisdiction and compliance with the procedures for removal set forth in 28 U.S.C. 1446, as a matter of fact and law." *Noyes v. Universal Underwriters Ins. Co.*, 2013 WL 360381, 1 (N.D. Fla. 2013). See also *Sibilia v. Makita Corp.*, 674 F.Supp.2d 1290 (M.D. Fla. 2009). (Emphasis Added). When there is concurrent jurisdiction between the state and federal courts, "the *removal must comply with the removal procedures* found in §1446." *Grimes v. Amtec Corp.*, 2012 WL 3773397, 6 (N.D. Ala. 2012). (emphasis added).

A federal district court may exercise subject matter jurisdiction over a civil action in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. 28 U.S.C. 1332(a)(1). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount is met. *Id.* (Emphasis Added). To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

## IV.  ARGUMENT

### A.  At All Relevant Times to this Litigation Leroy Thomas Joyner Jr. Has Been and Is a Citizen of Alabama.

#### 1.  The Sanders Litigation Establishes that Leroy Joyner is a Citizen of Alabama

Defendant Leroy Joyner's filings with this Court in prior litigation proves that he is a citizen of Alabama. On December 12, 2018, Plaintiff Leroy Thomas Joyner, filed a complaint against Shelly Sanders, Larry Sanders, Sandra B. Hughes-Graham, and Tammy Judah in the United States District Court for the Middle District of Alabama (See Case 2:18-cv-01035-WKW-JTA, "the Sanders Litigation"). In his lawsuit, Joyner alleged that the defendants conspired to harm his professional reputation, personal reputation and business – Grassroots tennis Association.

Specifically, Joyner, alleged that the defendants "conspired to disrupt the training process" of a talented, young Caucasian, female tennis player (identified in the lawsuit as "C")[2] "falsely accused [Joyner] of wrongdoings" and filed a frivolous petition for protection from abuse against Joyner.[3]

When Joyner filed the Sanders Litigation on December 12, 2018, Joyner alleged, in pertinent part, that the United States District Court for the Middle District had diversity jurisdiction over the litigation pursuant to 28 U.S.C. § 1332. Specifically, Joyner asserted that diversity of citizenship existed between himself and the Sanders defendants because he was a resident of Georgia and all of the Sanders defendants resided in Alabama. (See Case 2:18-cv-01035-WKW-JTA, Doc. 1 at ¶¶6-10). As this Court noted, however, "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44 at p. 7; citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342, n.12 (11th Cir. 2011) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).

Further, this Court held that Joyner had to allege more than "residence" – i.e. that he resided in Georgia – to establish diversity jurisdiction over his state claims in the Sanders Litigation. (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44

---

[2] C. is the same female student identified as C.S. in Joyner's criminal prosecution.
[3] Joyner's lawsuit, discussed in relevant part infra, was ultimately dismissed.

at p. 7). Consequently, to determine Joyner's true citizenship this Court, *sua sponte*, ordered Joyner to provide information sufficient for the court to determine whether he was a citizen of Georgia at the time of the initiation of the Sanders Litigation on December 12, 2018. (*See* Exhibit 2, [Case 2:18-cv-01035-WKW-JTA] Doc. No. 40.)

On August 14, 2020, Joyner filed his response (See Exhibit 3, [Case 2:18-cv-01035-WKW-JTA] Doc. 42). In his response, Joyner provided the following: a receipt showing a six-months rental of a P.O. Box in Georgia from August 10, 2020 to January 31, 2021, a copy of a rental agreement for a residence in Georgia that bears solely the name of his wife and is for a 12-months term commencing on November 1, 2016, and a Louisiana Certificate of Marriage for Plaintiff and his wife from 2004.  (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44 at p. 7); (See also Exhibits 4-6))

This Court held that "[n]one of the documents provided by Plaintiff support his position that he was domiciled in Georgia when he filed this action." *Id*. In his response, Joyner asserted that while his *family* moved to Georgia "as early as the Summer of 2015," he personally "commuted to Alabama to teach lessons" and would stay "**at their [the family's] residence in Ariton, Alabama** on Monday through Wednesday night" and then would return to Georgia to reside there "Thursday through Sunday night." (See Exhibit 3, [Case 2:18-cv-01035-WKW-JTA] Doc. No. 42 at 1-2) (emphasis added). Plaintiff also submits that he "**filed state**

**and federal taxes in the [S]tate of Alabama**," had a suspended Alabama driver's license "since March 2015," and had been unable to obtain a Georgia drivers license "due to legal circumstances." (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44 at p. 8) Joyner further asserted that he "resided in the [S]tate of Georgia but has not been able to transfer his residential binding documents to the state due to a legal dispute with the State of South Carolina."

