# EXHIBIT 9

RECEIVED
USDC CLERK. GREENVILLE. SC

2020 OCT 29  PM 4: 00

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

|  |  |
|---|---|
| LEROY T. JOYNER, JR. | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) CASE NO._____ |
|  | ) |
| v. | ) |
|  | ) JURY TRIAL DEMANDED |
| HENRY McMASTER in his official | ) |
| capacity as Governor of South Carolina; | ) |
| MICHAEL LEACH in his official capacity | ) |
| as Director of the South Carolina | ) |
| Department Of Social Services; | ) |
| TIM MOSE in his official capacity as | ) |
| Director of the South Carolina | ) |
| Department Of Child Support Services | ) |
| Division; | ) |
| KEVIN SHWEDO in his official capacity | ) |
| as Director of the South Carolina | ) |
| Department Of Motor Vehicle, | ) |
|  | ) |
| Defendants. | ) |

## COMPLAINT

## TABLE OF CONTENTS

|                                                                                 | Page(s) |
|---------------------------------------------------------------------------------|---------|
| TABLE OF CONTENTS                                                               | 1       |
| INTRODUCTION                                                                     | 4       |
| NATURE OF THE ACTION                                                             | 6       |
| JURISDICTION & VENUE                                                             | 7       |
| PARTIES                                                                          | 7       |
| FACTUAL BACKGROUND                                                               | 9       |
| I. CSSD'S Deprivational Conduct                                                  | 9       |
| II. Mr. Joyner's Deprivation From Suspension                                     | 9       |
| III. CSSD Intentionally Suspended Mr. Joyner's License Due To Non-Reimbursement of TANF | 13 |
| A. Defendants Suspended Mr. Joyner's License Under False Pretense That He Owed Back Child Support | 13 |

1

B. Pursuant To South Carolina Code Of Laws
"Section 63-17-7", Defendants Failed To
Notify Mr. Joyner Of His Suspension
...................................... 14

C. CSSD Determined Mr. Joyner Was Out Of
Compliance With An Order For Support By
Utilizing False Information
...................................... 16

IV. CSSD's Punitive Suspensions Violated The
Equal Protection And Due Process Rights Of
The Plaintiff
...................................... 18

A. Defendants' Punitive Suspension Scheme
Violates Equal Protection & Substantive
Due Process And Discriminates On The
Basis Of Custody
...................................... 18

B. Defendants' Punitive Suspension Scheme
Violates Equal Protection & Discriminates
On The Basis Of Custody Without A
Compelling Government Interest
...................................... 20

C. Defendants' Punitive Suspension Scheme
Violates Substantive Due Process And It
Infringes On Plaintiff's Fundamental
Right To Travel
...................................... 21

D. Defendants' Punitive Suspension Scheme
Violates Procedural Due Process And Does
Not Guarantee Or Provide Notice of A

Hearing
.......................................... 23

FIRST CAUSE OF ACTION
.......................................... 25

SECOND CAUSE OF ACTION
.......................................... 26

THIRD CAUSE OF ACTION
.......................................... 26

FOURTH CAUSE OF ACTION
.......................................... 27

FIFTH CAUSE OF ACTION
.......................................... 28

SIXTH CAUSE OF ACTION
.......................................... 29

PRAYER FOR RELIEF
.......................................... 30

Plaintiff, Leroy T. Joyner, Jr. ("Mr. Joyner") respectfully brings this complaint against Defendants who have intentionally deprived him of his civil rights in violation of 42 U.S.C. § 1983 as well as the Fifth & Fourteenth Amendment of the United States Constitution which has caused continual harm including aggravated harm to Mr. Joyner's professional, business, and personal reputation along with his livelihood. In petitioning the Court for injunctive relief, Plaintiff alleges as follows:

## Introduction

1. This case is about the South Carolina Child Support Services Division (CSSD) and Department of Motor Vehicle & Drivers License Division extorting money from the Plaintiff by unconstitutionally suspending the driver's license of Mr. Joyner who currently do not and has never owed back child support or arrears in the State Of South Carolina or any State. Under South Carolina law, CSSD has the authority to issue an order suspending the driver's license of any person who owes at least two months' worth of child support payments or at least $500 in arrears, whichever is less. These suspensions are meant to coerce payment from those who fail to pay but CSSD can not legally use the suspensions to extort money out of non-custodial parents who do not owe back child support.

