UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HALEIGH K. MCLENDON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| UNITED STATES TENNIS | * | |
| ASSOCIATION, INC., USTA | * | |
| PLAYER DEVELOPMENT INC., | * | |
| GRASSROOTS TENNIS ASSOC., | * | |
| LLLP, IN DEPTH ACADEMY, | * | |
| DOROTHEA L. JOYNER, LEROY | * | CASE NO.: 2:25-cv-00745-RAH- |
| THOMAS JOYNER, JR., and | * | KFP |
| Fictious Defendants "A", "B", "C", | * | |
| and "D", whether singular or plural, | * | |
| those other persons, corporations, | * | |
| firms or other entities whose | * | |
| wrongful conduct caused or | * | |
| contributed to cause the injuries and | * | |
| damages to the Plaintiff, all of whose | * | |
| true and correct names are unknown | * | |
| to Plaintiff at this time, but will be | * | |
| substituted by amendment when | * | |
| ascertained, | * | |
| | * | |
| Defendants. | * | |

**<u>UNITED STATES TENNIS ASSOCIATION INCORPORATED AND
USTA PLAYER DEVELOPMENT INCORPORATED'S
OBJECTIONS AND RESPONSE TO
PLAINTIFF'S MOTION TO REMAND</u>**

COME NOW Defendants UNITED STATES TENNIS ASSOCIATION

INCORPORATED ("USTA Inc.") and USTA PLAYER DEVELOPMENT,

INCORPORATED ("USTA Player Development") (collectively "USTA Defendants"), by and through their undersigned counsel, and without waiving any defenses and expressly preserving all such defenses, hereby respond and object to Plaintiff's Motion to Remand as follows:

## **INTRODUCTION**

The USTA Defendants filed a Notice of Removal on September 16, 2025, within thirty (30) days of service of Plaintiff's Complaint, pursuant to 28 §U.S.C. 1441(a), 28 U.S.C. §1332(a) and 28 U.S.C. §1446(b)(1) based upon the allegations contained in the initial pleadings of the Plaintiff. [Doc 1]. At the time of the removal, each Defendant had provided consent to the removal process. Defendants Leroy and Dorothea Joyner had expressed their consent in writing, and the representatives of Defendants Grassroots Tennis Association and InDepth Academy provided verbal permission to the undersigned counsel. [Doc 1; Doc 15, Ex. A and Ex. B; *Declaration of Dorothea Joyner for InDepth Academy, attached as* Exhibit A; and *Declaration of Caylin Edley for Grassroots Tennis Association, attached as* Exhibit B].

At all times relevant to this lawsuit, the Defendants have been diverse in citizenship from the Plaintiff, since Defendant Leroy Joyner should be considered a citizen of Georgia. [Doc 1]. In the removal notice, the USTA Defendants also asserted that this case met the $75,000 amount in controversy requirement, based

upon the facial allegations of the Complaint and the extensive nature of the damages sought. [Doc 1, pg.1; Doc 1-1].

Plaintiff has filed a Motion to Remand. [Doc 12-1]. In support of this Motion, she claims the Defendants are not diverse, have not consented to removal, and have not established the amount in controversy exceeds the $75,000 requirement. Id. Her Complaint did not specify a dollar amount of damages. [Doc 1-1]. However, the original jurisdiction of this case in this Court remains present, as the USTA Defendants can show by a preponderance of the evidence that all requirements of diversity jurisdiction were met at the time of the filing for removal. 28 U.S.C. §1332(a), 28 U.S.C. §1441(a) and 28 U.S.C. §1446(b)(1).

## **UNDISPUTED JURISDICTIONAL FACTS**

Plaintiff has filed a forty-two (42) page Complaint alleging sexual assault and battery, intentional infliction of emotional distress, negligent supervision and training and negligence and wantonness against two (2) individual Defendants, four (4) corporate Defendants, as well as a set of potential unknown Defendants, seeking recovery for the "pervasive sexual abuse of minors and the failure to protect young athletes in the sport of tennis from a sexual predator." [Motion to Remand, Doc 12-1, pg.1; Doc 1-1]. Plaintiff alleges she was sexually abused by Defendant Leroy Thomas Joyner, Jr. from May of 2016 to May of 2019 after she moved into the Joyners' "Columbus, Georgia home" in 2015 to pursue intensive tennis training.

[Doc 1-1, ¶65, ¶67, ¶69, ¶72]. She seeks extensive damages for past, present and future injuries, including compensatory damages, lost earnings, attorneys' fees, and punitive damages. [Doc 1-1].

Defendant Leroy Joyner has had no financial, residential, personal or business ties to Alabama since 2018. [Ex. B, ¶6; Doc 1-4, ¶6; Doc 12-1, pg.2]. Before that time, Defendant Leroy Joyner had resided with his family in Columbus, Georgia, but he had commuted several nights a week to stay at his daughter's house in Alabama to allow him to teach tennis lessons in Ozark with Defendant Grassroots Tennis Association ("Grassroots"). [Doc 12-4]. Plaintiff is correct that Leroy Joyner had an Alabama driver's license, but it was suspended in 2015, prior to the time of the family's move to Columbus, Georgia. He had also filed tax returns in Alabama, presumably before his work there ended in 2018.[1] [Doc 12-1]. Plaintiff cannot, however, ignore her own admission in addition to the undisputed testimony in the record that show Defendant Leroy Joyner intentionally moved the operations of Defendant Grassroots out of Ozark, Alabama in late 2018 to Columbus, Georgia. [Motion to Remand, Doc 12-1, pg.2; Doc 12-11, pg. 36, lines 2-8 and pg. 40, lines 3-7; Edley Affidavit, Ex. B, ¶6].

