# EXHIBIT D

GEORGIA MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
5/1/2025 11:32 AM
DANIELLE F. FORTE, CLERK

## IN THE STATE COURT OF
## MUSCOGEE COUNTY, GEORGIA

| | |
|---|---|
| HALEIGH K. MCLENDON, | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| VS. | * |
| | * |
| UNITED STATES TENNIS ASSOCIATION INC, | * |
| USTA PLAYER DEVELOPMENT INC., | * |
| GRASSROOTS TENNIS ASSOC., LLLP, | * |
| IN DEPTH ACADEMY, | * |
| DOROTHEA L. JOYNER, | * |
| LEROY THOMAS JOYNER, Jr., | * |
| and Fictitious Defendants "A", "B", "C" | * |
| and "D", whether singular or plural, | * |
| those other persons, corporations, | * |
| firms, or other entities whose | * |
| wrongful conduct caused or | * |
| contributed to cause the injuries and | * |
| damages to the Plaintiff, all of whose | * |
| true and correct names are unknown | * |
| to Plaintiff at this time, but will be | * |
| substituted by amendment when | * |
| ascertained, | * |
| | * |
| | * |
| **Defendants.** | * |

CASE NO.  CV-
SC2025CV001349

**JURY DEMAND**

## COMPLAINT

COME NOW, the Plaintiff Haleigh McLendon, and shows this Honorable Court

the following:

## PARTIES, JURISDICTION, and VENUE

1.      Plaintiff Haleigh McLendon is over the age of majority and is a resident of

Barbour County, Alabama.

1

2.      Defendant United States Tennis Association, Inc., ("USTA") is a New York Corporation with its primary place of business in the City of White Plains, State of New York, and is therefore a citizen of New York.

3.      Defendant USTA Player Development Inc., ("USTA Development") is a New York Corporation with its primary place of business in the City of Orlando, State of Florida, and is therefore a citizen of New York and Florida.

4.      Defendant Grassroots Tennis Association (hereinafter referred to as "Grassroots") is a domestic corporation with its primary place of business in the City of Columbus, State of Georgia and is therefore a citizen of Georgia.

5.      Defendant InDepth Academy (hereinafter referred to as "InDepth") is an unincorporated domestic business with its primary place of business in the City of Columbus, State of Georgia and is therefore a citizen of Georgia.

6.      Defendant Dorothea L. Joyner is over the age of majority and is a resident of Columbus, Muscogee County, Georgia. Dorothea L. Joyner is subject to the jurisdiction of this Court and is deemed to be a resident of the State of Georgia for purposes of venue and jurisdiction.

7.      Defendant Leroy Thomas Joyner, Jr. is over the age of majority and is a resident of Columbus, Muscogee County, Georgia. Leroy Thomas Joyner, Jr. is subject to the jurisdiction of this Court and is deemed to be a resident of the State of Georgia for purposes of venue and jurisdiction.

8.      Venue is proper in this Court and county as to all Defendants pursuant to O.C.G.A. §9-10-93.

2

9.      Jurisdiction and venue are not proper, originally or by removal, in the United States District Court because complete diversity is lacking and because one or more of the Defendants are residents of Georgia.

10.     The Defendants are subject to specific jurisdiction in this matter before this Court as they have purposefully availed themselves to this forum.  The Defendants engaged in conduct evidencing an intent or purpose to serve the market in the forum state such as advertising, marketing, entering contracts, providing interactive websites, conducting tennis training, conducting tennis tournaments, engaging competitively in the sport of tennis, providing tennis coaching, education and advice, and establishing channels for providing education and training of young people in the sport of tennis in Georgia.  The incidents causing the injury and damages occurred in the State of Georgia.

11.     The corporate Defendants purposefully derived substantial benefit from activities in the State of Georgia.

12.     Defendants' activities inside and outside the State of Georgia caused harm to the Plaintiffs inside Georgia.

13.     Defendants Leroy Thomas Joyner, Jr.'s acts or omissions occurred in the State of Georgia which caused the injuries and damaged alleged. The said acts or omissions of Leroy Thomas Joyner, Jr occurred in Muscogee County, Georgia

14.     Defendant Dorothea Joyner's acts or omissions occurred in the State of Georgia which caused the injuries and damaged alleged. The said acts or omissions of Dorothea Joyner occurred in Muscogee County, Georgia.

15.     Defendant Grassroots' acts or omissions occurred in the State of Georgia which caused the injuries and damaged alleged. The said acts or omissions of Grassroots occurred in Muscogee County, Georgia

16.     Defendants InDepth's acts or omissions occurred in the State of Georgia which caused the injuries and damaged alleged. The said acts or omissions of InDepth occurred in Muscogee County, Georgia.

## STATEMENT OF THE FACTS

17.     Defendant USTA is the National Governing Body ("NGB") for the sport of tennis and the recognized leader in promoting and developing the sport's growth on every level in the United States. USTA has averaged over 700,000 individual members over the past 10 years. It collects dues from its individual members.

18.     As NGB for the sport of tennis, USTA selects the players and coaches that represent Team USA at the Olympic Games and other international tennis events. To be a member of Team USA, a player must be in good standing with the USTA.

19.     Defendant USTA Player Development is an affiliate of USTA. The mission of USTA Player Development is to educate and train young people in the sport of tennis through a clearly defined training structure and competitive pathway as well as through the implementation of a comprehensive coaching philosophy and structure. USTA funds USTA Player Development to perform this mission, which is a part of the overall USTA mission. USTA is the sole member of USTA Player Development and elects the directors of USTA Player Development pursuant to that organization's bylaws. As sole member, USTA has the right to remove USTA Player Development directors with or without cause, to fill vacancies in its Board of Directors, and to amend its certificate of incorporation and its bylaws. Additionally, USTA has the right to

4

approve or ratify certain decisions of the Board of Directors of USTA Player Development (such as the decision to merge or dissolve).