After examining Joyner's response and the information he provided, this Court held that "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (internal citations omitted). . . . "Accordingly, [Joyner]'s assertion that he is a "resident" of Georgia is not probative. The court therefore finds that <u>Plaintiff (Joyner) has not established a basis for diversity jurisdiction over his state law claims</u>." (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44 at p. 9) (emphasis added). Per Judge Adams' findings in this Court's Report and Recommendations, Joyner was determined (1) not to be a citizen of Georgia, and consequently (2) was determined to have been a citizen of Alabama. Otherwise, this Court would have had diversity jurisdiction over Joyner's state law claims in the Sanders Litigation. In other words, had Joyner been a citizen of Georgia

or any of the other States within the U.S not named Alabama, the Court would have had diversity jurisdiction and wouldn't have recommended dismissing Joyner's lawsuit in the Sanders Litigation.  This Court, however, adopted Judge Adams' Report and Recommendation on September 11, 2020. (See Exhibit 7)

Although the Court framed its inquiry as a determination of Joyner's citizenship as of December 12, 2018 (i.e the date Joyner initiated the Sanders Litigation), Joyner's response went farther and addressed where he was domiciled beyond that date. Specifically, Joyner stated in his response that  although *he resided at both [the Ariton, Al and Columbus, Ga] addresses weekly for over (4) years*, Mr. Joyner was unable to change his drivers license or enter into a any residence activities due in part to ongoing litigation in the US District Court in South Carolina (6:20-cv-01736-DCC-JDA)." (See Exhibit 3, [Case 2:18-cv-01035-WKW-JTA] Doc. No. 42)  Because Mrs. Dorothea Joyner's lease in Columbus, Ga at 1016 Peachtree Drive didn't begin until November 1, 2016,[4] Joyner's reference to residing in both Alabama and Georgia for over (4) years indicates that he (Joyner) was describing his living arrangement up and until at least 2020; far beyond the filing of the Sanders lawsuit on December 12, 2018.

---

[4] See (Exhibit 5, [Case 2:18-cv-01035-WKW-JTA]  Doc. 42-2).  See also  Doc. 1-5, Affidavit of Dorothea Joyner, wherein Dorothea Joyner asserts that she lived in a Columbus, Georgia motel with her daughter in 2015 and didn't obtain the apartment referenced by Joyner in his response until November 1, 2016.

## 2. The South Carolina Litigation Establishes that Leroy Joyner is a Citizen of Alabama

Indeed, Joyner's reference to the "ongoing litigation in the US District Court in South Carolina," also evidences Joyner intent to be domiciled in Alabama. The South Carolina litigation referenced by Joyner in his response to this Court was filed on May 4, 2020. (See Exhibit 8, the South Carolina Complaint) Joyner amended the South Carolina complaint on October 29, 2020. (See Exhibit 9, Amended South Carolina Complaint) In the South Carolina litigation, Joyner sued the South Carolina Child Support Services Division ("CSSD") and the South Carolina Department of Motor Vehicles ("SCDMV") for what Joyner contends was unlawfully causing his Alabama driver's license to be suspended based on an invalid child support payment dispute.[5]

In the South Carolina Litigation, Joyner alleged that he learned that his Alabama driver's license had been suspended when he sought to renew the license in Alabama on March 8, 2015. (See Exhibits 8 and 9, ¶51) Joyner further alleged that he had a property interest in in his Alabama driver's license and that he was entitled to compensatory damages for the property loss he "suffered and continues to suffer" – e.g. from the date of the loss [March 8, 2015] to the date of the suit was filed [May 4, 2020]. (See Exhibits 8 and 9, ¶¶12; 51, 94, 103, and 107).

---

[5] The Uniform Interstate Family Support Act (UIFSA) allows one state to enforce another state's child support order, which includes requesting the suspension of a driver's license for nonpayment.