2. Moreover, suspending the driver's license of a non-custodial parent who currently do not and has never owed back child support or arrears in the State of South Carolina or any State makes it difficult for them to see their children regularly, pick them up for visitation, or share in caring for them by taking them to doctor's appointments and participating in school activities. Thus, this license suspension has harmed the interests of Mr. Joyner's child who is ostensibly meant to benefit from CSSD

4

actions by making it virtually impossible for him with limited means to play a meaningful role in his daughter's life. It goes without saying, the suspension has prevented Mr. Joyner from being economically productive.

3. Due to the Plaintiff's license being suspended, he faces a daily impossible choice: comply with the suspension and lose his maximum earning potential as well as the ability to care for his family, or drive illegally and face the threat daily of further debt and criminal charges if he is caught.

4. License suspension as a debt collection method is unconstitutional and illegal when enforced against a non-custodial parent who currently do not and has never owed back child support or arrears in the State of South Carolina or any State: no amount of coercion can force money out of a non-custodial parent who do not owe back child support. South Carolina's CSSD has trapped Mr. Joyner in an inescapable cycle of extortion and criminal culpability by suspending his driver's license.

5. CSSD's extortion misconduct, its failure to provide competent responses to exculpatory evidence that back child support did not exist, and its overall lack of accountability deprived Mr. Joyner of his ability to drive, thus severely hampering his ability to earn a living, provide maximum support for his child and family.

6. Having suspended the Plaintiff's license prior to March 8, 2015, CSSD seeking to be reimbursed for TANF Benefits paid in 2003 violated the substantive, equal protection, and procedural due process rights of Mr. Joyner under the United States Constitution.

5

7. On behalf of himself as a Pro Se Litigant, Plaintiff seeks an injunctive and prospective relief calling for Defendants in their official capacities to end this unconstitutional extortion-based suspension scheme.

## Nature Of The Action

8. Defendants intentionally suspended the driver's license of Mr. Joyner who currently do not and has never owed back child support or arrears in the State of South Carolina or any State. Due to this extortion misconduct, the Plaintiff seeks damages against the Defendants to correct the harmful suspension.

9. Because Defendants enforced suspension as a penalty against Mr. Joyner for not reimbursing TANF Benefits with no due process procedure in place to verify the validity of the benefits, the action amounted to extortion within custody-based discrimination in violation of his substantive due process and equal protection rights.

10. Because Defendants enforced a complete deprivation against Mr. Joyner who currently do not and has never owed back child support or arrears in the State of South Carolina or any State, he has been placed within a suspect class (non-custodial parent), and Defendants' discrimination violates equal protection rights, as it is not narrowly tailored to a compelling government interest.

11. Because the license suspension impeded the Plaintiff's ability to travel without being narrowly tailored to a government interest, the suspension violated his substantive due process rights.

12. Because Defendants deprived the Plaintiff of property interest in his driver's license without a meaningful

6

hearing — that is, a pre-validation of TANF Benefits owed hearing to determine whether benefits paid were valid — or notice of such a hearing, the suspension violated procedural due process rights.

## Jurisdiction & Venue

13. This is a deprivation of due process rights action arising under 42 U.S.C. § 1983 as well as the Fifth and Fourteenth Amendment to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

14. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

15. Plaintiff Leroy T. Joyner, Jr. is a 46-year-old resident of Columbus, Georgia. Mr. Joyner currently do not and has never owed back child support or arrears in the State of South Carolina or any State for Rachel M. Joyner, who is now twenty years-old. As a result of the Defendants failure to verify the validity of TANF Benefits paid to the custodial parent, CSSD suspended his driver's license prior to March 8, 2015. Marrea Joyner-Givens ("Ms. Joyner-Givens") has had custody of the daughter and shares the responsibility of being the provider and caretaker with the Plaintiff.

16. Defendant Henry McMaster is the Governor of South Carolina. As Governor, Mr. McMaster is the head of the executive branch of the South Carolina state government and is responsible for enforcing state law, including South Carolina code of laws "Section 56-1-171 and 63-17-7", which authorizes the CSSD director to suspend the driver's

7

licenses of parents who fail to pay child support. Mr. McMaster is sued in his official capacity as Governor.

17. Defendant Michael Leach is the Director of the South Carolina Department of Social Services. The Department is responsible for "operating programs that provide public assistance to custodial parents," including child support. Mr. Leach is sued in his official capacity as Director of the Department of Social Services.

18. Defendant Tim Mose is the Director of the Child Support Services Division of the South Carolina Department of Social Services. Under South Carolina code of laws "Section 56-1-171 and 63-17-7", the director of CSSD has the authority to "suspend the driver's license of a non-custodial parent" due to back child support owed beyond the arrears threshold when the obligor is not making child support payments in accordance with a support order and owes an arrearage in an amount greater than or equal to two months support payments or five hundred dollars, whichever is less, as of the date of service of a notice of intent to suspend such license." Mr. Mose is sued in his official capacity as Director of the Child Support Services Division.