---

[1] Plaintiff alleges the Joyner Defendants coached and homeschooled her in the hopes of a college tennis career through their work with their Defendant Grassroots Tennis Association and Defendant InDepth Academy. [Doc 1-1, ¶20,¶27,¶¶57-58]. Plaintiff admits the Defendant InDepth Academy operated out of the Joyners' home in Columbus, Georgia. [Doc 1-1-¶57].

The move of the Defendant Joyners' tennis operations to Georgia in late 2018 cut all ties that Defendant Leroy Joyner had to Alabama.  These facts have been confirmed by the testimony of Dorothea Joyner, Leroy Joyner and the Plaintiff's mother, Mrs. Shajuana McLendon, who testified in June of 2020 that Leroy Joyner had moved his entire tennis team from Alabama, and her daughter moved with him to continue her training with him in Columbus, Georgia. [Doc 1-1, ¶65; Doc 1-4, ¶7; Doc 1-5, ¶9, ¶13; Doc 12-11, pg. 36, lines 2-8 and pg. 40, lines 3-7; *See also* Exhibit B, ¶6, *Caylin Edley's Declaration* confirming Leroy Joyner moved the Grassroots tennis business to Georgia in 2018]. The Joyners have also testified that after Leroy Joyner stopped teaching tennis in Alabama, they had no access to the residence in Ariton, Alabama where Leroy Joyner had previously been staying. [Doc 1-5, ¶11 and Ex. E; Doc 1-4, ¶7]. Instead, the Joyners have submitted unrebutted testimony showing they lived, worked and had their family in Columbus, Georgia on a full-time basis after the 2018 move of Defendant Grassroots. [Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶13; Doc 12-4].

The Joyner Defendants had been out of Alabama for over a year and a half before Defendant Leroy Joyner was arrested for aggravated sexual abuse of a minor child, "C.S.". [Text Entry, June 5, 2020, U.S. Dist.Ct. AL Middle District (Dothan) 1:20-cr-0033-ECM-SMD-1]. A detention hearing was held on June 10, 2020, and he was ordered to remain on house arrest in Columbus, Georgia.  [Doc 14 of AL C.S.

criminal case, 1:20-cr-0033-ECM-SMD-1]. Defendant Leroy Joyner was later convicted and sentenced in August of 2024 to serve 300 months in prison. [Doc 1-1-¶¶84-85]. Since Defendant Leroy Joyner is now serving time in Yazoo City, Mississippi, his citizenship is adjudged as where he was domiciled prior to his incarceration. *Polakoff v. Henderson*, 370 F.Supp. 690, 693 (N.D.Ga.), *aff'd* 488 F.2d. 977 (5th Cir. 1974).

Both Defendant Dorothea and Leroy Joyner have testified that after 2018 and in the years prior to his home arrest, they resided full-time together in Columbus, Georgia with their family and presumably their personal property, in what they consider their current and permanent home. [Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶13; Doc 12-4]. This testimony demonstrates that both Leroy Joyner's personal and professional lives were fully based in Columbus, Georgia during this time period, and that has not changed. [*Id.*; *See also* Ex.B, ¶6]. Defendant Leroy Joyner continues to receive his mail in Columbus, Georgia. [Doc 9, pg.5; Doc 12-9, pg. 24; Doc 12-10, pg.31]. Defendant Joyner has stated his plans to return to Columbus, Georgia, where his family is located, upon his release from prison, and there is no evidence or objective fact that conflicts with or suggests that this intention is not genuine. [Doc 1-4, ¶15].

In fact, Defendant Leroy Joyner has undertaken significant *pro se* litigation to solidify his Georgia citizen and obtain Georgia driving privileges. In 2019,

6

Defendant Leroy Joyner filed two lawsuits in an attempt to remove restrictions upon his Alabama driver's license for the sole stated purpose of obtaining a Georgia license and other identification privileges. [*See Exhibit C,* Complaint in Case 4:19-CV-00-148-CDL filed by Leroy Joyner against the Child Support Services Division of the South Carolina Dept. of Social Services, et. al; *See also* Doc 12-9; Doc 12-10].  In each of those lawsuits, he alleged his residence was in Columbus, Georgia and he was filing as a Georgia citizen. [*Id.*]. Contrary to the Plaintiff's assertions, nothing in those pleadings suggests anything other than a *pro se* litigant attempting to obtain Georgia driving privileges and to dispense of any legal ties to South Carolina or Alabama. [*Id.*]. Defendant Leroy Joyner has never claimed to be anything other than domiciled in Georgia, even if he did not understand the legal distinction from the evidence demonstrating his residency. [*Id.*].