20.     USTA and USTA Player Development (hereinafter referred together as "Defendants") develop young, talented tennis players at their National Training Centers in Carson, CA, Boca Raton, FL, and Orlando, FL. These National Training Centers provide programming for aspiring players to train during the day and work out with USTA's strength and conditioning staff after tennis workouts.

21.     In order to play in USTA tournaments individuals are required to be members of the USTA.

22.     Specifically, in order for individuals ages 12 through 18 to play in USTA tournaments, those individuals are required to be junior members of the USTA.

23.     In 2010, the United States Olympic Committee ("USOC")[1] notified its NGBs, including USTA, of the need to immediately strengthen child protection measures after several sex abuse allegations across the Olympic movement surfaced. Beginning in 2011, the USOC recommended NGBs expand disqualifying criteria for prospective coaches. The USTA resisted implementing many of the USOC's recommended changes.

24.     Membership in the USTA is required to compete at USTA tournaments.

25.     Membership in the USTA and participation in USTA tournaments is the only way to achieve and maintain a national ranking as a tennis player in the United States.

---

[1] The USOC is a federally chartered nonprofit corporation whose central function is to coordinate amateur sports throughout the county for athletes hoping to one day compete in the Olympics. In this role, USOC certifies and oversees each sport's national governing body, which are the entities responsible for conducting and administering the respective sports in the United States.

26.     Achieving and maintaining a strong national ranking is a key factor in determining whether a player is accepted into a USTA tournament and affects that player's seeding (and therefore her chances of success).

27.     Performing well at a USTA tournament is one of the best ways for a player to be noticed and recruited by college coaches and teams.

28.     College coaches travel to Level 1 tournaments to recruit players.

29.     The United States Olympic and Paralympic Committee ("USOPC", formerly – and at times relevant to this Complaint - the United States Olympic Committee ("USOC")) requires all NGBs, including the USTA, to train all its adult members, on sexual abuse and sexual abuse prevention.

30.     In late 2012, the USOC again reiterated the need to strengthen child protection measures given the "crisis" of coaches molesting minor athletes. Once again, USTA ignored the USOC's recommendations.  As a result, the USOC began mandating its NGBs implement minimum child protection measures. In response, USTA protested vociferously, telling USOC's CEO Scott Blackmun through written correspondence that while it was generally "supportive" of making the sport safer, the implementation of these measures would greatly increase liability exposure for NGBs in that they would effectively createhigher duties of care.

31.     When USOC was recommending abuse-prevention policies, it wanted USTA to implement a policy prohibiting its coaches from having romantic relationships with their female athletes. The USOC knew permitting these relationships would enable coaches to use their position of power to engage in inappropriate sexual advances towards their vulnerable athletes. While most NGBs agreed, USTA vehemently opposed this policy. USTA opposed it because there were

several coaches in its sport dating their athletes. Highly respected tennis coach Judy Murray (mother of Wimbledon champions Andy Murray and Jaime Murray) said it was an open secret that there was abuse in the women's game. In an interview with The Guardian, Ms. Murray stated: "I think anybody would tell you that there are examples ... I think everybody who's on the circuit would be able to name you something that isn't quite right. It's very easy for a young, inexperienced player to be taken advantage of ...." To this day, USTA has not prohibited coaches from engaging in romantic relationships with their athletes.

32.    The sexual abuse of minors by individuals in authority positions over them is a well-known problem in the United States.

33.    Major media outlets have been reporting on sexual abuse in USOCcontrolled NGBs, particularly United States Swimming and United States Gymnastics, since the early 1990s.

34.    The leader of the USOC Task Force understood the importance of her work, telling THE NEW YORK TIMES that sexual abuse of minors in NGB-controlled sports is a "grassroots problem" affecting "one million" kids. Lynn Zinser, U.S.O.C. to Take Steps to Protect Against Sexual Abuse, N.Y. TIMES, Sept. 28, 2010, at https://www.nytimes.com/2010/09/29/sports/29usoc.html.

35.    The then-CEO of the USOC, Scott Blackmon, believed that the USOC and its NGBs would implement the changes suggested by the Task Force within six months.

36.    The USOC Task Force recommended that the NGBs, including USTA:

      a. Develop policies and procedures to define and prohibit sexual abuse;
      b. Develop education training and programs for their adult members; and
      c. Develop policies and procedures for minors to report sexual abuse.

37.    The USTA failed to implement any of the changes suggested by the Task

7

Force.

38.     The USTA failed to list their banned members publicly.

39.     By 2014, USTA members and employees had to comply with USTA's Safe Play Conduct, Policies, and Guidelines.

40.     Upon information and belief, the USTA had no Safe Sport program until 2014.

41.     All USTA members and employees must comply with USTA's Safe Play Conduct, Policies and Guidelines. USTA's Safe Play Conduct, Policies and Guidelines prohibit child abuse and  sexual misconduct. To prevent said conduct, USTA has implemented proactive policies, including but not limited to, policies (1) prohibiting types of one-on-one interactions, meetings, and training sessions   between adult  members  and   minor  athletes;  (2)  prohibiting   adult   members  from providing  gifts  or  special  favors  to  minor  athletes;  (3)  prohibiting  adult members   from  interacting  one-on-one  with  unrelated  minor  athletes  in  settings outside of tennis programs (including, but not limited to, one's home) unless parent/legal guardian written consent is provided for each out-of-program contact; (4) prohibiting adult members from  engaging in types of physical contact with minor athletes, including  lap  sitting,  cuddling,  tickling,  etc.;  (5)  placing  restrictions  on massages/rubdowns between adult members and minor athletes; (6) limiting and placing restrictions on social media and electronic communications between adult members and minor athletes; and (7) placing additional rules/restrictions for travel meets.

42.     Pursuant to its Safe Play program, USTA requires that adult USTA members complete education concerning child abuse prevention on an annual basis.