In order for Joyner to have an Alabama driver's license (and a property interest in said license) he would have to be a legal resident of Alabama. See Ala.Code 32-6-1 (2024) ("Every new resident of the State of Alabama shall procure an Alabama driver's license within 30 days after establishing residence in this state"). Further, by claiming his Alabama driver's license as a property interest and seeking compensatory damages for this interest extending up to, and through the dates the South Carolina pleadings were filed (May 4, 2020 and October 29, 2020, respectively), Joyner indicated that it was his intent to remain domiciled in Alabama. In other words, were Joyner truly domiciled in Georgia or in any other State besides Alabama, he would have no property interest in an Alabama driver's license and no property loss associated with said license as he continued to allege October 2020 when he amended the South Carolina complaint.

### 3. Leroy Joyner's Citizenship in Alabama Was Firmly Established Prior to His Home Incarceration in June 2020

The fact that Joyner was still domiciled in, and manifesting an intent to be domiciled in, Alabama as of October 29 2020 is important because prior to amending the South Carolina complaint and prior to him filing his response to this Court diversity jurisdiction inquiry in the Sanders Litigation, Joyner was confined to Home Incarceration. As noted above, on February 12, 2020, Defendant Leroy Joyner was charged by the United States with aggravated sexual abuse of a child between the

age of 12 and 16, in violation of 18 U.S.C. § 2241(c). (Case No. 1:20-cr-00033, Doc. 1). On June 10, 2020, Joyner was placed on Home Incarceration with electronic monitoring by this Court. (See Exhibit 10, Detention Hearing Transcript, 114:3-15).

It is undisputed that Joyner was confined to Home Incarceration at the 1016 Peachtree Drive Columbus, Georgia address and remained on Home Incarceration until the time he was convicted and sentenced to serve 300 months in prison. However, a prisoner's place of incarceration does not establish citizenship. *Polakoff v. Henderson,* 370 F.Supp. 690, 693 (N.D.Ga.), *aff'd,* 488 F.2d 977 (5th Cir.1974). A prisoner's citizenship is determined by his domicile prior to incarceration. *Polakoff,* 370 F.Supp. at 693; *Denlinger v. Brennan,* 87 F.3d 214, 216 (7th Cir.1996) ("A forcible change in a person's state of residence does not alter his domicile; hence the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison."); *Lima v. Diaz,* No. 95–734–CIV–T–17B, 1995 WL 75922, at *1 (M.D. Fla. Dec.18, 1995).

Here, the Court's Report and Recommendation, established that prior to his incarceration in June 2020, Joyner was a citizen of Alabama – not Georgia – until at least December 12, 2018 when the Sanders complaint was filed. Once this Court adopted the Report and Recommendation, Defendant Leroy Joyner was precluded from relitigating his domicile for purposes of diversity jurisdiction. "Four

requirements must be met for issue preclusion to apply: (1) the issue is identical to the issue from the prior litigation, (2) the issue was actually litigated in the prior case, (3) the prior determination of the issue was "a critical and necessary part of the judgment in that action," and (4) the party against whom issue preclusion is asserted "had a full and fair opportunity to litigate the issue in the earlier proceeding." *Goodin v. Fidelity Nat. Title Ins. Co.*, 491 Fed.Appx. 139, 142 (11th Cir. 2012).

Here, Judge Adams and Judge Watkins considered the exact issue we face in this matter - establishing Joyner's citizenship for purposes of diversity jurisdiction. That issue was "actually litigated" because the Court's recommendation was issued after Joyner submitted briefs and statements in support of his claim. The determination of Joyner's citizenship was "critical and necessary" to the judgement because Judge Adams' conclusion that Joyner is an Alabama citizen established the basis for concluding the court lacked subject matter jurisdiction.

Lastly, Joyner had a "full and fair opportunity" to litigate the issue because he filed briefs and declarations in support of his argument. Further, as acknowledged in his own response, the facts concerning whether Joyner's domicile was Alabama or Georgia remained consistently the same from December 12, 2018 until the time Joyner was placed on Home Incarceration and/or submitted his response in August 2020. Therefore, Joyner is precluded from relitigating his citizenship. Because Joyner's citizenship is factually and legally established as being in Alabama,

Defendants removal of this case is in violation of 28 U.S.C. § 1441(b)(2), which reads:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Because Leroy Joyner is a citizen of Alabama and because complete diversity does not exist Plaintiff McLendon's motion to remand is due to be granted.