19. Defendant Kevin Shwedo is the Director of the South Carolina Department of Motor Vehicle. Mr. Shwedo oversees the Driver License Bureau which "issues, renews, suspends, revokes, and reinstates driver and nondriver licenses and driving permits." He is sued in his official capacity as Director of the Motor Vehicle.

20. At all times relevant to the Complaint's events, acts or omissions, Defendants have acted under color of state law, pursuant to their authority as officials of the State of South Carolina.

8

## Factual Background

### I. CSSD's Deprivational Conduct.

21. CSSD ordered the suspension of the driver's licenses of Mr. Joyner who currently do not and has never owed back child support or arrears in the State of South Carolina or any State totaling either two months' payments or $500, whichever is less.

22. CSSD made no inquiry into whether or not the TANF Benefits were valid before ordering the suspension; there was no verification mechanism in place to safeguard the substantive due process and equal protection rights of Mr. Joyner. There was no hearing to determine whether the TANF Benefits were valid, and no notice was sent to the Plaintiff informing him that he could contest the suspension based on the validity of the benefits paid to the custodial parent.

23. The loss of his driver's license made Mr. Joyner less able to meet his child support obligations and less able to participate in his daughter's life and share in the parenting responsibilities.

### II. Mr. Joyner's Deprivation From Suspension.

24. Leroy T. Joyner, Jr. is currently a married father of three daughters and a joint provider with Ms. Joyner-Givens for their daughter, Rachel M. Joyner who is currently a Junior in college.

9

25. In 2003 within a legal separation order, Mr. Joyner was directed to pay $560 per month in child support for his daughter and a yet to be conceived son. After hiring a lawyer and spending a lot of time and money, Mr. Joyner discovered that the newborn son, Matthew B. Givens was not his biological son which reduced his support to $280.

26. Before and after the amended court order, Mr. Joyner had paid Ms. Givens-Joyner $30,000 in advance and did not owe back child support or arrears in the State of South Carolina or any State.

27. However, in July 2003 Ms. Givens-Joyner visited Beaufort, SC for less than (30) days and secured assistance from CSSD in the form of TANF Benefits. At that time, Mr. Joyner did not owe back child support or arrears in the State of Mississippi or any State.

28. Ms. Givens-Joyner application for services from CSSD was inaccurate as it pertained to her residency and child support paid.

29. Because of her inaccuracy regarding residency and paid child support, Defendants suspended Mr. Joyner's license prior to March 8, 2015 due to his refusal to reimburse the invalid TANF Benefits paid.

30. Prior to suspending Mr. Joyner's license, CSSD did not send him a letter acknowledging that his license would be suspended if he did not either reimburse the TANF Benefits or enter into a payment plan. Mr. Joyner currently does not and has never owed back child support or arrears in the State of South Carolina or any State, so a notice would have prompted him to call CSSD to clarify the matter. CSSD did not offer Mr. Joyner any options to avoid license suspension.

10

31. Due to Mr. Joyner's marriage to his current wife on September 24, 2004, he has inherited the responsibility of caring for three additional daughters. As a result of his license suspension, Mr. Joyner has been forced to cut back on his work travels which has dramatically caused his earnings to decrease.

32. Mr. Joyner has to be transported from city to city each day and because of the license suspension, the career of his oldest daughter, Spirit Edley ("Ms. Edley")has been placed on hold in order for her to drive her father to tennis courts and tournaments throughout the Southeastern States. She has missed professional tournaments, scheduled practices with other professional players and all associated opportunities of being a professional. Furthermore, the suspension has placed the Plaintiff at a disadvantage because  lessons were abandoned to maintain growth in the tennis community.

33. When he had a valid driver's license, Mr. Joyner was able to visit more cities which created more memberships within the tennis community. Now that he is limited to one city, Mr. Joyner has suffered a reduction in membership fees and this income change has greatly impacted his ability to care for his family.  The family hardship is a direct result of not being able to drive from city to city in like fashion as he did from 2010 to 2015.

34. All of the Plaintiff's income goes toward his wife and his children's living expenses. In a group like effort his family pays the household expenses and runs a tennis association that has financial responsibilities of its own. Mr. Joyner does not receive any support outside of his tennis ventures and oftentimes Mr. Joyner's expenses exceed his income.

35. Mr. Joyner had no choice but to refrain from driving in the face of his license being suspended. He has been reliant on Ms. Edley to provide him transportation. She has hauled him and all of his tennis court equipment each day, including tennis clinics and tournaments.