In addition to having proven that all Defendants have been diverse beyond a preponderance of the evidence, it is also apparent that the at the time that the Notice of Removal was filed, the consent of all Defendants was appropriately recorded. Defendant Leroy Joyner had already signed <u>two</u> Declarations consenting to the removal to this Court that he executed and returned through FedEx back to the undersigned USTA Defendants' counsel. His first Declaration was signed on September 8, 2025, and he signed another copy of the same Declaration later on September 15, 2025.  [Doc 15, Ex. A and B]. Although Defendant Joyner has now

7

claimed he did not know the content in the Declaration he signed on September 8, 2025, he did not raise any such concerns for the second Declaration that he signed and executed a week later, on September 15, 2025. [Doc 9, pg.2, FN1]. Instead, he has admitted that he had read the full draft of the Declaration by that date, and he returned a full and complete copy of the second Declaration he signed to the undersigned counsel that same day. [Doc 15, Ex. A and Ex. B, ¶9-10]. His Declaration specifically states: "I consent to the removal of the above captioned case from the Circuit Court of Barbour County, Alabama to the United States District Court for the Middle District of Alabama." [Doc 1-4, ¶17; Doc 15, Ex. A. ¶17]. Accordingly, there should be no issue with the consent provided at the time the USTA Defendants filed for removal on September 16, 2025.

Having shown that original jurisdiction in this Court is proper, the USTA Defendants request that the Motions to Remand be denied and that this case be retained in this Court.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Motion to Remand

The jurisdictional inquiry in a Motion to Remand should be limited to the facts at the time the removal is initiated. *Sierminski v. Transouth Financial Corp.*, 216 F.3d. 945, 949 (11th Cir. 2000). "[T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should

be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction. *Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 27 S.Ct. 184 (1907)", *as cited in Jones v. Novartis Pharmaceuticals Co.,* 952 F.Supp.2d. 1277 (S.D.Ala. 2013); See also *Roe v. Michelin North America, Inc.*, 613 F.3d. 1058, 1064 (11th Cir. 2010)(Holding that the right of a defendant to remove a case should be protected against trick pleadings intended to make federal jurisdiction disappear).

## B. Diversity Jurisdiction

### 1. Defendant Leroy Joyner is a citizen of Georgia.

Plaintiff first filed this lawsuit in Muscogee County, Georgia and pled that Defendant Leroy Joyner was a resident of the State of Georgia for purposes of venue and jurisdiction. [Doc 15-FN1, *See attached Exhibit D,* Muscogee County State Court, Civil Action File No. SC-2025-Cv-001349, Complaint, ¶7]. After making this admission as to Joyner's domicile, Plaintiff voluntarily dismissed that action and refiled it in the Circuit Court of Alabama. [*Id*.]. Plaintiff's counsel now alleges Leroy Joyner was an Alabama citizen. [Doc 1-1, ¶7, FN1]. However, the facts of this case show well beyond a preponderance of the evidence that Defendant Leroy Joyner has not had any financial or personal ties to Alabama since 2018 and instead has consistently asserted and demonstrated his citizenship lies in Georgia.

9

"State citizenship, or 'domicile, for purposes of diversity jurisdiction is determined by two factors: **residence and the intent to remain**." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597 (1989)(emphasis supplied).  The jurisdictional facts that support removal must be judged at the time of removal, and any post-petition affidavits are allowable only if relevant to that period of time. *Sierminski,* supra at 949.  The objective facts bearing on an individuals' "entire course of conduct" determine domicile for diversity-jurisdiction purposes. McDonald v. Equitable Life Ins. Co. of Iowa, 13 F.Supp.2d. 1279, 1281 (M.D.Ala. 1998).  Since late 2018, Defendant Leroy Joyner's entire course of conduct has been centered in Georgia.

> ### a. Plaintiff admits that Defendant Leroy Joyner moved his tennis operations out of Ozark, Alabama in 2018, and all evidence of records confirm that he had no financial or personal ties to Alabama after that move was made.

Defendant Leroy Joyner has continued to assert his status as a Georgia resident, (for all legal purposes, as his "domicile") since late 2018, and that is consistent with the evidence of this case. [Doc 1-4,[2] ¶14; Doc 1-5, ¶9, ¶13; Doc 9, pg. 5; Doc 12-4; Exhibit B, ¶6; Exhibit C, ¶15; Exhibit D, ¶7]. In addition to his own testimony, others have supported the fact that he made the choice to move his tennis operations out of Alabama and to Columbus, Georgia in 2018.  [Exhibit B, ¶6; Doc

---

[2] Defendant Leroy Joyner did not contest that Georgia was his domicile or the statements in his Declaration supporting those facts in his Omnibus Motion to Remand. [Doc 1-4; Doc 9].

1-5, ¶9, ¶11; Doc 12-1, pg. 2]. Plaintiff's mother testified in support of him at his initial detention hearing in a separate criminal matter, and she confirmed in that testimony that in 2018 Defendant Leroy Joyner told her: "So what I'm going to do is pull the team out of Ozark, and we're going to Columbus. And that's what he did." [Doc 12-11, pg. 36, lines 3-8 and pg. 40, lines 3-7]. She confirmed that her daughter, the Plaintiff, lived with the Joyners in their home in Columbus, Georgia until 2019. [Doc 1-1, ¶65]. Plaintiff's Motion to Remand acknowledges that Defendant Grassroots stopped its operations in Ozark, Alabama in 2018. [Doc 12-1, pg.2].