Further, USTA requires its employees (and the individuals USTA formally authorizes to serve in a position over or have regular contact with athletes) to complete a criminal background screen at least every two years.

43.     Background screens must be completed either before regular contact with a minor athlete or within 45 days of initial membership, whichever occurs sooner. At any time, if USTA becomes aware of any potential criminal activity concerning an adult member, whether through information received from the media, third parties, or otherwise, USTA retains the right to conduct additional background screening, and to immediately withdraw the adult member's good standing status.

44.     USTA knew about, or was willfully blind to the existence of, many inappropriate relationships between underage minor members and older (often much older) adult members.

45.     Prior to 2014, the USTA did not have a policy prohibiting its adult members from being alone with children.

46.     Prior to 2014, the USTA did not have a policy prohibiting its adult members from traveling alone with children to and from tournaments it sanctioned.

47.     Prior to 2014, the USTA recommended hotels for tournaments it organized and knew that minor players would need to travel from their accommodations to the tournament venues.

48.     Prior to 2014 the USTA did not provide any shuttles or transportation for minor players to get to the tournament venues independently.

49.     Prior to 2014 the USTA knew that it was common practice for adult USTA members acting as player coaches to travel to and from the tournament venues alone with the minor players.

50.    Prior to 2014 the USTA organized tournaments using multiple venues in the same cities, making it necessary for minor players to travel between venues.

51.    At all relevant times, Defendant Leroy Thomas Joyner, Jr. was a dues paying member of the USTA.

52.    At all relevant times, Defendant Dorothea Joyner was a dues paying member of the USTA.

53.    At all relevant times, Plaintiff was a dues paying member of the USTA.

54.    As a USTA member, Plaintiff was subject to Membership Terms & Conditions, including an agreement that all parties were subject to, and required to comply with, the USTA's Safe Play athlete abuse prevention policies and program.

55.    As a USTA member, Dorothea Joyner was subject to Membership Terms & Conditions, including an agreement that all parties were subject to, and required to comply with, the USTA's Safe Play athlete abuse prevention policies and program.

56.    As a USTA member, Leroy Thomas Joyner, Jr. was subject to Membership Terms & Conditions, including an agreement that all parties were subject to, and required to comply with, the USTA's Safe Play athlete abuse prevention policies and program.

57.    From 2013 to 2019, Defendants Leroy Thomas Joyner, Jr. and Dorothea Joyner operated Grassroots Tennis Association. Defendants Leroy Thomas Joyner, Jr. and Dorothea Joyner provided tennis lessons / training and home-schooling to a group of children (including the Plaintiff).

58.     In or about 2013, Defendant Leroy Thomas Joyner, Jr recruited the Plaintiff to play tennis for the Grassroots Tennis Association. At the time the Plaintiff was attending school in Barbour County, Alabama.

59.     In or about 2013, in Barbour County, Alabama, Defendant Leroy Thomas Joyner, Jr., represented to the Plaintiff and her mother that Grassroots Tennis Association provided tennis lessons and tennis training to underprivileged children and teens.

60.     In or about 2013, Defendant Leroy Thomas Joyner, Jr, became the Plaintiff's full-time tennis coach.

61.     In or about 2013, when she was 12 years old, the Plaintiff began playing tennis with Defendants Leroy Thomas Joyner, Jr., Dorothea Joyner, and the Grassroots Tennis Association.

62.     After becoming her tennis coach, Defendant Leroy Thomas Joyner, Jr., sought to control Plaintiff's day-to-day activities.

63.     In or about 2015, Defendants Leroy Thomas Joyner, Jr and Dorothea Joyner convinced the Plaintiff and her mother to enroll the Plaintiff into Defendant InDepth Academy – a home school owned and operated by Defendants Leroy Thomas Joyner, Jr and Dorothea Joyner.

64.     Defendant InDepth is located and operated from Defendants Leroy and Dorethea Joyner's home in Columbus, Georgia. Defendant Dorothea Joyner was and is the headmaster of InDepth.

65.    From August 2015 through May 2019, the Plaintiff was enrolled at InDepth Academy and lived with Defendants Leroy and Dorethea Joyner in their Columbus, Georgia home.

66.    From August 2015 through May 2019, the Plaintiff was enrolled at InDepth Academy.  From August 2015 through May 2019, the Plaintiff and the other children/teens enrolled in InDepth and Grassroots were constantly traveling to South Carolina, Georgia, Alabama and Louisiana to participate in USTA tennis tournaments.

67.    While enrolled at InDepth and participating in USTA tournaments with Defendants Leroy Thomas Joyner, Jr., Dorothea Joyner, and Grassroots, the Plaintiff resided occasionally at the home of Defendants Leroy Thomas Joyner, Jr and Dorothea Joyner in Columbus, Georgia.

68.    Once enrolled in InDepth Academy, Defendants Leroy Thomas Joyner, Jr., Dorothea Joyner and Grassroots Tennis Association had the Plaintiff (and other children associated with Grassroots) spend most of her waking hours each day either practicing tennis or traveling throughout the southeast attending USTA tennis tournaments / events.

69.    Once enrolled in InDepth Academy, Defendant Leroy Thomas Joyner, Jr., began "grooming" the Plaintiff for the purposes of ultimately sexually abusing her.

70.    In or around May 2016, Defendant Leroy Thomas Joyner, Jr., began sexually assaulting, molesting and/or sexually abusing the Plaintiff.  At the time the Plaintiff was 15 years old and Defendant Leroy Thomas, Jr., was 43 years old.

71.    By December 2016, Defendants Dorothea Joyner and InDepth became aware that Defendant Leroy Thomas Joyner, Jr., began sexually assaulting and molesting

the Plaintiff but said Defendants did nothing to stop or prevent the sexual abuse being committed against the Plaintiff.