### B. Defendant Leroy Thomas Joyner, Jr Did Not Properly Consent to Removal

Pursuant to 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." When Defendants USTA and USTA Development filed their Notice of Removal they filed what purported to be the "Declaration Under Oath of Leroy Thoomas Joyner, Jr." (See Doc. 1-4) Page 4, paragraph 17 of the purported declaration states: "I consent to the removal of the above captioned case from the Circuit Court of Barbour County, Alabama to the United States District Court for the Middle District of Alabama." See Doc. 1-4, ¶17)

On September 22, 2025, however, Defendant Leroy Joyner filed what is styled as an "Omnibus Motion" (See Doc. 9) In his Omnibus Motion, Joyner asserted that "***Joyner did not read the Declaration before signing it.  He was only given the***

***signature page by Prison Officials.  It was not until September 9, 2025 that he gained access to a copy of the document.  The instant motion was then crafted***." (See Doc. 9, FN #1) Joyner's assertion requires this Court to disregard the declaration for all purposes. Joyner's purported declaration has no indica of reliability or veracity given that Joyner admits he didn't see the contents of the document until after he signed the signature page.  At that point, Joyner immediately undertook efforts to withdraw his consent. According to Joyner, once he received the missing pages of the Declaration on September 9, 2025, he began drafting the Omnibus Motion which is dated September 12, 2025. (See Doc. 9, pg. 6)

Further, Joyner also asserts that his consent was based on his misunderstanding of 28 U.S.C. 1441 and that it was his expectation that he was consenting to a removal to the U.S. District Court for the Middle District of Georgia. (See Doc. 9, ¶4) Thus, Joyner didn't affirmatively give consent to removal to the U.S. District Court for the Middle District of Alabama.  This Court has held that "an official, **affirmative and unambiguous** joinder  or **consent** to  ... **[the] notice of removal**" is required in order for a defendant to properly consent to removal. *Lampkin v. Media General, Inc.*, 302 F.Supp.2d 1293, 1295 (M.D. Ala. 2004) citing *Smith v. Union Nat. Life Ins. Co.*, 187 F.Supp.2d 635, 647 (S.F. Miss. 2001). "Consent may not be implied, but rather, it must be express." *Jerrell v. Kardoes*

*Rubber Co., Inc*., 348 F.Supp.2d 1278 (MD. Ala. 2004) citing *Newman v. Spectrum Stores, Inc.,* 109 F.Supp.2d 1342 (M.D.Ala.2000).

Here, Joyner did not affirmatively and unambiguously consent to removal to this Court. Rather, Joyner clearly asserts in his Omnibus Moton that he only consented to removal to the U.S. District Court for the Middle District of Georgia and that, to the extent it could be construed that he gave consent for removal to this Court, Joyner has expressed his desire (in writing) to rescind and/or revoke his consent as it was based on a misunderstanding.

The law in the Eleventh Circuit strongly favors remand. "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly [and] *all doubts about jurisdiction should be resolved in favor of remand* to state court." *Henderson v. Washington Nat. Ins. Co*., 454 F.3d 1278, 1282 (11th Cir. 2006) (emphasis added) Based on the foregoing, the Plaintiff's motion to remand is due to be granted.

### C. Defendant Grassroots Tennis Association and Defendant InDepth Academy Have Not Consented to Removal

As a matter of law, where there are multiple defendants in a lawsuit, and the defendants desire to remove a case filed in state court to federal court, the case may be removed only if all defendants consent within thirty days after service has been received by the defendants. *Jerrell v. Kardoes Rubber Co., Inc*., 348 F.Supp.2d at

1282 citing *Yazdtchi v. Khademi,* 1995 WL 131762, 1995 U.S. Dist. LEXIS 3830 (M.D.Ala.1995). "More specifically, where there are multiple defendants, such as in this case, and service has been perfected on each prior to the expiration of thirty days from the initial receipt of the complaint by the first defendant, a notice of removal shall be filed with the consent of all defendants no more than thirty days from that time." *Newman v. Spectrum Stores, Inc.,* 109 F.Supp.2d 1342 (M.D.Ala.2000).