36. Mr. Joyner has also been unable to drive in carrying out his professional duties on the ITF Pro Circuit. His daughter needed his help in driving her to professional tournaments that range anywhere from El Paso, TX to Albuquerque, NM and from Evansville, IN to Osprey, FL. Mr. Joyner and his daughter have flirted with death by relying on only one driver each time a trip occurs.

37. Due to the suspension, the idea of driving on a suspended license has presented a significant risk for Mr. Joyner as he was keenly aware if caught, then criminal charges were a stark reality.

38. Mr. Joyner has made a living as an entrepreneur and driving is a key component of his projects. He has never been charged with any crime and if he is ever pulled over, Mr. Joyner will likely be arrested. This is a terrifying prospect because if Mr. Joyner is jailed, there will be extreme hardship placed on his family.

39. Mr. Joyner tried on several occasions from 2006 to 2015 to explain through evidence that the alleged arrears were invalid, but CSSD responded by stating "that he would have to pay a TANF reimbursement totaling over ($2,078.34) in order to get the record cleansed. Mr. Joyner refused to reimburse the TANF Benefits which was due to an inaccurate application submitted by Marrea Joyner-Givens.

12

### III. CSSD Intentionally Suspended Mr. Joyner's License Due To Non-Reimbursement Of TANF.

#### A. Defendants Suspended Mr. Joyner's License Under False Pretense That He Owed Back Child Support.

40. Under South Carolina code of laws "Section 56-1-171 and 63-17-7", the Director of CSSD has the authority to "suspend the driver's license of a non-custodial parent" due to back child support owed beyond the arrears threshold when the obligor is not making child support payments in accordance with a support order and owes an arrearage in an amount greater than or equal to two months support payments or five hundred dollars, whichever is less, as of the date of service of a notice of intent to suspend such license."

41. In this case, the custodial parent received TANF Benefits from CSSD, which included establishing and enforcing a child support order. Her award of benefits prompted the CSSD Director to suspend Mr. Joyner's license when he refused to reimburse the TANF Benefits.

42. Mr. Joyner provided CSSD with more than sufficient evidence to prove that the alleged arrears were inaccurate as reported. In the face of the evidence provided, the custodial parent dropped her arrears claim but CSSD continued to pursue the Plaintiff as it pertained to the TANF Benefits paid to the custodial parent.

43. Due to the false claim that Mr. Joyner was in default of a support order, CSSD attempted to intercept his Federal Tax Return unsuccessfully in order to secure reimbursement of TANF Benefits. It was this failed attempt for over (9)

13

years that prompted the CSSD Director to suspend the license of Mr. Joyner.

44. In such cases, the CSSD Director has the authority to issue a notice of intent to suspend a license or to request that a court issue such a notice. Mr. Joyner was not issued a notice.

45. CSSD's failure to provide Mr. Joyner a notice of suspension deprived him of a request for a hearing before the Court or the Director. As a result, Mr. Joyner was unable to contest the alleged arrearage, whether the amount of his alleged past-due support was greater than or equal to two months of support payments or $500; and whether the custodial parent resided in the state of South Carolina.

46. Defendants therefore suspended the driver's license of the Plaintiff under the false pretense that he failed to pay child support for two months of payments or $500, without assessing that the ($2,078.34) arrearage was a product of TANF Benefits paid to the custodial parent relying on false application information.

### B. Pursuant To South Carolina Code Of Laws "Section 63-17-7", Defendants Failed To Notify Mr. Joyner Of His Suspension.

47. Once Defendants decided to suspend the Plaintiff's license due to non-reimbursement of TANF Benefits received by the custodial parent, they had a legal duty to properly notify Mr. Joyner of their actions.

48. South Carolina law mandates that CSSD "shall review the information received pursuant to Section 63-17-1050 and determine if a licensee is out of compliance with an order for support".

14

49. Mr. Joyner currently does not and has never owed back child support or arrears in the State of South Carolina or any State, so CSSD could never have reached a determination that he was "out of compliance with an order for support".

50. CSSD failed to conduct the determination and waited nearly (12) years before suspending Mr. Joyner's license since first contacting him regarding the TANF Benefits. It was here where CSSD pursuant to Section 63-17-1060 ordered the Department Of Motor Vehicle to revoke Mr. Joyner's license due to his failure to reimburse TANF Benefits.

51. Moreover, CSSD failed to notify Mr. Joyner of the suspension as he first learned of his driving status being revoked when he sought to renew his driver's license in Alabama on March 8, 2015.

52. Since determining that his driving privileges were suspended, Mr. Joyner has corresponded with the South Carolina Department of Motor Vehicle, Department Of Social Services, Child Support Services Division and the Governor's Office.