It is undisputed that Defendant Leroy Joyner's family had been in Columbus, Georgia since 2015, and that he ceased his work in Alabama in 2018. In addition, he and his wife testified that he had no access to the residence or office they had previously used in Ariton, Alabama after moving the business to Columbus, Georgia. [Doc 1-4, ¶7; Doc 1-5, ¶11, Ex.E]. He no longer had any work, any place to stay, and his Alabama license had been suspended several years earlier in 2015. From a personal perspective, Defendants Leroy and Dorothea Joyner also demonstrated that their family lived partially in Columbus, Georgia since 2015, and that began residing there on a full-time basis, together with their family and all their property, when the Alabama tennis operations were moved to Georgia in 2018. [Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶13; Doc 12-4]. Defendant Leroy Joyner has continued to receive his mail in Columbus, Georgia as well. [Doc 9, pg.5; Doc 12-

11

9, pg. 24; Doc 12-10, pg.31]. For an individual who has been hampered with obtaining residency privileges (i.e. name on a lease, GA driver's license, etc.) due to a number of outside intervening legal issues, Leroy Joyner has done all he can as a *pro se* person to affirmatively move forward with making Georgia his legal domicile.

   **b.** ***Plaintiff's reference to 2018 litigation initiated by Defendant Leroy Joyner as a pro se litigant is irrelevant and untimely and fails to account for the totality of the circumstances necessary for the jurisdiction determinations of this case.***

Defendant Leroy Joyner fought his claim to Georgia citizenship in a case he filed *pro se* against his criminal case's accuser, C.S., for defamation prior to his criminal proceedings. [Doc 12-4]. In that 2018 matter, this Court reviewed the potential for diversity jurisdiction <u>at the time of the filing</u> of his Complaint. As a *pro se* litigant, Joyner's efforts were deemed unpersuasive, since he only characterized Georgia as his residence, and the evidence showed he had been working and staying in Alabama at the time period that was relevant to his 2018 lawsuit. [Doc 12-2].[3] However, Joyner tried adamantly to show his evidence of his "residence" even though he lacked the legal knowledge to know the distinction from his "domicile." [*Id.*].

---

[3] This ruling should be held as irrelevant to these proceedings, as from early 2019 until his arrest, it is undisputed that Defendant Leroy Joyner resided full-time in Columbus, Georgia; he worked there; he made plans to stay only there, and he has said he intends to return there after his time is served. [Exhibit B, ¶6; Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶11, ¶13; Doc 12-4; Doc 12-1, pg. 2; Doc 12-11, pg. 36, lines 3-8 and pg. 40, lines 3-7].

12

The documentation provided by Leroy Joyner in the Sanders Litigation specifically noted that he had "resided in Georgia for more than the yearly (183) days rule of the last (4) years but due to legal circumstances, he could not obtain a Georgia Drivers License therefore blocking him from leasing a home, obtaining utilities or conducting any business where a valid (State ID) was required)." [Doc 12-4]. In his attached "Evidence in Support of Being a Georgia Resident" he stated that:

> **As early as the Summer of 2015**, the family resided in Columbus and Mr. Joyner commuted to Alabama to teach lessons. He would stay at their residence in Ariton, Alabama ("Ariton") on Monday through Wednesday night and reside in Columbus" [for the next four (4) nights]….
>
> **Although he resided at both addresses weekly for over (4) years**, Mr. Joyner was unable to change his drivers license or enter into any residence activities due in part to ongoing litigation…..
>
> [Doc 12-4].

This statement confirms the Joyner family had been in Columbus since 2015. There is no evidence that Leroy Joyner was teaching tennis in Alabama in 2020 as Plaintiff suggests, particularly since that assertion directly contradicts Plaintiff's admission that Defendant Grassroots ceased its operations in Alabama in 2018 and the evidence of record. [Doc 12-1, pg.2; Exhibit B, ¶6].

The only evidence presented by the Plaintiff as to Defendant Leroy Joyner's possible Alabama citizenship arises from a time period that should be deemed

13

irrelevant, as this was years before he moved his Alabama tennis operations to Georgia. At all times since early 2019, it is undisputed that Joyner has stated, and taken the affirmative steps, to maintain a full-time domicile and workplace in Georgia. [Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶13; Doc 12-4]. *Sieriminski* at 949; *McDonald v. Equitable Life Insurance Co. of Iowa*, 13 F.Supp.2d. 1279 (M.D.Ala. 1998)(retaining license from other state was not determinative as to citizenship when evidence shows a residential and work move in a new state, and no property was owned in state where plaintiff formerly resided). Each exhibit submitted by the Plaintiff demonstrates Defendant Leroy Joyner's intent and effort to be a Georgia citizen.

### c. *"Home incarceration" was not a forcible change in residency for Defendant Leroy Joyner.*

There is no evidence that suggests the house arrest of Defendant Leroy Joyner, ordered on June 10, 2020, required him to move to a new location or residence, because all evidence of records shows that Joyner was already in Columbus, Georgia, residing with his family and working on a full-time basis. [Exhibit B, ¶6; Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶13; Doc 12-4]. The Judge who ordered Defendant Leroy Joyner to "home incarceration" decided the initial placement would be to allow him to continue to live where he already resided. The officer investigating the pending criminal case against Defendant Leroy Joyner testified in his detention hearing on June 10, 2020 that Joyner had lived in Columbus for the last

14

five (5) years and had reached an agreement with the landlord that he could continue living at the family home on Peachtree Drive that was leased by his wife (due to his issues with his driver's license suspension). [Doc 12-11, pg. 92, lines 13-24]. Defendant Leroy Joyner's Georgia domicile was established well before he was involuntarily placed on house arrest in his separate criminal proceedings concerning C.S.