72.    From May 2016 through May 2019, Defendant Leroy Thomas Joyner, Jr., continued to sexually assault, molest and/or sexually abuse the Plaintiff in South Carolina, Georgia, Alabama, Mississippi and Louisiana.

73.    From August 2016 through May 2019, the Plaintiff, Defendants Leroy Thomas Joyner, Jr., Dorothea Joyner, and the Grassroots Tennis Association attended and participated in over twenty (20) USTA tennis tournaments / events throughout the southeastern United States.

74.    From August 2016 through May 2019, the Plaintiff, Defendants Leroy Thomas Joyner, Jr., Dorothea Joyner, and Grassroots instituted a policy wherein parents of Grassroots and InDepth students were encouraged to not attend USTA tennis tournaments / events.

75.    At all material times herein, no USTA officials, representatives or agents ever questioned or investigated why the parents of Grassroots were practically non-existent at USTA tournaments/ events.

76.    From August 2016 through May 2019, Defendant Leroy Thomas Joyner, Jr., sexually assaulted, molested and/or sexually abused the Plaintiff while attending and participating in USTA tennis tournaments / events in in South Carolina, Georgia, Alabama, Mississippi and Louisiana.

77.    At all material times herein, Defendants Dorothea Joyner, Grassroots and InDepth were fully aware that Defendant Leroy Thomas Joyner, Jr., had and was sexually assaulting, molesting and/or sexually abusing the Plaintiff and said Defendants

aided, abetted and or assisted Defendant Leroy Thomas Joyner, Jr. by helping him to actively conceal his tortious and criminal conduct.

78.    In January 2019, the FBI began investigating Defendant Leroy Thomas Joyner, Jr., regarding allegations that the Defendant had sexually abused one of the female students of Grassroots and InDepth named C.S., who at the time was 15 years old.

79.    On or about February 12, 2020, Defendant Leroy Thomas Joyner, Jr., was criminally charged with aggravated sexual abuse of a child ("C.S.") between the age of 12 and 16.

80.    Defendant Leroy Thomas Joyner, Jr., was originally scheduled to go to trial for aforementioned criminal trial in October 2023 in the United States District Court for the Middle District of Alabama.

81.    In August 2023, the Plaintiff experienced what was believed to be a panic attack and rushed to the Southeast Health center in Dothan, Alabama for treatment.

82.    On January 23, 2024, a federal jury in Dothan, Alabama convicted Defendant Leroy Thomas Joyner, Jr., on one count of unlawfully transporting a minor across state lines with intent to engage in sexual activity.

83.    On August 8, 2024, a federal judge ordered that Defendant Leroy Thomas Joyner, Jr. serve 300 months in prison. The judge also ordered that Joyner remain on supervised release for life following his prison term.

84.    On or about October 16, 2024, the Plaintiff had a psychiatric breakdown and was again admitted to Southeast Health center in Dothan, Alabama upon expressing suicidal and/or homicidal ideations.

85. On or about October 16, 2024, the Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) with bipolar tendencies.

86. The Plaintiff's diagnosis of PTSD with bipolar tendencies is a result of the years of sexual abuse committed by and allowed by the Defendants.

87. Defendants USTA and USTA Player Development Inc. did not perform adequate background screening on Defendants Leroy Thomas Joyner, Dorothea Joyner, and Grassroots Tennis Association.

88. Defendants entered contracts with the athletes trained by USTA and USTA member coaches including Plaintiff. Pursuant to such contracts, Defendants were contractually obligated to provide services, including all coaching and tennis related services offered at USTA training tournaments, events and facilities, in a safe environment free of emotional, physical, and/or sexual misconduct. Defendants' contractual obligation to provide services in a safe and non-abusive manner was a non-delegable duty that could not be transferred to any third party.

89. At all material times hereto, Defendant Leroy Thomas was an agent of Defendant USTA.

90. At all material times hereto, Defendant Dorothea Joyner was an agent of Defendant USTA.

91. At all material times hereto, Defendant Grassroots was an agent of Defendant USTA.

92. At all material times hereto, Defendant Leroy Thomas Joyner was acting within the line and scope of his agency with Defendant USTA in dealings with the Plaintiff.

93.     At all material times hereto, Defendant Dorothea Joyner was acting within the line and scope of her agency with Defendant USTA in dealings with the Plaintiff.

94.     At all material times hereto, Defendant Grassroots was acting within the line and scope of its agency with Defendant USTA in dealings with the Plaintiff.

95.     At all material times hereto, Defendant USTA participated in, authorized or ratified the wrongful acts or conduct of Defendant Leroy Thomas Joyner.

96.     At all material times hereto, Defendant USTA participated in, authorized or ratified the wrongful acts or conduct of Defendant Dorothea Joyner.

97.     At all material times hereto, Defendant USTA participated in, authorized, or ratified the wrongful acts or conduct of Defendant Grassroots.

98.     At all material times hereto, Defendants Leroy Thomas Joyner was an agent of Defendant USTA Development.

99.     At all material times hereto, Dorothea Joyner was an agent of Defendant USTA Development.

100.    At all material times hereto, Grassroots was an agent of Defendant USTA Development.

101.    At all material times hereto, Defendant Leroy Thomas Joyner was acting within the line and scope of his agency with Defendant USTA Development in dealings with the Plaintiff.

102.    At all material times hereto, Defendant Dorothea Joyner was acting within the line and scope of her agency with Defendant USTA Development in dealings with the Plaintiff.

103.    At all material times hereto, Defendant Grassroots was acting within the line and scope of its agency with Defendant USTA Development in dealings with the Plaintiff.

104.    At all material times hereto, Defendant USTA Development participated in, authorized, or ratified the wrongful acts or conduct of Defendant Leroy Thomas Joyner.

105.    At all material times hereto, Defendant USTA Development participated in, authorized or ratified the wrongful acts or conduct of Defendant Dorothea Joyner.