Both Grassroots and InDepth Academy were served with Plaintiff's Barbour County, Alabama Complaint on August 20, 2025. (See Exhibit 11, Proof of Service for Grassroots Tennis Association and Exhibit 12, Proof of Services for InDepth Academy). Here, however, neither Grassroots nor InDepth provided express consents within 30 days of the receipt of the initial pleading. Public records from the Georgia Secretary of State's Georgia Corporations Division show that Grassroots Tennis Association, LLLP is still an active corporation in the State of Georgia as of October 2, 2025, and lists the registered agent as Caylin Edley. (See Exhibit 13, Georgia Secretary of State's Georgia Corporations Division Record for Grassroots dated October 2, 2025).[6]

Both USTA and USTA Development received a copy of the Plaintiff's Complaint filed in Barbour County, Alabama, which named Grassroots Tennis

---

[6] When Grassroots Tennis Association was served on August 20, 2025, Caylin Edley is the person who accepted service on behalf of Grassroots. (See Exhibit 11) Also, in her affidavit Dorothea Joyner confirmed she has a daughter named Caylin. (See Doc. 1-5)

Association and InDepth Academy as Defendants, well before filing its Notice of Removal. Yet, USTA and USTA Development have put forth no evidence showing that they took any action to obtain Grassroot and InDepth's consent. Therefore, this action is due to be remanded for a lack of unanimous consent to the removal.

**D. Defendants Have Offered No Proof of the Amount in Controversy.**

In order to exercise diversity jurisdiction, this Court must find "by the preponderance of the evidence that the amount in controversy exceeds" the jurisdictional limit of $75,000. 28 U.S.C. § 1446(c)(2)(B). The party seeking removal has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996). Further, because the removal statutes are strictly construed against removal, all doubts about removal must be resolved in favor of remand. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994). See also *Beard v. Lehman Bros. Holdings, Inc.,* 458 F.Supp.2d 1314, 1317 (2006) ("This court previously has noted that "[a] court must strictly construe the requirements of the removal statute, as removal constitutes an infringement on state sovereignty." citing *Newman v. Spectrum Stores, Inc.*, 109 F.Supp.2d at 1345).

The Defendants speculatively alleges that the Plaintiff seeks damages in excess of the amount in controversy requirement of $75,000 ***without offering any evidentiary support whatsoever*** for their assumption. Defendants' conjecture is insufficient to establish that there is federal diversity jurisdiction over this action.

There is absolutely no evidence presented on which this Court can say that the value of the Plaintiff's claims exceed $75,000.

In *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007), the Eleventh Circuit Court of Appeals held that district courts must narrowly construe evidence submitted to determine whether an amount in controversy exceeds the jurisdictional minimum required for diversity jurisdiction. In *Lowery*, the Eleventh Circuit made it clear that "in the removal context, where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a **preponderance of the evidence**." *Id*. at 1208. (emphasis added). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." See also *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

Although District Courts may make "reasonable deductions," District Courts in Alabama have refused to engage in the former "punitive damage" general rule and "past precedent" general rule commonly used by defendants removing actions to federal district courts. *See Carswell v. Sears Roebuck & Co.*, 2:06-CV-01098-WKW, 2007 WL 1697003 (M.D. Ala. 2007); *Constant v. Int'l. House of Pancakes, Inc.*, 487 F.Supp2d 1308 (N.D. Ala. 2007); and *Howell v. Fields Realty, LLC*, 2:08-CV-492-WKW, 2008 WL 2705383 (M.D. Ala. 2008). *See also Pretka, supra*,

affirming the *Lowery* holding that references to other cases without explanation as to how the case at issue is similar to the cases referenced tells a court "nothing about the value of the claims" in the case actually before it. *Id.*, 753.

In order to make a reasonable deduction, Defendant must first offer this Court *something* from which a deduction can be made beyond the Plaintiff's generalized statement of damages. Again, it bears repeating that the Defendants have presented no evidence whatsoever in this matter regarding the amount in controversy. Defendants merely cite to the Complaint which does not specify any identifiable dollar amount.