53. To no avail, over the past (16) years Mr. Joyner has spent countless hours on the phone, mailed certified correspondences with attached evidence to the legal office of CSSD (Attorney Harry Shaw III), as well as notifying the South Carolina Department Of Social Services via a past pending lawsuit that the owed TANF Benefits were invalid and the custodial parent was not a resident of the State Of South Carolina during the application process.

54. Unfortunately, it is practically impossible for a pro se petitioner to navigate the CSSD non-custodial parent process as the agency was trained and willing to violate

15

the substantive due process, equal protection, and procedural due process rights of Mr. Joyner afforded him under the United States Constitution.

55. The Plaintiff's suspension for nonpayment of child support was illegal as he did not owe back child support and CSSD usage of their license suspension authority was nothing more than a collection procedure to coerce reimbursement of the TANF Benefits erroneously paid to the custodial parent.

### C. CSSD Determined Mr. Joyner Was Out Of Compliance With An Order For Support By Utilizing False Information.

56. Usually, driver's license suspension is the first ramification that non-custodial parents face for falling behind on their payments.

57. These suspensions leave effects that are widespread and devastating, perpetuating a cycle of poverty and despair as well as further breaking apart vulnerable families.

58. Due to a suspended license, Plaintiff faced an impossible choice: If he stopped driving, he may lose his lessons, be unable to visit or help care for his child, not be able to keep appointments with doctors or service providers, miss court appearances, and innumerable other potential consequences. Contrastly, if he kept driving, he faced the risk of being caught driving on a suspended license.

59. CSSD failure to ensure an application process that acted upon verifiable data placed Mr. Joyner in a cycle of poverty and despair.

16

60. In 2003, the custodial parent, Marrea A. Joyner-Givens visited a local CSSD office in Beaufort, SC and applied for TANF (Temporary Assistance to Families with Children) formerly known as (AFDC).

61. The caseworker for CSSD did not verify, have the ability to verify or was not trained to verify the provided information and approved the custodial parent for TANF Benefits.

62. Shortly thereafter, CSSD contacted Mr. Joyner requesting that child support for the dependent child be mailed directly to their office. Upon receipt of the request, Mr. Joyner and Ms. Joyner-Givens were residing at (4158 Overlook Place, Jackson, MS 39212).

63. Mr. Joyner refused to abide by the ill conceived request and contacted CSSD to inform them that Ms. Joyner-Givens was his wife and resided in their home in Mississippi.

64. In 2006, Mr. Joyner moved to South Carolina and upon securing a valid driver's license in the state, he was contacted by CSSD regarding back child support totaling over 35,000.

65. In the months that followed, CSSD and Mr. Joyner had many conversations, exchanged documents verifying that he did not owe arrearage and that the custodial parent and himself was married and living in Jackson, MS when she was in receipt of the TANF Benefits.

66. The custodial parent contacted CSSD and disputed the arrearage and requested that it be removed from the balance. She also requested that CSSD cease and desist from collecting child support.

17

67. In response, CSSD removed the arrearage balance but refused to discard the balance created by the TANF Benefits. Instead, they pursued the non-custodial parent in an extortion-like manner.

68. The willful and purposeful conduct of CSSD caused Mr. Joyner to lose his occupational license with the South Carolina Department of Health and Environmental Control (SCDHEC). It was this business venture that brought Mr. Joyner back to Beaufort, SC to own and operate a seafood wholesale company, Southern Style Seafood.

69. CSSD failure to verify data collected from the custodial parent, the non-custodial parent or evidence submitted proving that the submitted application contained fraudulent data violated the substantive due process, equal protection, and procedural due process rights of Mr. Joyner under the United States Constitution.

### IV. CSSD's Punitive Suspensions Violated The Equal Protection and Due Process Rights Of The Plaintiff.

### A. Defendants' Punitive Suspension Scheme Violates Equal Protection & Substantive Due Process And Discriminates on the Basis of Custody.

70. Defendants' suspension of Mr. Joyner driver's license because of his refusal to reimburse TANF Benefits violated his constitutional rights under the Equal Protection and Due Process Clauses.

71. Defendants suspended Mr. Joyner driver's license as punishment for his failure to reimburse TANF Benefits and this conduct made the assumption that the custodial parent did provide accurate data during the application process

18

custodial-based discrimination. [See, e.g., Jordan v. Jordan, 302 Pa. Super. 421, 425, 448 A.2d 1113, 1115 (1982) ("We hold . . . that where two parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker.")]. The Court looked to place both parents on equal footing in determining the primary caregiver and did not rely on historical norms.