Well before the point that he was placed on "home incarceration," Defendant Leroy Joyner had already resided full-time in Columbus, Georgia. It is undisputed that years before June 10, 2020, his business, family, property were with him, and even his U.S. mail was sent to Columbus. [Exhibit B, ¶6; Exhibit D, ¶7; Doc 1-4, ¶7, ¶10, ¶13; Doc 1-5, ¶9, ¶13; Doc 9, pg. 5; Doc 12-4; Doc 12-9, pg. 24, Doc 12-10, pg. 31]. Due to other legal troubles that Defendant Leroy Joyner encountered, he was prevented from gaining a Georgia driver's license and from being placed on a lease. However, he had already taken affirmative steps to work, reside, and legally gain the privileges of citizenship in Georgia in the years before his arrest. [Exhibit C; Doc 12-4; Doc 12-9; Doc 12-10]. The Court ordering his detention did not have to bring about a change in his residency when requesting him to submit to "**Home** Incarceration" as the Plaintiff appropriately describes it.

> ### d. *Leroy Joyner made substantial legal efforts to obtain a Georgia driver's license prior to his arrest for the criminal charges that led to his incarceration.*

Defendant Leroy Joyner has not only consistently maintained his Georgia citizenship at all times from 2018 to the present, but he has also filed other *pro se* litigation trying to restore his legal rights, so that he could obtain the legal driving and other identification privileges in Georgia. While Defendant Leroy Joyner resided full-time with his family in Columbus Georgia, in 2019, he filed a lawsuit against the Governor, Department of Social Services and Child Support Services Division of South Carolina in the United States District Court, Middle District of Georgia, Columbus Division (4:19-cv-00148-CDL), claiming that he had been unlawfully deprived of his Alabama license privileges in a 2015 suspension due to an unsatisfied child support order from an ex-wife. (*Exhibit C*, Complaint, Doc 1, pgs.7-9, 4:19-cv-00148-CDL).  He noted that he had tried for years to get a Georgia driver's license but could not obtain one due to these ongoing legal issues. [*Id*.]

Due to his inability to maintain proceedings over South Carolina defendants in Georgia, Defendant Leroy Joyner again sued multiple Defendants in South Carolina in another *pro se* lawsuit over the same 2015 suspension of his drivers' license, which he claimed caused him constitutional harm. [Doc 12-9]. In that Complaint, he again alleged that "Plaintiff Leroy T. Joyner, Jr. is a 46-year-old resident of Columbus, Georgia." [Doc 12-9, ¶15; Exhibit C, ¶15].  Contrary to the assertions of the Plaintiff, nothing submitted by Leroy Joyner in litigation against the South Carolina defendants asserted any intention to remain an Alabama resident.

16

In fact, he specifically alleged his goal was to get his license in good standing so that it could be transferred to Georgia. [Exhibit C; Doc 12-10, ¶15].

Defendant Leroy Joyner's outside legal troubles and his ignorance of the law at the time of filing *pro se* litigation should not be determinative, especially when other evidence showing his entire course of conduct from 2018 through June of 2020 demonstrates that he had both a residence and an expressed intention to be and remain a full-time, working citizen of Georgia. *McDonald,* supra *at 1281*(noting that the presumptions are merely aids for the court and cannot override the actual facts of the case, the entire course of conduct must be examined, including the individual's intent when that is consistent with the facts of an individual's residence).

The evidence of Defendant Leroy Joyner's "entire course of conduct" shows he had no ties to Alabama after he moved his business operations to Columbus, Georgia in 2018. [Exhibit B, ¶6; Doc 1-4, ¶7; Doc 1-5, ¶9, ¶¶11-15; Doc 12-11, pg. 36, lines 2-8 and pg. 40, lines 3-7; Doc 12-1, pg. 2]. Instead, the undisputed evidence shows that he lived, worked, and made legal efforts to be a Georgia resident in both his personal and his professional lives, before his arrest and/or home incarceration. [*Id.*; Exhibit C, ¶15; Exhibit D, ¶7]. He has also testified that he has plans to return to Columbus, Georgia after his prison sentence is served. [Doc 1-5, ¶15]. The USTA Defendants can show it is more likely than not that all Defendants remain diverse to

17

the citizenship of the Plaintiff, so that the original jurisdiction of this Court remains present.

### 2. Defendant Leroy Joyner provided his valid written consent to removal in two Declarations dated a week apart, such that his consent was valid and remains binding.

The jurisdictional inquiry in a remand motion is limited to the facts <u>at the time the removal is initiated</u>. [4] *Poore v. American-Amicable Life Ins. Co. of Texas*, 281 F.3d. 1287, 1290-1291 (11th Cir. 2000)(overruled on other grounds), as cited in *Cartee v. Precise Cable Const., Inc.*, 2005 WL 2893951 at FN4 (S.D.Ala. Nov. 1, 2005). In *Cartee*, the Court struck a *pro se* Defendant's later-filed notice of withdrawal of consent to removal, since there was no basis to suggest it was invalid when originally filed. [Id.]. Similarly, Defendant Joyners' protests as to the two Declarations he submitted should be deemed as irrelevant and directly contrary to the two written consents he provided at the time of the removal of this case. [Doc 15-Ex.A and Ex.B].

According to his own Omnibus Motion, Defendant Leroy Joyner claims he did not read the Declaration prior to signing the first copy on September 8, 2025. [Doc 9]. However, he admits that he had seen and read a full copy of the Declaration by September 9, 2025, which was six (6) days before he signed the second copy. [Doc

---

[4] The USTA Defendants have responded in full to the assertions that Defendant Leroy Joyner did not provide a valid written consent to the removal of this case in their Response to his Omnibus Motion filed on October 14, 2025. [Doc 15 and its attachments].