106.    At all material times hereto, Defendant USTA Development participated in, authorized, or ratified the wrongful acts or conduct of Defendant Grassroots.

107.    At all material times hereto, Defendant Leroy Thomas was an agent of Defendant InDepth.

108.    At all material times hereto, Defendant Dorothea Joyner was an agent of Defendant InDepth.

109.    At all material times hereto, Defendant Leroy Thomas Joyner was acting within the line and scope of his agency with Defendant InDepth in dealings with the Plaintiff.

110.    At all material times hereto, Defendant Dorothea Joyner was acting within the line and scope of her agency with Defendant InDepth in dealings with the Plaintiff.

111.    At all material times hereto, Defendant InDepth participated in, authorized, or ratified the wrongful acts or conduct of Defendant Leroy Thomas Joyner.

112.    At all material times hereto, Defendant InDepth participated in, authorized, or ratified the wrongful acts or conduct of Defendant Dorothea Joyner.

113.    At all material times hereto, Defendant Leroy Thomas was an agent of Defendant Grassroots.

114.    At all material times hereto, Defendant Dorothea Joyner was an agent of Defendant Grassroots.

115.    At all material times hereto, Defendant Leroy Thomas Joyner was acting within the line and scope of his agency with Defendant Grassroots in dealings with the Plaintiff.

116.    At all material times hereto, Defendant Dorothea Joyner was acting within the line and scope of her agency with Defendant Grassroots in dealings with the Plaintiff.

117.    At all material times hereto, Defendant Grassroots participated in, authorized, or ratified the wrongful acts or conduct of Defendant Leroy Thomas Joyner.

118.    At all material times hereto, Defendant Grassroots participated in, authorized, or ratified the wrongful acts or conduct of Defendant Dorothea Joyner.

119.    The actions of the Defendants were intentional, gross, malicious, fraudulent, willful, wanton and reckless.

120.    The Defendant's negligence and/or wantonness occurred within two (2) years of filing this lawsuit.

121.    The Defendants entered into a pattern and/or practice of tortious conduct, which included the tortious conduct committed against the Plaintiff.

**COUNT ONE**
**NEGLIGENT and/or WANTON SUPERVISION, TRAINING, and RETENTION**
**(GEORGIA)**

122.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

123.    Defendants USTA  and USTA Development had a duty of care to Plaintiff, as well as to all athletes when retaining, supervising, and evaluating its agents, USTA member-coaches, and employees, including Coach Leroy Thomas Joyner, Coach / Headmaster Dorothea Joyner, and Grassroots Tennis Association, to timely, adequately, and appropriately investigate, heed, and act on all reasonable suggestions and information that its coaches had the propensity to, and/or had actually, inappropriately engaged in inappropriate sexual innuendo and touching of female athletes in the course and scope of their employment and/or agency relationship with Defendants.

124.    Defendants USTA and USTA Development had a duty of care to Plaintiff, as well as to other athletes, to prohibit Coach Leroy Thomas Joyner from privately interacting with Plaintiff as well as with other female athletes, given his propensity to sexually batter, threaten, harm, assault, harass, and otherwise mentally, physically, and emotionally injure female athletes.

125.    As of at least September of 2018, Defendants USTA and USTA Development knew or reasonably should have known of Coach Leroy Thomas Joyner 's propensity to sexually batter, threaten, harm, assault, and otherwise mentally, physically, and emotionally injure female athletes.

126.    At all material times, Defendants USTA and USTA Development knew that its coaches were being placed in a position of agency where they would have unfettered access to vulnerable female athletes without direct supervision, oversight, or monitoring.

127.   Coach Leroy Thomas Joyner used his position as a USTA member-coach to gain access to vulnerable female athletes and to verbally and physically assault and commit sexual battery against Plaintiff and other athletes.

128.   Defendants USTA and USTA Development knew or should have known that Coach Leroy Thomas Joyner had committed sexual battery against other female athletes prior to September 2018 and that Defendants Dorothea Joyner, Grassroots Tennis Association and InDepth Academy had aided and abetted in Coach Leroy Thomas Joyner's sexual assaults and batteries against said female athletes.

129.   Defendants failed to conduct an adequate background check and failed to adequately investigate Coach Leroy Thomas Joyner. Had Defendants conducted a reasonable investigation, the investigation would have revealed that Coach Leroy Thomas Joyner had a propensity to harass, assault and commit sexual battery against female athletes, and was otherwise unsuitable for the duties and responsibilities of his position as a coach.

130.   Defendants had a duty of care to Plaintiff, as well as to other athletes, to protect Plaintiff and its athletes and to otherwise ensure the safety of its athletes, including Plaintiff, from being assaulted and battered by their employees and/or agents, including Coach Leroy Thomas Joyner.

131.   In breach of their duty of care, Defendants USTA and USTA Development were also negligent and/or wanton in supervising Coach Leroy Thomas Joyner by (1) failing to engage a chaperone for any and all of Coach Leroy Thomas Joyner 's travel and coaching interactions with Plaintiff and Coach Leroy

20

Thomas Joyner 's other female athletes; (2) failing to require Coach Leroy Thomas Joyner to engage a chaperone for all interactions with female athletes; and (3) allowing Coach Aranda to continue to supervise, chaperone and coach female athletes in private and without a chaperone after being provided notice that Coach Leroy Thomas Joyner was inappropriately touching and inappropriately engaging in sexual communications with athletes.