The Defendants' fail to make so much as an attempt to prove that the amount in controversy exceeds the jurisdictional minimum required for diversity jurisdiction and instead ask the Plaintiff and this Court to accept an unsupported assumption. This is approach causes the Defendants to fall woefully short of meeting their burden of proof. Where, as here, a defendant relies only on the general damages allegations in the complaint and does not provide "their own affidavits, declarations, or other documentation in support of federal jurisdiction. . .this Court is left with no evidence from Defendant from which it can draw reasonable inferences and deductions." *Bennett v. Williams*, 2017 WL 3781187, *2 (N.D. Ala. 2017).

Additionally, Plaintiff has not engaged in any "trick" of pleading and does not argue that this Court is not allowed to use its judgment as to the propriety of removal.

*Id.*, 1064-1065. Rather, Plaintiff contends that (1) it is the burden of the Defendants to establish the amount in controversy by a preponderance of the evidence, and (2) that Defendant must then necessarily provide evidence of its contentions.

Importantly, Defendants' removal ignores recent case law concerning removals where the plaintiff did not state a specific amount of damages. Recent cases like *Dunlap v. Cockrell*, 336 F.Supp.3d 1364 (S.D. Ala. 2018) and *Bennett, supra*, are instructive. In *Dunlap*, the Court's sister court stated:

> This Court declines to follow the *Smith* line of cases. It is well settled that *a removing defendant bears the burden of proving jurisdiction (including amount in controversy) by a preponderance of the evidence* when the court questions the defendant's allegation about the amount in controversy. *It is also well-settled that a plaintiff's refusal to stipulate to amount in controversy (or its denial of requests for admission as to amount in controversy), without more, does not satisfy that burden because there are several reasons why a plaintiff would not so stipulate.* The Court therefore finds that plaintiff's mere denial of requests for admission as to amount in controversy, without more, does not suffice to show by a preponderance of the evidence that the jurisdictional minimum is satisfied, particularly given that plaintiff's operative pleading emphatically states that it is not. Cockrell offers no other evidence in support of removal.

*Dunlap*, 336 F.Supp.3d at 1365. (Emphasis Added).

Like the defendants in *Dunlap* and *Bennett*, USTA and USTA Development have offered no evidence whatsoever of the value of the Plaintiff's claims other than the generalized statement that the amount exceeds $75,000. The removing Defendants have not met his burden of showing that federal jurisdiction properly lies here. Accordingly, and given the requirement that removal statutes be construed

narrowly, with all doubts as to removal jurisdiction being resolved in favor of remand, this action should be remanded to the Circuit Court of Barbour County, Alabama for further proceedings.

### CONCLUSION

Based on the foregoing reasons, USTA and USTA Development have not established that this Court has diversity jurisdiction, nor has it performed the due diligence required in attempting to obtain consent to removal from all Defendants. Thus, Plaintiff respectfully asks this Court to remand this proceeding to state court.

Respectfully submitted,


*/s/ Larry Golston*____
Larry A. Golston
Leon Hampton, Jr.
Jessi M. Haynes
Attorneys for Plaintiff


**OF COUNSEL:**
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:   (334) 954-7555
Larry.golston@beasleyallen.com
Leon.hampton@beasleyallen.com
Jessi.haynes@beasleyallen.com

/s/ L. Shane Seaborn
L. Shane Seaborn
Attorney for Plaintiff

**OF COUNSEL:**
**PENN & SEABORN LLC**
1442 S. Eufaula Avenue
Eufaula, Alabama 36027
(334) 687-5555 – telephone
(334) 687-5111 – facsimile
sseaborn1@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/EFC participants, or if not a CM/ECF participant, it has been served by U.S. mail, postage prepaid.

Carter P. Schondelmayer
**PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.**
1111 Bay Avenue 3rd floor
P.O. Box 1199
Columbus, GA 31902-1199
carter@pagescrantom.com
*Counsel for Defendants United States Tennis Association, Inc.*
*and USTA Player Development, Inc.*

**Defendant Grassroots Tennis Association, LLLP**
1016 Peachtree Drive
Columbus, GA 31906
*c/o Caylin Edley,  Registered Agent*

**Defendant Dorothea L. Joyner**
1016 Peachtree Drive

Columbus, GA 31906

**Defendant In Depth Academy**
1016 Peachtree Drive
Columbus, GA 31906

**Defendant Leroy Thomas Joyner, Jr.**
Inmate #18079-002
Yazoo City Low FCI
POB 5000
Yazoo City, MS 39194