72. Defendants suspended Mr. Joyner driver's license without first determining whether the arrearage was valid or whether the custodial parent had simply provided inaccurate information.

73. Thus, CSSD's punitive suspension scheme inevitably resulted in the Plaintiff being punished for their lack of a verification process as it pertains to non-custodial arrearage balances.

74. Punishing Mr. Joyner solely for his refusal to reimburse TANF Benefits received by the custodial parent which were garnered through providing inaccurate data constitutes custodial-based discrimination in violation of equal protection and due process.

75. CSSD's punitive suspension scheme is not rationally related to any legitimate government objective because suspending his driver's license impeded Mr. Joyner from obtaining or maintaining employment in order to meet his financial obligations and also impeded his ability to participate actively in parenting his child.

76. License suspension was counterproductive to CSSD's interests in obtaining reimbursement for TANF Benefits from the Plaintiff because it prevented him from working and

19

cost him additional expenses in the form of loss production in avoiding driving on a suspended license.

77. License suspension was also counterproductive to the best interests of the dependent child because when Mr. Joyner could not drive, he could not visit his child, drive her to school, drive her to the doctor, or otherwise engage in the everyday caretaking responsibilities of being her father.

78. In this case, Mr. Joyner's resultant inability to participate in childcare responsibilities and visitation led to a breakdown in family dynamics, as the custodial parent began to resent his perceived failures and lack of reliability. She even concluded that Mr. Joyner was not fit to be an involved parent due to his diminished income capacity and lack of mobility. The suspension significantly harmed Mr. Joyner's relationship with the dependent child.

**B. Defendants' Punitive Suspension Scheme Violates Equal Protection & Discriminates on the Basis of Custody Without A Governmental Interest**

79. Although custody is usually not a suspect class, in this case, Defendants' enforcement of a failure-to-pay suspension is subject to heightened scrutiny because the Plaintiff refuses to reimburse TANF Benefits and suspension deprived him of his ability to drive legally which was his fundamental right. [See San Antonio School District v. Rodriguez, 411 U.S. 1, 93 (1973)]. Therefore, because Defendants' punitive suspensions are not directly tailored to the collection of child support, they are unconstitutional.

80. Mr. Joyner's suspension has rendered him completely unable to work at the same level as pre-suspension. It is

20

not the case that the cost of repaying the TANF Benefits are great, but invalid. Rather, the Plaintiff refuses to reimburse an invalid debt. Mr. Joyner refuses to pay and have his license reinstated because to do so would be rewarding those involved for fraudulent activities.

81. CSSD's imposition of driver's license suspensions against non-custodial parents like the Plaintiff constitutes an absolute deprivation of their ability to drive. Mr. Joyner had no option that allowed him to drive legally while his license was suspended. His suspension was the result of his refusal to satisfy the invalid debt. Thus, this case is one in which custody is a suspect class.

82. Since this case falls into the exception in which custody is a suspect class, the CSSD's suspension of Mr. Joyner license violated equal protection because it is not "narrowly tailored to serve a compelling government interest." [Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 219 (1995)].

83. For Mr. Joyner, the suspension is not even rationally related to the state interest of child support collection because they are actually counterproductive and caused him to lose income.

84. Nor was his suspension narrowly tailored, or even rationally related to the goal of protecting the best interest of his child, since license suspension made Mr. Joyner less available to his child and often directly impeded their parent-child relationship.

### C. Defendants' Punitive Suspension Scheme Violates Substantive Due Process And It Infringes on Plaintiff's Fundamental Right to Travel.

21

85. Mr. Joyner has a fundamental due process right to travel. [See, e.g., Saenz v. Roe, 526 U.S. 489 (1999)]. Although there is no fundamental right to drive, the Supreme Court has guaranteed freedom of movement to people who are custodial parents as well as non-custodial parents. Allowing states to limit the movement of those who are non custodial "would also introduce a caste system utterly incompatible with the spirit of our system of government." [Edwards v. People of State of California, 314 U.S. 160, 181 (1941)]

86. While the Fourth Circuit has not ruled definitively on the issue, other circuits have specifically recognized a fundamental right to intrastate travel. [See, e.g., King v. New Rochelle Mun. Hous. Auth., 442 F.2d 646, 648 (2d Cir. 1971); see also Johnson v. City of Cincinnati, 310 F.3d 484, 495 (6th Cir. 2002)].

87. Because Mr. Joyner's license has been suspended, he cannot drive within the United States without risking criminal consequences.

88. Plaintiff's suspension is therefore an "actual barrier to intrastate movement." [Weems v. Little Rock Police Dept., 453 F.3d 1010, 1016 (8th Cir. 2006)].