18

9, ¶3, FN1, *and* Doc 9-2]. On September 15, 2025, he executed the second copy of the Declaration, and he then submitted a full and complete executed copy in FedEx for delivery to the undersigned counsel for the USTA Defendants. [Doc 15-Ex. A, and Ex. B, *Aff. Moore*, ¶9-10]. "The jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable *only* if relevant to that period of time." *Sierminski v. Transouth Financial Corp.*, 216 F.3d. 945, 949 (11th Cir. 2000)(emphasis supplied).

Defendant Leroy Joyner's consent to the removal to this Court at the time of removal was clear on the face of the document and <u>after</u> he claims any issues with his knowledge of his content arose. The Declarations he signed expressly references the fact that the removal would be to this Court. [Doc 9-2; Ex. A]. "I consent to the removal of the above captioned case from the Circuit Court of Barbour County, Alabama to the United District Court for the Middle District of Alabama." [Doc 1-4, ¶17; Ex. A, ¶17]. Although he now requests a different federal court hear this case, his consent should not be withdrawn just because it is clear that he changed his mind after the fact. *Sierminski,* supra.

The pleadings in the record show that Defendant Joyner's consent was provided with his full knowledge prior to the filing for removal by the USTA Defendants. [Doc 15, Ex. A and Ex. B]. Even if Defendant Joyner's assertions that he did not read the first Declaration he signed on September 8, 2025 are true, it is

19

still clear by his own Motion that he had read a complete copy of the Declaration by the time he signed the second copy of September 15, 2025. [Doc 9, ¶3, FN1]. Any contention that he did not know what he was signing on September 8, 2025 became irrelevant once he admitted he'd read the document before signing it again on September 15, 2025. *Sierminski* at 949. In further evidence of this knowledge, the complete and full copy of the second Declaration was sent via FedEx to the undersigned USTA counsel, a request from the prison that had to come from Leroy Joyner. [Doc 15, Ex. A and Ex. B].

Even if he changed his mind later, Defendant Leroy Joyner has essentially waived his right to contest the removal proceedings through his execution and submission of the second Declaration on September 15, 2025 to the USTA Defendants' counsel. [Doc 15-Ex. A and Doc 9-2]. *See Sierminski* at 949; 28 U.S.C. §1447(c); *Cartee,* supra and *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990) (the court has the discretion to waive the procedural defects presented by the consent issues between the parties to uphold the removal). Having shown no valid contest to the consent remitted in support of the removal of this case, the USTA Defendants can show the necessary perquisites for removal were met with the filing was made. [Doc 15 and attachments].

3. **Plaintiff's claims exceed the necessary $75,000 amount in controversy due to the nature of the allegations and on the face of the complaint.**

In the Motion to Remand, Plaintiff's counsel did <u>not</u> state that she sought less $75,000 in damages in this case. [Doc 12-1]. Instead, the Motion asserts there was no specific demand in Plaintiff's Complaint, so there is no evidence to show that this case is properly valued at more than $75,000 to maintain diversity jurisdiction. [Doc 12-1, pg.22]. Defendants USTA, however, contend the facial allegations of the Complaint are sufficient to meet this requisite burden of proof of the potential value of this case.[5] [Doc 1, ¶1, pg.3, *referencing Complaint, Doc 1-1*].

If a plaintiff does not specify a demand for damages, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Roe v. Michelin North America Inc.*, 613 F.3d. 1058, 1061 (11th Cir. 2010)(noting that the Eleventh Circuit permits district courts to make reasonable inferences or deductions from the pleadings to determine whether it is facially apparent that a case is removable, and there is no need to 'suspend reality or shelve common sense' in determining whether the allegations meet the jurisdictional amount). In assessing as to whether this burden has been met by the Defendant seeking removal, the Court may examine the allegations of the complaint to determine whether it is "facially apparent" that the amount in controversy exceeds the requisite $75,000. *Jones v. Novartis*

---

[5] There is also the opportunity to employ jurisdictional discovery, which the USTA Defendants would agree to employ if it would be more efficient for this Court's consideration of the value of this case.

*Pharmaceuticals Co.*, 952 F.Supp.2d. 1277 (2013)(citing *Roe* in finding that claims in a products liability case of eleven different permanent injuries allowed 'judicial experience and common sense' to find the jurisdictional amount has been met).

In the present case, Plaintiff alleges significant past, present and future harm through allegations of sexual abuse as a minor of the age of 15 years old by Defendant Leroy Joyner (who was 43 years old at the time) that begin in May 2016 and lasted through May 2019. [Doc 1-1-¶¶66-68]. Her claims include Leroy Joyner's wife, Defendant Dorothea Joyner, as well as four (4) corporate Defendants, who she claims failed to protect her. [Doc 1-1-¶73] She has sued the national organizations, Defendants USTA and USTA Player Development, for widespread industry changes to youth sports, alleging they knew or should have known of the issues with Joyner as a coach.  She alleges the other (5) Defendants "aided abetted and or assisted Defendant Leroy Thomas Jr. by helping him to actively conceal his tortious and criminal conduct." [Doc 1-1-¶79].