132.    Additional negligent, careless and wanton acts and omissions of the Defendants USTA and USTA Development include but are not limited to:

a.    Failing to establish reasonable criteria for the granting of, withdrawal, or reduction of coaching assignments, roles, and duties;

b.    Failing to exercise reasonable care to ensure that the duty of accountability of the USTA coaching staff for athlete safety is properly discharged;

c.    Failing to exercise reasonable care to detect when actions or behavior of a member-coach are detrimental to athletes;

d.    Failing to exercise reasonable care to detect that actions or behavior of a USTA member-coach demonstrate noncompliance with USTA Bylaws, Rules and Regulations or Policies and Procedures, and State Law;

e.    Failing to exercise appropriate and reasonable care in granting coaching privileges to Coach Leroy Thomas Joyner, to perform unsupervised/unchaperoned coaching and supervision of USTA athletes;

f.    Creating a culture of secrecy and deceit in the coaching staff to harbor and conceal known acts and propensities of other coaches that harass and

21

abuse USTA athletes.

133.    As approximate result of Defendants' negligent supervision, training, and retention, the Plaintiff was injured and damaged as follows: Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants USTA and USTA Development and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

### COUNT TWO
### NEGLIGENCE & WANTONNES
### (GEORGIA)

134.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

135.    A special relationship existed between said Defendants USTA and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct

directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

136. A special relationship existed between Defendant USTA Development and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have

engaged in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

137.    A special relationship existed between Defendant Grassroots Tennis Association and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and InDepth Academy, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

138.    A special relationship existed between Defendant InDepth Academy and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their

24

minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

139.    A special relationship existed between Defendant Dorothea Joyner and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, InDepth Academy, and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations

25

that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged  in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

140.    Said Defendants, and each of them, breached said duties by, *inter alia,* failing to  appropriately screen Leroy Thomas Joyner and/or Dorothea Joyner before approving his and her membership/coach status, permitting Leroy Thomas Joyner and/or Dorothea Joyner to coach minor athletes and operate a tennis organization geared toward instructing minors despite Leroy Thomas Joyner and/or Dorothea Joyner's history of engaging in, and/or aiding and abetting the engagement in, sexual misconduct with minors; permitting Leroy Thomas Joyner and/or Dorothea Joyner's repeated violation of relevant rules, regulations, ordinances or statutes designed to protect minors from abuse; failing to detect Leroy Thomas Joyner and/or Dorothea Joyner's course of inappropriate behavior towards plaintiff and/or her preferential treatment of her; failing to appropriately educate and/or train Plaintiff, her parents, and other members on detecting and/or deterring inappropriate conduct toward minors under their care; failing to exercise control over Leroy Thomas Joyner and/or Dorothea Joyner and/or to intervene on Plaintiff's behalf; failing to implement and/or enforce proper policies and procedures for the protection of minors; and failing to notify and warn Plaintiff or her parents that Leroy Thomas Joyne and/or Dorothea Joyner posed a significant risk to plaintiff's safety.

141.    As approximate result of Defendants' negligence and wantonness, the Plaintiff was sexually assaulted,  groomed, and molested and the Plaintiff was injured

26

and damaged as follows: Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants USTA, USTA Development, Grassroots Tennis Association, Dorothea Joyner, InDepth Academy and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT THREE
## SEXUAL ASSAULT and BATTERY
## (GEORGIA)

142.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

143.    Due to the special relationship as Plaintiff's tennis coach, Defendant Leroy Thomas Joyner owed a duty to conduct himself with due care for the safety of Plaintiff. This duty included, but was not limited to, an obligation to comply with all USTA and USTA Development rules and regulations.

144.    Defendant Leroy Thomas Joyner used his position of trust and authority as a tennis coach to groom Plaintiff for his sexual advances and thereafter committed lewd and lascivious acts  upon Plaintiff and/or sexually abused, molested, and/or improperly touched plaintiff.

145.    The aforementioned acts and conduct of Defendant Leroy Thomas Joyner constitutes assaults on the Plaintiff and caused her to be put in fear of her own safety and physical well-being, to undergo great mental suffering and anguish, shame, embarrassment, and humiliation.

146.    Defendants USTA, USTA Development, Grassroots Tennis Association, Dorothea Joyner, and InDepth Academy knew of, tolerated, participated in, authorized or ratified the wrongful acts or conduct of Leroy Thomas Joyner.

147.    As a legal result of the foregoing, Plaintiff was injured in health, strength and activity, sustaining bodily injuries and shock and injury to her nervous system and person, all of which caused and continue to cause plaintiff great mental, emotional, physical and nervous pain and suffering. Plaintiff was thereby required to and did employ physicians and counselors for examination, treatment and care, and incurred, and will continue in the future to incur, medical and incidental expenses, including counseling costs, the exact amount of which is unknown to Plaintiff at this time.

148.    As a direct and proximate result of the intentional acts of Defendants acting by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants Leroy Thomas Joyner USTA, USTA Development, Grassroots Tennis Association,

28

Dorothea Joyner, InDepth Academy and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (GEORGIA)

149.   Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

150.   Defendants' own conduct and conduct by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, who sexually assaulted and battered the Plaintiff, was deliberate or reckless infliction of mental suffering.

151.   The conduct of said Defendants including, but not limited to, sexual assault and battery were outrageous and was so extreme as to exceed all bounds of decency usually tolerated in a civilized community.

152.   In performing such lewd and lascivious acts upon plaintiff, said defendants acted with reckless disregard of the probability that plaintiff would suffer physical and/or emotional distress.

153.   The conduct caused Plaintiff emotional distress, which distress was severe. Defendants conduct and actions in acting by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, was the direct and proximate cause of severe emotional distress to Plaintiff.

154.   As a direct and proximate result of the intentional acts of Defendants acting by and through its employee/agents, including, but not limited to, Coach

Leroy Thomas Joyner, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants Leroy Thomas Joyner USTA, USTA Development, Grassroots Tennis Association, Dorothea Joyner, InDepth Academy and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT FIVE
## NEGLIGENT and/or WANTON SUPERVISION,TRAINING, and RETENTION
## (ALABAMA, LOUISIANA, and SOUTH CAROLINA)

155.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

156.    Defendants USTA  and USTA Development had a duty of care to Plaintiff, as well as to all athletes when retaining, supervising, and evaluating its agents, USTA member-coaches, and employees, including Coach Leroy Thomas Joyner, Coach / Headmaster Dorothea Joyner, and Grassroots Tennis Association, to timely, adequately, and appropriately investigate, heed, and act on all reasonable suggestions and information that its coaches had the propensity to, and/or had actually, inappropriately engaged in inappropriate sexual innuendo and touching of female athletes in the course and scope of their employment and/or agency relationship with

Defendants.