89. Mr. Joyner in particular has lived in a rural area where public transportation options are nonexistent.

90. Defendants have suspended the Plaintiff's license simply because he refused to reimburse TANF Benefits and therefore have impeded his fundamental right to intrastate travel.

91. Because it implicates a fundamental liberty interest, Defendants' suspension scheme must achieve compelling state objectives.

92. Defendants' suspension scheme is not limited in scope; it is a broad prohibition on all driving in all locations at all times in all circumstances for an indefinite period.

93. While the collection of child support is a significant state interest, suspending the driver's licenses of Mr. Joyner who refuses to pay an invalid debt is not narrowly tailored to collection. Indeed, it is counterproductive because it hampers the Plaintiff's ability to make a living and pay his essential expenses, thus decreasing his ability to care for the dependent child.

## D. Defendants' Punitive Suspension Scheme Violates Procedural Due Process And Does Not Guarantee Or Provide Notice Of A Hearing.

94. Mr. Joyner's driver's license is recognized as a property interest that may not be taken away without due process of law. [Bell v. Burson, 402 U.S. 535 (1971)]. Due process requires the state of South Carolina to conduct debt validation hearings and to provide notice that such hearings are available.

95. The debt validation hearing must contemplate the custodial parent's claim of a debt. Because Defendants suspended the Plaintiff driver's licenses due to his refusal to pay an invalid debt, a meaningful hearing would be one that determines whether the debt was valid, since the validity of the debt speaks directly to whether or not action should be taken on behalf of the dependent child.

23

96. The debt validation hearing must be available before suspension takes effect as the purpose of CSSD's punitive suspension scheme is to coerce payment, not to get dangerous drivers off the road.

97. Therefore, no urgent safety need was calling for immediate suspension as Mr. Joyner was entitled to a debt validation hearing.

98. South Carolina law does not currently guarantee or even allow a debt validation hearing for parents facing suspension due to alleged unpaid child support or reimbursement of TANF Benefits. The only hearing that is available is one specifically limited to ensuring that no errors were made in the calculations where Administrative law judges will only allow testimony concerning methods of payment.

99. Due process required that Mr. Joyner while facing suspension for non-reimbursement of TANF Benefits should have received adequate notice that a debt validation hearing was available.

100. Prior to suspending Mr. Joyner driver's license for refusing to reimburse TANF Benefits, CSSD did not provide any notice informing the Plaintiff of any right to a debt validation hearing. In fact, Mr. Joyner specifically informed CSSD that the arrearage was invalid which should have prompted a debt validation hearing.

101. Moreover, CSSD does not independently review the validity of the debt before or after ordering the harsh punishment of suspension. Thus, Defendants suspended Mr. Joyner's license without any consideration of whether or not the debt was valid.

24

102. Because South Carolina law does not require a debt validation hearing for non-custodial parents facing driver's license suspension for unpaid child support or reimbursement of TANF Benefits, there is a high risk that non-custodial parents will be deprived of their driver's licenses for reasons directly attributable to custody.

## FIRST CAUSE OF ACTION
### Right To Due Process Of Law
### 42 U.S.C. §1983 - Fifth & Fourteenth Amendment

103. Defendants, their employees and agents, owed the Plaintiff a duty under the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution to protect the personal property of the Plaintiff. This duty called for the safeguarding of the Plaintiff's driving privileges as prescribed in 42 U.S.C. §1983.

104. Despite this well-defined duty, Defendants provided the Plaintiff with no pre-notice that his driving privileges were at risk of being suspended and did not act to provide any means of post-notice with steps on how to have them reinstated. They also failed to conduct a debt validation hearing in the face of more than sufficient evidence to question the validity of the TANF Benefits.

105. Plaintiff believed that the acts of the Defendants, their employees and agents, were intentional in failing to protect the Plaintiff's driving privileges and that, at minimum, Defendants were deliberately indifferent to the likelihood that the benefits were invalid due to their desire to be reimbursed for TANF payments.

25

106. Defendants have suspended the driving privileges of the Plaintiff without due process or lawful justification even though Mr. Joyner provided evidence to contradict the validity of the benefits and proved that the TANF payments were spent in Mississippi.

107. As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer loss of his driving privileges and is entitled to injunctive relief for his property loss and other resultant injuries.

**SECOND CAUSE OF ACTION**
**Violation of Civil Rights:**
**42 U.S.C. § 1983, Fourteenth Amendment**
**State Created Danger**

108. By depriving Mr. Joyner of his driving privileges due to TANF Benefits not being reimbursed, the acts of Defendants, their employees and agents, have created a danger for the Plaintiff by exposing him to the elements of being unable to drive, unable to maintain an independent work environment, or visit his daughter.