Plaintiff has filed eight (8) counts against the collective Defendants for (1) Negligent and/or Wanton Supervision, Training and Retention against Defendants USTA (in two separate counts under AL, GA, LA, and SC laws), (2) Negligence and Wantonness against all Defendants (in two separate counts under AL, GA, LA and SC laws); (3) Sexual Assault and Battery against all Defendants (in two separate counts under AL, GA, LA and SC laws); (4) Intentional Infliction of Emotional

22

Distress against all Defendants (in two separate counts under AL, GA, LA and SC laws). She asserts the actions of all six (6) Defendants were intentional, gross, malicious, fraudulent, willful, wanton and reckless.  [Doc 1-1-¶79]. Plaintiff did not specify an amount sought in her Complaint. [Doc 1-1].

Her pleadings, however, describe injuries and extensive physical and emotional damages which she contends have lasted for years and will continue in the future. [Doc 1-1- ¶156, ¶168, ¶176, ¶183]. The Eleventh Circuit has specifically held that a plaintiff should not be able to evade federal jurisdiction by 'artful pleadings' if a district court has a statutory right to hear the case based upon the obvious value. *Roe* at 1064. Instead, the nature of the claims, injuries and the damages suffered and alleged by the Plaintiff must be examined. Id, and *Jones* at 1286.

Plaintiff's own recitations of her damages show the extensive nature of her claims well exceed a hope for a $75,000 recovery. For example, she alleges she was rushed to a hospital in August of 2023 for a possible panic attack, and she claims to have suffered a complete psychiatric breakdown in October of 2024. [Doc 1-1-¶83, ¶85]. She recites her diagnosis of PTSD with bipolar tendencies and claims the Defendants have caused all of the emotional and physical trauma that has also hampered her present and future earning capacities. [Doc 1-1-¶¶87-88]. For each count in her Complaint, Plaintiff seeks recovery for the following:

- bodily injury and resulting pain and suffering,

- disability,

- disfigurement,

- mental anguish, emotional distress, loss of capacity for the enjoyment of life,

- expense of hospitalization, medical and nursing care and treatment,

- loss of earnings, and the loss of ability to earn money in a manner that is permanent or continuing, noting the losses will continue in the future.

[Doc2 -¶135, ¶143, ¶150, ¶156, ¶168, ¶176, ¶183, and ¶189].

She seeks compensatory damages, punitive damages, prejudgment interest, attorneys' fees, costs of this action, and for such other relief as is proper against all Defendants. [Id.]

Plaintiff's Motion to Remand acknowledges that the recovery in this case is extensive and aimed addressing the "pervasive sexual abuse of minors and the failure [of the national corporations like the USTA] to protect young athletes in the sport of tennis from a sexual predator." [Motion to Remand, Doc 12-1, pg.1]. On the face of the Complaint, the attorneys' fees alone could easily exceed the $75,000 jurisdictional amount. Plaintiff retained lawyers from the Beasley Allen firm, which advertises itself as successful in recovering over $32 billion dollars in verdicts and settlements on its website, www.beasleyallen.com. Plaintiff's counsel is certainly

24

aware of the significant damages sexual abuse cases can generate, especially when filed against national corporate entities.

The law firm MILLER & ZOIS, LLC advertises anecdotal information on its website, claiming that Alabama residents have recovered the following in recent verdicts and settlements:

**Alabama Sex Abuse Verdicts and Settlements**
Below are summaries of verdicts and settlements from recent Alabama sex abuse lawsuits.

- **$1,500,000 Settlement:** After sexually molesting a fourth-grade student in his class on more than one occasion, and being charged but not prosecuted for the incident, the school board reinstated the teacher, where he continued to sexually abuse students. He was later convicted of sexually abusing over 20 girls and sentenced to 17 years in prison. A group of 5 of the victims sued the school board for negligently retaining the teacher, and the case was settled.
- **$7,000,000 Verdict:** A jury in Mobile awarded $7 million to a mentally incapacitated young man who was sexually assaulted by another patient at BayPointe Children's Psychiatric Hospital, operated by AltaPointe Health System. The assault occurred when the assailant, another minor patient, was left unsupervised and locked in the victim's room for over eight minutes. The jury found the facility negligent in its supervision and patient safety protocols.
- **$12,500,000 Settlement:** The State of Alabama reached a $12.5 million settlement with 100 former residents of the Chalkville Campus, a correctional facility for girls in Jefferson County. Plaintiffs alleged they were repeatedly sexually abused by staff members between 1993 and 2001. The settlement resolved claims of systemic sexual abuse, failure to supervise, and negligent retention of abusive employees.
- **$700,000 Settlement:** The Archdiocese of Mobile settled a lawsuit with a parishioner who claimed the archdiocese broke an agreement regarding Reverend Paul Zoghby. The plaintiffs reported that Zoghby made unwanted sexual advances and exposed

25

himself to her. The archdiocese allegedly agreed to pay for her counseling and send Zoghby for treatment, but instead transferred him to a different parish

- **$25,000,000 Verdict:** Plaintiff Jane Doe, an 11-year-old minor, was invited to spend the night at her friend M.G's house in Lee County, AL. M.G. lived with her parents, defendants Kevin and Jennifer Golden. Late in the evening, Jane Doe, M.G., and another invitee got into bed to watch a movie before going to sleep. M.G. and the other invitee fell asleep during the movie, while Jane Doe remained awake. Kevin Golden, who was alone at the house with the girls, allegedly went into the bedroom, molested Jane Doe, and took photographs/videos. When he left, Jane Doe called her parents. Plaintiffs claimed that Jennifer Golden knew or should have known that Kevin Golden was a sexual predator. Plaintiffs further alleged that Jennifer Golden went out that evening, became intoxicated, was arrested for driving under the influence, and spent the night at the Lee County jail.