157.    Defendants USTA and USTA Development had a duty of care to Plaintiff, as well as to other athletes, to prohibit Coach Leroy Thomas Joyner from privately interacting with Plaintiff as well as with other female athletes, given his propensity to sexually batter, threaten, harm, assault, harass, and otherwise mentally, physically, and emotionally injure female athletes.

158.    As of at least September of 2018, Defendants USTA and USTA Development knew or reasonably should have known of Coach Leroy Thomas Joyner 's propensity to sexually batter, threaten, harm, assault, and otherwise mentally, physically, and emotionally injure female athletes.

159.    At all material times, Defendants USTA and USTA Development knew that its coaches were being placed in a position of agency where they would have unfettered access to vulnerable female athletes without direct supervision, oversight, or monitoring.

160.    Coach Leroy Thomas Joyner used his position as a USTA member-coach to gain access to vulnerable female athletes and to verbally and physically assault and commit sexual battery against Plaintiff and other athletes.

161.    Defendants USTA and USTA Development knew or should have known that Coach Leroy Thomas Joyner had committed sexual battery against other female athletes prior to September 2018 and that Defendants Dorothea Joyner, Grassroots Tennis Association and InDepth Academy had aided and abetted in Coach Leroy Thomas Joyner's sexual assaults and batteries against said female athletes.

162.    Defendants failed to conduct an adequate background check and failed to adequately investigate Coach Leroy Thomas Joyner. Had Defendants conducted a reasonable investigation, the investigation would have revealed that Coach Leroy Thomas Joyner had a propensity to harass, assault and commit sexual battery against female athletes, and was otherwise unsuitable for the duties and responsibilities of his position as a coach.

163.    Defendants had a duty of care to Plaintiff, as well as to other athletes, to protect Plaintiff and its athletes and to otherwise ensure the safety of its athletes, including Plaintiff, from being assaulted and battered by their employees and/or agents, including Coach Leroy Thomas Joyner.

164.    In breach of their duty of care, Defendants USTA and USTA Development were also negligent and/or wanton in supervising Coach Leroy Thomas Joyner by (1) failing to engage a chaperone for any and all of Coach Leroy Thomas Joyner 's travel and coaching interactions with Plaintiff and Coach Leroy Thomas Joyner 's other female athletes; (2) failing to require Coach Leroy Thomas Joyner to engage a chaperone for all interactions with female athletes; and (3) allowing Coach Aranda to continue to supervise, chaperone and coach female athletes in private and without a chaperone after being provided notice that Coach Leroy Thomas Joyner was inappropriately touching and inappropriately engaging in sexual communications with athletes.

165.    Additional negligent, careless and wanton acts and omissions of the Defendants USTA and USTA Development include but are not limited to:

a.    Failing to establish reasonable criteria for the granting of, withdrawal,

or reduction of coaching assignments, roles, and duties;

b. Failing to exercise reasonable care to ensure that the duty of accountability of the USTA coaching staff for athlete safety is properly discharged;

c. Failing to exercise reasonable care to detect when actions or behavior of a member-coach are detrimental to athletes;

d. Failing to exercise reasonable care to detect that actions or behavior of a USTA member-coach demonstrate noncompliance with USTA Bylaws, Rules and Regulations or Policies and Procedures, and State Law;

e. Failing to exercise appropriate and reasonable care in granting coaching privileges to Coach Leroy Thomas Joyner, to perform unsupervised/unchaperoned coaching and supervision of USTA athletes;

f. Creating a culture of secrecy and deceit in the coaching staff to harbor and conceal known acts and propensities of other coaches that harass and abuse USTA athletes.

166. As approximate result of Defendants' negligent supervision, training, and retention, the Plaintiff was injured and damaged as follows: Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants USTA and USTA Development and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT SIX
## NEGLIGENCE & WANTONNES
## (ALABAMA, LOUISIANA, and SOUTH CAROLINA)

167.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

168.    A special relationship existed between said Defendants USTA and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged in and/or permitted the sexual abuse of a minor athlete; and/or to

34

otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

169.    A special relationship existed between Defendant USTA Development and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

170.    A special relationship existed between Defendant Grassroots Tennis Association and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and InDepth Academy, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules,

regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged in and/or permitted the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

171. A special relationship existed between Defendant InDepth Academy and Plaintiff, as well as a relationship of control over Leroy Thomas Joyner, Dorothea Joyner and the Grassroots Tennis Association, whereby all of the said Defendants owed Plaintiff a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor members; institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and educate its members and minor members' parents on detecting indicia of predatory behaviors and/or reporting to the legal authorities any reasonable suspicion of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify

36

and warn minor athlete members and their parents of member coaches that have engaged  in and/or permitted  the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

172.   A special relationship existed between Defendant Dorothea Joyner and Plaintiff, as well as  a relationship  of control  over  Leroy Thomas Joyner, InDepth Academy,  and the Grassroots Tennis Association, whereby all of the said Defendants owed  Plaintiff  a duty to, *inter alia,* protect her from sexual assault by their member coach; employ or retain suitable coaches to whom they entrusted the care of their minor  members;  institute  and  enforce  appropriate policies, procedures, rules, regulations, and requirements necessary to  prevent inappropriate sexual conduct directed to their minor members by coaches; to adequately train and   educate  its members  and  minor  members' parents  on detecting  indicia of predatory behaviors and/or  reporting to the legal authorities  any reasonable  suspicion  of child abuse; to investigate complaints of sexual abuse against member coaches; to suspend and/or revoke the  memberships of member coaches and organizations that have engaged in and/or permitted the sexual abuse of a minor athlete; to notify and warn minor athlete members and their parents of member coaches that have engaged  in and/or permitted  the sexual abuse of a minor athlete; and/or to otherwise conduct themselves with due care so as to avoid injuring Plaintiff.