109. Defendants knew or should have known that license suspension would force Mr. Joyner to choose between driving without a license or refrain from driving. They also knew or should have known that license suspension would limit his ability to arrive and depart from work independently as well as from the residence of his child.

110. As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer actual and potential injury to his mental health and safety and is entitled to

injunctive relief for his property loss and other resultant injuries.

### THIRD CAUSE OF ACTION
### Violation of Civil Rights:
### 42 U.S.C. § 1983, Fourteenth Amendment
### Interference By Threat, Intimidation or Coercion

111. Defendants' agents and employees have used the threat of arrest and intimidation to interfere with Plaintiff's rights to maintain his driving privileges. After (12) years of promoting arrest, federal tax offsets and garnishments in an attempt to recover TANF Benefits invalidly paid to the custodial parent, Defendants opted to suspend the Plaintiff's driver's license to coerce reimbursement.

112. Having failed for over (12) years to coerce reimbursement of TANF Benefits, Defendants sought to extort money from Mr. Joyner.

113. As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer actual and potential injury to his mental health and safety and is entitled to injunctive relief for his property loss and other resultant injuries.

### FOURTH CAUSE OF ACTION
### Violation Of State Law
### South Carolina Code Of Laws; Section 63-17-1060
### State Abused Its Discretion

114. Defendants' policies, practices and conduct challenged herein violated South Carolina Code Of Laws; Section 63-17-1060, in that Defendants' agents and employees failed

27

to protect and preserve the driving privileges of the Plaintiff.

115. Their conduct violated the state law when their lawful justification of suspending the driving privileges of Mr. Joyner changed from being "out of compliance with an order of support" (which he was not) to "failing to reimburse TANF Benefits".

116. Defendants failed to provide pre-notice that his driving privileges would be suspended and failed to provide post-notice so that the Plaintiff would have the opportunity to reinstate his driving privileges.

117. As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer actual and potential injury to his mental health and safety and is entitled to injunctive relief for his property loss and other resultant injuries.

**FIFTH CAUSE OF ACTION**
**Violation Of State Law**
**Conversion**

118. Mr. Joyner was in possession of his driving privileges at the time that Defendants' agents and employees ordered that the driver's license be suspended without prior or post notice.

119. Defendants' agents and employees intentionally prevented the Plaintiff from safeguarding his license from being suspended by failing to issue a pre-notice and a post-notice of the suspension.

28

120. Defendants had a duty to protect Mr. Joyner's privileges pursuant to South Carolina Code Of Laws; Section 63-17-1060.

121. Plaintiff was not "out of compliance with an order of support" at the time that Defendants suspended his driving privileges.

122. Defendants breached their duty to protect Mr. Joyner's driving privileges when they fraudulently misrepresented that he was "out of compliance with an order for support".

123. Defendants had no legitimate governmental interest that gave them the legal right or justification to suspend Mr. Joyner's privileges and to do so without prior or post notice of their intent.

124. As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer actual and potential injury to his mental health and safety and is entitled to injunctive relief for his property loss and other resultant injuries.

## SIXTH CAUSE OF ACTION
### Violation Of State Law
### Fraudulent Misrepresentation

125. Defendants fraudulently misrepresented facts that Mr. Joyner was out of compliance with an order of support for the sole purpose of trying to coerce reimbursement of TANF Benefits.

126. Defendants were informed that the benefits were invalid due to the TANF payments being obtained through an application process that relied on inaccurate data.

29

127. Defendants intentionally ignored exculpatory submitted evidence of facts and suspended the Plaintiff's privileges in the face of him proving that he was "in compliance with an order of support".

128. As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer actual and potential injury to his mental health and safety and is entitled to injunctive relief for his property loss and other resultant injuries.

## V.    PRAYER FOR RELIEF

129. Wherefore, Citizens United prays for the following relief:

1. an injunctive judgment declaring the said conduct of the State Of South Carolina to be unconstitutional, and prohibit them from using driving privileges beyond practical applications to collect child support in arrears.

2. a preliminary and permanent injunction enjoining CSSD from enforcing the already existing suspension of Plaintiff's driving privileges as applied within the universal driving database.

3. costs and attorneys fees pursuant to any applicable statute or authority; and

4. any other relief this Court in its discretion deems just and appropriate.

30

Date:   October 28, 2020

RESPECTFULLY SUBMITTED,

/s/ *Leroy T. Joyner, Jr.*

Leroy T. Joyner, Jr.
Pro Se Counsel
P.O. Box 605
Columbus, GA  31902
Phone: (334) 439-8200

31