- **$2,020,000 Settlement:** The Mobile County Sheriff's Office agreed to pay $2.02 million to settle civil rights complaints made by female corrections officers at the Mobile County Metro Jail. The officers alleged that male inmates routinely subjected them to severe and pervasive sexual harassment, and that supervisors failed to take effective action to stop the misconduct

- **$500,000 Settlement:** Defendant First Baptist Church of Spanish Fort allegedly organized a "Family Fun Day," which included a picnic, on the church grounds in Spanish Fort, AL. The plaintiff's nine-year-old minor child attended the "Family Fun Day" picnic with her older brother. Defendant Walter Bowen, the church's music minister, allegedly led the minor child into a room within the church sanctuary and sexually molested her.

- **$8,000,000 Verdict:** Plaintiff alleged that around 1976, when Plaintiff was five years old, Defendant, Plaintiff's father, began a thirty-year pattern and practice of illicit sexual, physical, mental, and verbal abuse. The incidents occurred several times weekly throughout the Plaintiff's adolescence. The abuse included fondling of her vagina, which began when she was five years old, forcing her to perform oral sex on him, forcing her to engage in anal and vaginal intercourse with him, forcing her to engage in sexual acts with both underage children and adults, conspiring to cause others to rape and sexually molest her, and numerous acts of other

26

physical violence such as beating, cutting, and extinguishing cigarettes on her hand.

- **$700,000 Settlement:** The Archdiocese of Mobile admitted that 13 members of its clergy had sexually abused children and paid out roughly $700,000 in settlements and other costs to a group of 18 victims.

https://www.lawsuit-information-center.com/alabama-sex-abuse-lawsuits.html

Given the vast allegations made against six (6) Defendants for years of alleged sexual abuse and industry wrongdoing, it would be naïve to suggest that Plaintiff seeks less than $75,000 in damages, and the allegations of the Plaintiff demonstrate that is not true. On the face of her Complaint, the pleadings provide sufficient information to show that it is more likely than not that based upon her claims and alleged damages, the recovery sought is well in excess of the requisite jurisdictional amount. *Roe,* supra at 1061(allowing district courts to make reasonable inferences or deductions from the pleadings to determine whether the allegations meet the jurisdictional amount).

## CONCLUSION

The USTA Defendants have shown that all Defendants are diverse from the Plaintiff, all Defendants consented to removal at the time of the filing, and the value of this case is more likely than not to exceed $75,000. Having shown that at the time of the removal, the original jurisdiction in this Court was proper, the USTA

Defendants request that the Motions to Remand be denied and that this case be retained in this Court.

WHEREFORE, having fully responded to Plaintiff's Motion to Remand, Defendants pray that it be denied in its entirety.

Respectfully submitted this 3rd day of November, 2025.

<div style="text-align:right">

PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.

By: */s/ Carter P. Schondelmayer*
    Carter P. Schondelmayer
    Alabama Bar No. 6585-E53C
    */s/ James C. Clark, Jr.*
    James C. Clark, Jr.
    Georgia Bar No. 127145
    Admitted Pro Hac Vice
    */s/ LaRae D. Moore*
    Georgia Bar No. 223379
    Admitted Pro Hac Vice

</div>

1111 Bay Avenue, Third Floor
Columbus, GA 31902-1199
T: (706) 324-0251

carter@pagescrantom.com
jclark@pagescrantom.com
lmoore@pagescrantom.com

*Counsel for Defendants*
*United States Tennis Association*
*Incorporated and USTA Player*
*Development Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I submitted the following document, **UNITED STATES TENNIS ASSOCIATION INCORPORATED AND USTA PLAYER DEVELOPMENT INCORPORATED'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND** via the Court's electronic filing system, which will automatically send electronic mail notification of such filing to counsel of record and other *pro se* parties:

*Counsel for Plaintiff*

**BEASLEY, ALLEN, CROW, et al**
Alison Hawthorne
Larry Golston
Leon Hampton, Jr.
Jessi M. Haynes
P.O. Box 4160
Montgomery, AL 36103-4160
Alison.Hawthorne@beasleyallen.com
Larry.Golston@beasleyallen.com
Leon.hampton@beasleyallen.com
Jessi.Haynes@beasleyallen.com

**PENN & SEABORN, LLC**
L. Shane Seaborn
1442 S. Eufaula Avenue
Eufaula, AL 36027
Sseaborn1@yahoo.com

*Defendant Grassroots Tennis Association, LLLP*
c/o Caylin Edley – Registered Agent
1016 Peachtree Drive
Columbus, GA 31906

&lt;continued&gt;

29

*Defendant In Depth Academy*
1016 Peachtree Drive
Columbus, GA 31906

*Defendant Dorothea L. Joyner*
1016 Peachtree Drive
Columbus, GA 31906

*Defendant Leroy Thomas Joyner*
Inmate #18079-002
Yazoo City Low FCI
PO Box 5000
Yazoo City, MS 39194-5000

Respectfully submitted this 3rd day of November, 2025.

**PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.**

1111 Bay Avenue, 3rd Floor
P.O. Box 1199
Columbus, GA 31902-1199
Tel:   706-324-0251

**/s/*Carter P. Schondelmayer***
Carter P. Schondelmayer
Alabama Bar No. 685-E53C
carter@pagescrantom.com.

*Counsel for Defendants*
*United States Tennis Association Incorporated and USTA Player Development Incorporated*

30