173.   Said Defendants, and each of them, breached said duties by, *inter alia,* failing to  appropriately screen Leroy Thomas Joyner and/or Dorothea Joyner before approving his and her membership/coach status, permitting Leroy Thomas Joyner and/or Dorothea Joyner to coach minor athletes and operate a tennis organization

37

geared toward instructing minors despite Leroy Thomas Joyner and/or Dorothea Joyner's history of engaging in, and/or aiding and abetting the engagement in, sexual misconduct with minors; permitting Leroy Thomas Joyner and/or Dorothea Joyner's repeated violation of relevant rules, regulations, ordinances or statutes designed to protect minors from abuse; failing to detect Leroy Thomas Joyner and/or Dorothea Joyner's course of inappropriate behavior towards plaintiff and/or her preferential treatment of her; failing to appropriately educate and/or train Plaintiff, her parents, and other members on detecting and/or deterring inappropriate conduct toward minors under their care; failing to exercise control over Leroy Thomas Joyner and/or Dorothea Joyner and/or to intervene on Plaintiff's behalf; failing to implement and/or enforce proper policies and procedures for the protection of minors; and failing to notify and warn Plaintiff or her parents that Leroy Thomas Joyne and/or Dorothea Joyner posed a significant risk to plaintiff's safety.

174.   As approximate result of Defendants' negligence and wantonness, the Plaintiff was sexually assaulted, groomed, and molested and the Plaintiff was injured and damaged as follows: Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants USTA, USTA Development, Grassroots Tennis Association, Dorothea Joyner, InDepth Academy and Fictious Defendants for compensatory damages, prejudgment

38

interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT SEVEN
## SEXUAL ASSAULT and BATTERY
## (ALABAMA, LOUISIANA, and SOUTH CAROLINA)

175.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

176.    Due to the special relationship as Plaintiff's tennis coach, Defendant Leroy Thomas Joyner owed a duty to conduct himself with due care for the safety of Plaintiff. This duty included, but was not limited to, an obligation to comply with all USTA and USTA Development rules and regulations.

177.    Defendant Leroy Thomas Joyner used his position of trust and authority as a tennis coach to groom Plaintiff for his sexual advances and thereafter committed lewd and lascivious acts upon Plaintiff and/or sexually abused, molested, and/or improperly touched plaintiff.

178.    The aforementioned acts and conduct of Defendant Leroy Thomas Joyner constitutes assaults on the Plaintiff and caused her to be put in fear of her own safety and physical well-being, to undergo great mental suffering and anguish, shame, embarrassment, and humiliation.

179.    Defendants USTA, USTA Development, Grassroots Tennis Association, Dorothea Joyner, and InDepth Academy knew of, tolerated, participated in, authorized or ratified the wrongful acts or conduct of Leroy Thomas Joyner.

180.    As a legal result of the foregoing, Plaintiff was injured in health, strength and activity, sustaining bodily injuries and shock and injury to her nervous system and

39

person, all of which caused and continue to cause plaintiff great mental, emotional, physical and nervous pain and suffering. Plaintiff was thereby required to and did employ physicians and counselors for examination, treatment and care, and incurred, and will continue in the future to incur, medical and incidental expenses, including counseling costs, the exact amount of which is unknown to Plaintiff at this time.

181.    As a direct and proximate result of the intentional acts of Defendants acting by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants Leroy Thomas Joyner USTA, USTA Development, Grassroots Tennis Association, Dorothea Joyner, InDepth Academy and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## COUNT EIGHT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALABAMA, LOUISIANA, and SOUTH CAROLINA)

182.    Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

183. Defendants' own conduct and conduct by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, who sexually assaulted and battered the Plaintiff, was deliberate or reckless infliction of mental suffering.

184. The conduct of said Defendants including, but not limited to, sexual assault and battery were outrageous and was so extreme as to exceed all bounds of decency usually tolerated in a civilized community.

185. In performing such lewd and lascivious acts upon plaintiff, said defendants acted with reckless disregard of the probability that plaintiff would suffer physical and/or emotional distress.

186. The conduct caused Plaintiff emotional distress, which distress was severe. Defendants conduct and actions in acting by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, was the direct and proximate cause of severe emotional distress to Plaintiff.

187. As a direct and proximate result of the intentional acts of Defendants acting by and through its employee/agents, including, but not limited to, Coach Leroy Thomas Joyner, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants Leroy Thomas Joyner USTA, USTA Development, Grassroots Tennis Association,

Dorothea Joyner, InDepth Academy and Fictious Defendants for compensatory damages, prejudgment interest, punitive damages, attorneys' fees, costs of this action, and such other relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Respectfully submitted,

*/s/ Alison Hawthorne*
Alison Hawthorne (GA BAR 146170)
Larry A. Golston
Leon Hampton, Jr.
Jessi M. Haynes
Attorneys for Plaintiff

**OF COUNSEL:**
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:    (334) 954-7555
Alison.Hawthorne@beasleyallen.com
Larry.golston@beasleyallen.com
Leon.hampton@beasleyallen.com
Jessi.haynes@beasleyallen.com

*/s/ L. Shane Seaborn*
L. Shane Seaborn
Attorney for Plaintiff

**OF COUNSEL:**
**PENN & SEABORN LLC**
1442 S. Eufaula Avenue

42

Eufaula, Alabama 36027
(334) 687-5555 – telephone
(334) 687-5111 – facsimile
sseaborn1@yahoo.com