**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **HALEIGH K. MCLENDON,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **VS.** | * | |
| | * | **CASE NO. 2:25-CV-00745** |
| **UNITED STATES TENNIS ASSOC. INC,** | * | |
| **USTA PLAYER DEVELOPMENT INC.,** | * | |
| **GRASSROOTS TENNIS ASSOC., LLLP,** | * | **JURY DEMAND** |
| **IN DEPTH ACADEMY,** | * | |
| **DOROTHEA L. JOYNER,** | * | |
| **LEROY THOMAS JOYNER, Jr.,** | * | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO REMAND**

Pursuant to this Court's Text Order on October 14, 2025 (Doc. 14), Plaintiff Haleigh McLendon ("Plaintiff") submits this Reply in support of her Motion to Remand (Doc. 12) this action to state court in the Circuit Court of Barbour County, Alabama.

**Summary of Argument**

This case was improperly removed by Defendants United States Tennis Association ("USTA") and United States Tennis Association Player Development Inc. ("USTA Development" and collectively "USTA Defendants"). First, at all Relevant Times to this litigation Defendant Leroy Thomas Joyner Jr. ("Mr. Joyner") has been and is a Citizen of Alabama. Second, Mr. Joyner did not consent to removal. In examining the USTA Defendants' foundational argument for removal, a chronology of relevant events makes it clear that Mr. Joyner is a legal resident of Alabama. As such, because one of the Defendants is a resident of this state, diversity jurisdiction does not exist. To recap, the pertinent events are as follows:

- On December 12, 2018, Plaintiff Leroy Thomas Joyner, filed a complaint against Shelly Sanders, Larry Sanders, Sandra B. Hughes-Graham, and Tammy Judah in the United States District Court for the Middle District of Alabama (See Case 2:18-cv-01035-WKW-JTA, "the Sanders Litigation").

- on February 12, 2020, with aggravated sexual abuse of a child between the age of 12 and 16, in violation of 18 U.S.C. § 2241(c).

- On June 10, 2020, Joyner was placed on Home Incarceration.

- On July 7, 2020 this Court, *sua sponte*, ordered Joyner to provide information to determine whether his citizenship at the time of filing the Sanders Litigation.

- On August 14, 2020, Joyner filed his response to the Court's May 19 202 order.

- On August 24, 2020 this Court held Joyner had not established he was a resident of Georgia and "has not established a basis for diversity jurisdiction over his state law claims." (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44 at p. 9).

- On September 11, 2020 this court adopted Judge Adams' Report and Recommendation ("R&R").

- On October 29, 2020, Leroy Joyner filed the amended complaint in the South Carolina litigation.

Likewise, neither Defendant Grassroots Tennis Association ("Grassroots") nor Defendant InDepth Academy ("InDepth") consented to removal at the time the case was removed.  Further, the USTA Defendants failed to establish by a preponderance of evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000.

## Argument

### A.  Motion to Remand Standard of Review

Plaintiff hereby adopts and incorporates the standard of review in her Memorandum in Support of Motion to Remand ("*Memo in Support*") as if set forth here. (Doc. 12-1, pp. 6-8).

### B.  Diversity Jurisdiction Does Not Exist

### 1.  Mr. Joyner is a Citizen of Alabama

As both this Court and the Eleventh Circuit have held "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." (*See* Exhibit 1, [Case 2:18-cv-01035-WKW-JTA] Doc. 44 at p. 7; citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342, n.12 (11th Cir. 2011) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (internal citations omitted). As shown below, Mr. Joyner's domiciliary was legal and factually determined to be in Alabama.

### a. The Evidence And The Record Confirm That At All Material Times Leroy Joyner Was a Legal Resident of Alabama

The USTA Defendants' arguments that Mr. Joyner became a resident of Georgia in 2018 are without merit. Mr. Joyner admitted he maintained his address in Alabama until 2020. In her affidavit, Dorothea Joyner asserts that she lived in a Columbus, Georgia motel with her daughter in 2015 and didn't obtain a permanent apartment in Columbus until November 1, 2016. (Doc. 1-5, ¶¶ 5&8). In a filed brief with this Court, Mr. Joyner stated that once his family moved to Columbus, Georgia "he (Leroy Joyner) would stay at their residence in Ariton, Alabama ('Ariton') on Monday through Wednesday night and reside in Columbus on Thursday through Sunday night."[1] (Doc. 12-2, p.2). Because Mrs. Joyner's lease at 1016 Peachtree Drive didn't begin until November 1, 2016, Mr. Joyner's reference to residing in both Alabama and Georgia for over (4) years indicates that he was describing his living arrangement up and until at least 2020. This places Mr. Joyner residing in Alabama beyond any moving of tennis operations from Alabama and beyond the filing of the Sanders litigation initiated by Mr. Joyner on December 12, 2018.

---

[1] Defendant Leroy Joyner says the family moved to Columbus, Ga in the summer of 2015 but this assertion is contradicted by Defendant Dorthea Joyner who says Leory Joyner did not began commuting from Alabama to Georgia on a routine basis until after she obtained the Columbus, Georgia apartment in November 2016.

Second, contrary to the USTA Defendants' arguments, Mr. Joyner did not do all he could to make Georgia his legal domicile. Instead, Mr. Joyner fought to secure his property rights as an Alabama citizen. Indeed, his litigation in South Carolina evidences his intent to remain domiciled in Alabama. Mr. Joyner filed the South Carolina litigation on May 4, 2020, and amended his complaint on October 29, 2020. (Docs. 12-9 and 12-10).  In that litigation, he sued the South Carolina Child Support Services Division ("CSSD") and the South Carolina Department of Motor Vehicles ("SCDMV") for what Mr. Joyner contends unlawfully caused his Alabama driver's license's suspension for an invalid child support payment dispute. (*Id*.) Specifically, Joyner alleged he had a property interest in his Alabama driver's license and he was entitled to compensatory damages for the property loss he "suffered and continues to suffer" – e.g. from the date of the loss [March 8, 2015] to the date of the suit was filed [October 29, 2020]. (See Doc. 12-9 and 12-10, ¶¶12; 51, 94, 103, and 107).

In order for Joyner to have an Alabama driver's license (and a property interest in said license) he would have to be a legal resident of Alabama. See Ala.Code 32-6-1 (2024).  Further, by claiming his Alabama driver's license as a property interest, Mr. Joyner indicated that it was his intent to remain domiciled in Alabama. As stated in the *Memo in Support*, if Joyner were truly domiciled in Georgia or in any other state besides Alabama, he would have no property interest in an Alabama driver's license and no property loss associated with said license as he continued to allege October 2020 when he amended the South Carolina complaint.

Joyner's filing of the South Carolina litigation in October 2020 is pivotal because, as previously noted, Mr. Joyner was charged on February 12, 2020, by the United States in the Middle District of Alabama with aggravated sexual abuse of a child between the age of 12 and 16, in violation of 18 U.S.C. § 2241(c). (Case No. 1:20-cr-00033, Doc. 1). On June 10, 2020, Joyner was

placed on Home Incarceration with electronic monitoring by this Court. (Doc. 12-11, Detention Hearing Transcript, 114:3-15). Thus, while he was charged and incarcerated, Mr. Joyner was litigating to secure property rights only afforded to him as an Alabama citizen. Based on the evidence and chronology of events, Mr. Joyner was a legal resident of Alabama at the time of his Home Incarceration and, therefore, remains an Alabama resident.

**b. The 2018 Sanders Litigation Is Extremely Relevant Because Evidence Adduced In That Matter Confirms That At All Material Times Mr. Joyner Was A Legal Resident Of Alabama**

The USTA Defendants' arguments about this Court's rulings on Mr. Joyner's citizenship in the Sanders litigation misapply the facts of the decisions. First, in her *Memo in Support*, Plaintiff pointed out that the issue was whether Mr. Joyner was a citizen of Georgia when he filed the Sanders Litigation on December 12, 2018. (*See* Doc. 12, p. 10*; See also* Doc. 12-2, [Case 2:18-cv-01035-WKW-JTA] Doc. No. 40.) What the USTA Defendants willfully ignore is that the facts concerning where Mr. Joyner was domiciled didn't change between December 12, 2018 and August 12, 2020 when he filed his brief. Although the Court framed its inquiry as one of Joyner's citizenship on December 12, 2018, Mr. Joyner's response went farther and addressed where he was domiciled beyond that date. Mr. Joyner provided that although he ***"resided at both [the Ariton, Al and Columbus, Ga] addresses weekly** <u>**for over (4) years**</u>,* he (Mr. Joyner) was unable to change his drivers license or enter into a any residence activities due in part to ongoing litigation in the US District Court in South Carolina (6:20-cv-01736-DCC-JDA)." (See Doc. 12-4, [Case 2:18-cv-01035-WKW-JTA,  Doc. No. 42]). To further show the Court that he resided in Georgia Mr. Joyner provided the address of 1016 Peachtree Drive, Columbus, Georgia.[2] As noted above, Mr. Joyner's reference to residing in both Alabama and Georgia ***for over (4) years*** indicates that he (Joyner)

---

[2] See (Doc. 12-6, [Case 2:18-cv-01035-WKW-JTA Doc. 42-2]).

was describing his living arrangement up and until at least 2020; far beyond the filing of the Sanders lawsuit on December 12, 2018.

Consequently, while the Court's initial inquiry concerned Mr. Joyner's domiciliary status as of December 12, 2018, based on Joyner's Response Brief, the Court considered evidence post-December 2018 in deciding that Mr. Joyner was not domiciled in Georgia. Specifically, in reaching its holding, this Court found that for over four years Mr. Joyner

> "commuted to Alabama to teach lessons" and would stay "at their residence in Ariton, Alabama on Monday through Wednesday night" and then would return to Georgia to reside there "Thursday through Sunday night." (Doc. No. 42 at 1-2) (emphasis added). Plaintiff also submits that he "filed state and federal taxes in the [S]tate of Alabama," seems to have a suspended Alabama drivers license "since March 2015," and has been unable to obtain a Georgia drivers license "due to legal circumstances." (*Id*. at 2.) Plaintiff asserts that "he has resided in the [S]tate of Georgia but has not been able to transfer his residential binding documents to the state due to a legal dispute with the State of South Carolina." (*Id*.)

Based on the post-December 12, 2018, evidence, this Court held "[Mr. Joyner's] assertion that he is a resident of Georgia is not probative. The court therefore finds that [Mr. Joyner] has not established a basis for diversity jurisdiction over his state law claims." (Doc. 12-2, at 8-9). Stated differently, this Court considered evidence from Mr. Joyner in his Response and determined that not only was Mr. Joyner not a Georgia domiciliary as of December 12, 2018, he wasn't a Georgia domiciliary as of August 12, 2020 – the date the Response Brief was filed. (See Doc. 12-4).

This conclusion is evidenced by the fact Mr. Joyner did not amend his complaint in the Sanders Litigation nor did this Court order him to do so. As referenced above, the lawsuit against the Sanders defendants was filed on December 12, 2018. There, Mr. Joyner alleged various Alabama state law claims that arose and occurred between October 30, 2018, through November 26, 2018. (*See* Case 2:18-cv-01035-WKW-JTA, Doc. 1, ¶¶35-60 and ¶¶77-178). Each of Mr. Joyner's state law claims carried a two-year statute of limitations.

Consequently, if Mr. Joyner had established his domicile in Georgia after December 12, 2018, this Court could have simply permitted Mr. Joyner to amend his complaint. Or, once the Sanders complaint asserting Mr. Joyner's state law claims was dismissed without prejudice, Mr. Joyner could have simply re-filed the Sanders lawsuit and provided evidence to the Court that after December 12, 2018, he'd established his domicile in Georgia. Neither occurred because Mr. Joyner's domiciliary between December 13, 2018, and June 9, 2020 was the same as it was from the summer of 2015 to December 12, 2018; to wit: Mr. Joyner was not domiciled in Georgia but was a domiciliary of Alabama. Consequently, this Court's findings that Mr. Joyner had "not established a basis for diversity jurisdiction over his state law claims" encompassed Mr. Joyner's domiciliary status up to and including August 24, 2020, the date of the R&R. Since he was placed on Home Incarceration on June 10, 2020, Mr. Joyner was necessarily domiciled in Alabama prior to Home Incarceration.

Once this Court adopted the R&R, Mr. Joyner was precluded from relitigating his domicile for purposes of diversity jurisdiction. "Four requirements must be met for issue preclusion to apply: (1) the issue is identical to the issue from the prior litigation, (2) the issue was actually litigated in the prior case, (3) the prior determination of the issue was "a critical and necessary part of the judgment in that action," and (4) the party against whom issue preclusion is asserted "had a full and fair opportunity to litigate the issue in the earlier proceeding." *Goodin v. Fidelity Nat. Title Ins. Co.*, 491 Fed.Appx. 139, 142 (11th Cir. 2012). Here, Judge Adams and Judge Watkins considered the exact issue in this matter with no demonstrated or intervening change in residential facts or circumstances – Mr. Joyner's citizenship for purposes of diversity jurisdiction. The issue was "actually litigated" because the R&R was issued after Joyner submitted briefs and statements in support of his claim. The determination of Joyner's citizenship was "critical and necessary" to

the judgement because Judge Adams' conclusion that Joyner is an Alabama citizen established the basis for concluding the court lacked subject matter jurisdiction.

Lastly, Joyner had a "full and fair opportunity" to litigate the issue because he filed briefs and declarations in support of his argument. Therefore, Joyner is precluded from relitigating his citizenship. Because Joyner's citizenship is factually and legally established as being in Alabama, Defendants removal of this case is in violation of 28 U.S.C. § 1441(b)(2) and the Plaintiff's Motion to Remand is due to be granted.

### c. Mr. Joyner's Domicile was Alabama Before His June 2020 Home Detention

The USTA Defendants' arguments that Mr. Joyner established domicile in Georgia years before his June 10, 2020, Home Incarceration are without merit. As noted above, the same evidence that proved Mr. Joyner was not domiciled in Georgia as of December 12, 2018, also established that Mr. Joyner was not domiciled in Georgia at the time of Judge Adams' R&R on August 24, 2020 – a decision reached a month and a half after Mr. Joyner's Home Incarceration. (See Doc. 12-2, pp. 5-9). A prisoner's place of incarceration does not establish citizenship. *Polakoff v. Henderson,* 370 F.Supp. 690, 693 (N.D.Ga.), *aff'd,* 488 F.2d 977 (5th Cir.1974). Instead, a ***prisoner's citizenship is determined by his domicile prior to incarceration.*** *Polakoff,* 370 F.Supp. at 693; *Denlinger v. Brennan,* 87 F.3d 214, 216 (7th Cir.1996) ("A forcible change in a person's state of residence does not alter his domicile; hence the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison."); *Lima v. Diaz,* No. 95–734–CIV–T–17B, 1995 WL 75922, at *1 (M.D. Fla. Dec.18, 1995) (emphasis added). This Court has already held that evidence before it in August 2020 was insufficient to establish Georgia domicile and, by so doing, established that Mr. Joyner was domiciled in Alabama. Accordingly, because the evidence proved Mr. Joyner was domiciled in Alabama prior to his Home

Incarceration and Joyner has remained continuously incarcerated from June 10, 2020 to the present, the USTA Defendants' arguments are due to be rejected and this Court should remand the instant matter.

### d. Mr. Joyner's Pleadings Show He Made Efforts To Renew His Alabama License Prior to his 2020 Home Incarceration.

The USTA Defendants contend that Mr. Joyner demonstrated an intent to remain in Georgia by making substantial efforts to obtain a Georgia driver's license. This assertion, however, is directly contradicted by Mr. Joyner's complaints in the South Carolina litigation and Joyner's 2019 pro se complaint. In these virtually identical complaints, Joyner states that prior to his 2020 court-ordered Home Incarceration, he attempted to renew his Alabama license, not Georgia. [Doc. 16-3; Exhibit C; pg. 12; ¶ 52]. In the South Carolina litigation, Joyner explained that his Alabama license was suspended for failure to pay child-support. (Docs. 12-9 and 12-10, ¶51). The Defendants argue this demonstrates his efforts to obtain a Georgia license. The complaints contain no statement indicating that Joyner attempted to secure a Georgia license. The fact that Joyner was attempting to renew his license in Alabama as early as 2015 and continued in his efforts to try and regain his Alabama license up to and through October 2020, strongly supports the conclusion that he intended to remain domiciled in Alabama, not Georgia. This is reinforced by the 2020 finding that Joyner's connections to Georgia were insufficient to establish domicile there, and that he was, in fact, domiciled in Alabama. Considering the totality of the evidence, it is more likely than not that Joyner was domiciled in Alabama and complete diversity does not exist in this case.

### 2. Consent From All Defendants, Including Mr. Joyner, Was Not Timely Made On The Record, Making The Removal Invalid

### a. Mr. Joyner Cannot Have Properly Consented At The Time of The Removal.

As the USTA Defendants point out in their *Objections and Response to Plaintiff's Motion to Remand* ("*Response*"), the relevant jurisdictional facts are those that exist "at the time the removal is initiated." *Response*, at 18 (citing *Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d. 1287, 1290-1291 (11th Cir. 2000) (overruled on other grounds), as cited in *Cartee v. Precise Cable Const., Inc.*, 2005 WL 2893951 at FN4 (S.D.Ala. Nov. 1, 2005) (emphasis in *Response*). The USTA Defendants further point out that a subsequent change, or even declaration, is not relevant. Thus, the second declaration provided for the first time in the USTA Defendants' *Response* to Mr. Joyner's *Omnibus Motion to Remand* ("*Omnibus*") should not be considered.

This Court has held that "an official, **affirmative and unambiguous** joinder or **consent** to ... **[the] notice of removal**" is required for a defendant to properly consent to removal. *Lampkin v. Media General, Inc.*, 302 F.Supp.2d 1293, 1295 (M.D. Ala. 2004) (citation omitted) (emphasis added). And the Eleventh Circuit holds that district courts may consider post-removal evidence in assessing removal jurisdiction. See *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). Here, Mr. Joyner's *Omnibus* is direct evidence that he did not consent to removal.

Mr. Joyner filed his *Omnibus* on September 22, 2025. (See Doc. 9). In the *Omnibus*, Joyner states unequivocally that at the time of removal it was his expectation and intent that the case would be removed to the U.S. District Court for the Middle District of Georgia; not removed to the U.S. District Court for the Middle District of Alabama.  (See Doc. 9, ¶4). In other words, Mr. Joyner never gave his consent to the removal to this Court. (*Id*.) In fact, Mr. Joyner concedes that the allegations of Plaintiff's complaint asserting that Mr. Joyner is a citizen of Alabama are correct. (See Doc. 9, "Argument," Section I).  In addition to the foregoing, the USTA Defendants overstate the rules from *Poore* and *Cartee*. In *Poore*, the Eleventh Circuit Court of Appeals was faced with deciding whether an amendment to § 1447 changed the standard for when jurisdiction is

established in a removed case.  It held the amendment did not change the time and "the proper inquiry is still whether the court had jurisdiction at the time of removal."

Besides, the facts of this case go beyond a simple change of one's mind.  What Mr. Joyner has alleged calls into question the validity of the consent.  In other words, he did not just change his mind, he never gave actual consent because he did not have the document before him to see what he was consenting to happen. Unlike the *pro se* Defendant whose later withdrawal of consent was at issue in *Cartee*, Mr. Joyner's information does "suggest [the consent] was invalid when originally filed."[3]  In essence, his Declaration is invalid.  It was not just withdrawn; the consent never existed.  Any other Declaration from Mr. Joyner is a subsequent declaration and 1) should be stricken and 2) has likewise been refuted by Mr. Joyner.  In fact, the simple existence of a second declaration signed after Mr. Joyner's drafting of his *Omnibus* evidences that he thought the second declaration contained different information than the first.

The implication is that the second declaration corrected the errors his *Omnibus* highlighted in the first.  Its existence does not change the invalidity of consent filed with the Declaration used in support of removal and does not refute Mr. Joyner's *Omnibus*.  Indeed, the second declaration's alleged consent to removal has been refuted by Mr. Joyner.  On November 12, 2025, Mr. Joyner filed his "Response in Support of Remand." (See Doc. 18). In his Response in Support of Remand, Mr. Joyner states that ***he has not consented to a removal*** to this Court.  (See Doc. 18, ¶¶ 6-7).

### b.  Other Defendants Did Not Give Written Consent At The Time of Removal.

All Defendants must consent to removal within 30-days of the later-served Defendant's receipt of the initial pleading. *Alabama Mun. Workers Comp. Fund, Inc. v. P.R. Diamond Prods., Inc.*, 234 F. Supp. 3d 1165, 1167 (N.D. Ala. 2017) (citing *Bailey v. Janssen Pharmaceutica, Inc.*,

---

[3] *Response*, at 18 (citing *Cartee*, 2005 WL 2893951 at n. 4).

536 F.3d 1202, 1207 (11th Cir. 2008) ("The unanimity rule ... requires that the later-served defendant receive the consent of all then-served defendants at the time he files his notice of removal."); *see also Chakra 5, Inc. v. City of Miami Beach*, 968 F.Supp.2d 1210, 1212 (S.D. Fla. 2013) (holding that § 1446, as amended in 2011, requires an earlier-served defendant to "provide its consent prior to the expiration of the thirty-day window within which the later-served defendant must file its notice of removal"). The so-called "unanimity requirement," in 28 U.S.C. § 1446(2)(A), "provides that 'each defendant must join in the removal by signing the notice of removal *or by explicitly stating for itself its consent on the record, either orally or in writing* within the 30–day period prescribed in 28 U.S.C. § 1446(b).'" *Gabriel v. Life Options Int'l, Inc.*, 2015 WL 1967498, at *7 (S.D. Ala. Apr. 30, 2015) (internal citations omitted) (emphasis added).[4] Attestation by a different party is insufficient to demonstrate consent under the unanimity requirement.  Specifically, "there must be some indication *to the court* that the defendant consents." *Alabama Mun. Workers Comp. Fund, Inc*, 234 F. Supp. at 1168 (quoting *Beard v. Lehman Bros. Holdings, Inc.*, 458 F.Supp.2d 1314, 1320 (M.D. Ala. 2006 (emphasis in *Beard*)). And "the mere assertion in a removal petition that all defendants consent to removal fails to constitute sufficient joinder." *Beard*, 458 F.Supp.2d at 1319-20 (quoting *Newman v. Spectrum Stores, Inc.*, 109 F.Supp.2d 1342, 1345 (M.D. Ala. 2000) (quoting *Prod. Stamping Corp. v. Md. Cas. Co.*, 829 F.Supp. 1074, 1078 (E.D. Wis. 1993)). The removal in this case makes exactly this

---

[4] *See also Barr v. Jefferson Cnty. Barber Comm'n*, No. 2:16-CV-1340-VEH, 2016 WL 6822087, at *1 (N.D. Ala. Nov. 18, 2016); *see also Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516 (6th Cir.2003) ("all defendants in the action must join in the removal petition or file their consent to removal in writing within thirty days" after service of summons or other paper establishing basis for removal); *Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1262 n. 11 (5th Cir.1988) ("there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to" removal); *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.,* 955 F.2d 924, 928 (4th Cir.1992); *Newman,* 109 F.Supp.2d at 1345 (unanimity must be communicated to court within 30 days); *Miles v. Kilgore,* 928 F.Supp. 1071, 1076 (N.D.Ala.1996) (remand is necessary "when one of the defendants fails to join in, file his own, or officially and unambiguously consent[ ] to, a removal petition within 30 days of service").

"mere assertion" that "fails to constitute sufficient joinder." *Id.* Paragraph 8 provides "<u>Consent</u>: All named Defendants that have been served in this matter, consent to this removal." The only attached declarations are the one discussed, above, from Mr. Joyner (which is invalid) and that of his wife, co-Defendant Dorothea Joyner.

In short, each Defendant "must join in the removal by signing the notice of removal *or by explicitly stating for itself* its consent *on the record,* either orally or in writing, within the 30-day period prescribed in 28 U.S.C. § 1446(b)." *Yezzi v. Hawker Fin. Corp.*, No. CIV.A. 09-0537-KD-N, 2009 WL 4898380, at *3 (S.D. Ala. Dec. 14, 2009) (emphasis added) (*quoting Diebel v. S.B. Trucking Co.,* 262 F. Supp .2d 1319, 1328 (M.D.Fla.2003)). There is no support "[for] the rather novel idea that consent to removal need not even be made to the court, but is effective if merely communicated between counsel." *Id*. "[I]t is simply not enough that the removing party in its notice of removal represents that the other defendants consent or do not object to the removal." *Newman*, 109 F. Supp. 2d at 1346 (M.D. Ala. 2000)(quotation omitted) (quoted in *SJS, INC. v. Recticel N. Am., Inc.*, No. CV 07-B-1892-W, 2008 WL 11381464, at *2 (N.D. Ala. Sept. 30, 2008); *see Miles*, 928 F. Supp. at 1076 ("[I]n a civil action where there are several served defendants[,] the mere bald, unsupported assertion in a notice of removal by one removing defendant that all the other defendants consent to the removal fails to constitute a sufficient consent to the removal."); *see also Kisor v. Collins*, 338 F. Supp. 2d 1279, 1281 (N.D. Ala. 2004) ("Statutes that limit federal jurisdiction are always strictly construed against the removing party. . ..").

Here, not only has Mr. Joyner highlighted his alleged consent was invalid by attesting he never read it and never intended to consent to removal to this Court[5], but the removal further fails to satisfy the unanimity requirement.  For the removal to be valid, every Defendant needed to

---

[5] (See Doc. 9., FN 1).

expressly state on the record consent to removal no later than September 25, 2025 (thirty-days after the last defendant was served). Neither InDepth nor Grassroots expressed consent on their own behalf and on the record, either orally or in writing, within the timeframe specified by 28 U.S.C. § 1446.   Assuming they are valid consent, both InDepth's and Grassroots' declarations were signed October 31, 2025, and filed on November 3, 2025. These consents are far too late; they were signed 36-days after the deadline and filed 39-days late. As for the supposed second declaration from Mr. Joyner, it was not on the record until October 14, 2025, when the USTA Defendants opposed Mr. Joyner's *Omnibus*. It too, therefore, was untimely and has been rejected by Leroy's Joyner's assertion in Response in Support of Remand. (See Doc. 18, ¶¶ 6-7).

The removal is, therefore, procedurally invalid.   When there is doubt, as there is in this case, remand should be granted because "uncertainties are resolved in favor of remand." *Burns v. Windsor Ins.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (citations omitted).   If procedural defects are present—and there are, here—remand is appropriate. *See* 28 U.S.C. § 1447(c).

**3.   Defendants Have Failed to Substantiate the Amount in Controversy Exceeds $75,000.**

In *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007), the Eleventh Circuit held that "in the removal context, where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Id*. at 1208. (Emphasis Added). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *See also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Here, there is no evidence presented on the face of the complaint from which this Court can say the value of the Plaintiff's claims exceed $75,000..

Defendants' arguments that Plaintiff's complaint alleges past, present and future harm as a result of sexual abuse does not in any way establish a specified dollar amount for the Plaintiff's injuries.   The Complaint does not demand any specified dollar amount.   The Defendants' conjecture that certain allegations could exceed the $75,000 jurisdictional amount is pure speculation and is insufficient to establish that diversity jurisdiction exists. The Eleventh Circuit holds that speculation does not satisfy a removing party's burden of proving beyond a preponderance of the evidence that the amount in controversy met the jurisdictional threshold. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir.2003); *See also Leonard v. Enterprise Rent a Car,* 279 F.3d 967, 972 (11th Cir.2002); *Bradley v. Kelly Services, Inc*, 224 Fed. Appx 893, 895 ( 11th Cir. 2007). Because Defendants have only provided assumptions and speculation, Defendants have failed to prove that the jurisdictional amount was met from the face of the complaint.  "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *See also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

Although District Courts may make "reasonable deductions," District Courts in Alabama have refused to engage in the former "punitive damage" general rule and "past precedent" general rule commonly used by defendants removing actions to federal district courts. *See Carswell v. Sears Roebuck & Co.*, 2:06-CV-01098-WKW, 2007 WL 1697003 (M.D. Ala. 2007); *Constant v. Int'l. House of Pancakes, Inc.*, 487 F.Supp.2d 1308 (N.D. Ala. 2007); *Howell v. Fields Realty, LLC*, 2:08-CV-492-WKW, 2008 WL 2705383 (M.D. Ala. 2008). In order to make a reasonable deduction, Defendants must first offer this Court something from which a deduction can be made beyond the Plaintiff's generalized statement of damages.  Here, in their *Response*, the Defendants

raise two arguments in support of their contention that a reasonable deduction shows the jurisdictional amount was met at the time of removal.  Both arguments are without merit.

The Defendants contend that the undersigned counsel and his law firm (Beasley Allen) advertises itself as successful in recovering over $32 billion dollars in verdicts and settlements on its website and because of this the undersigned counsel is aware of the potential for significant damages in sexual abuse cases. Next, the Defendants assert that the law firm of Miller and Zois, LLC advertises on its website that it has recovered settlements and verdicts in sexual abuse cases ranging from $500,000 to $25,000,000 dollars.  For several reasons, the Defendants references to the results of other cases resolved by Beasley Allen and Miller and Zois fail to establish that Defendants met their jurisdictional burden under *Lowery*.

First, the reference to Beasley Allen's verdicts and settlements does not identify the resolution of a single sexual abuse or sexual assault case of that firm or the undersigned. Second, with respect to the reference to the Miller and Zois, the Defendants make no attempt "to link [the facts of those cases] to the facts of the [this] case." *Pretka*, 608 F.3d at 753 (citing *Lowery,* 483 F.3d at 1221); *See also Erby v. Pride*, 2016 WL 3548792, *4 (N.D. Ala. June 30, 2016) (holding that $75,000 not established by removing defendants where defendants could not show a link between other tort cases and the case at issue). Third, none of the cases attributed to Miller and Zois provide the age of the settlements or verdicts.  This failure makes them suspect as reliable indicators of amount in controversy when punitive damages are at stake. *See Erby*, 2016 WL 3548792 at *4.  Instead of providing the Court with reasonable deductions, the Defendants have yet again provided nothing but speculation and speculation does not satisfy the preponderance of evidence standard.  See *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d at 807.

## CONCLUSION

For the foregoing reasons, the USTA Defendants have not established the existence of diversity jurisdiction, nor have they established that all Defendants – specifically Defendants Mr. Joyner, Jr., Grassroots, and InDepth – consented to removal. Thus, Plaintiff respectfully asks this Court to remand this proceeding to state court.

Respectfully submitted,

/s/ Larry Golston
Larry A. Golston
Leon Hampton, Jr.
Jessi M. Haynes
Attorneys for Plaintiff

**OF COUNSEL:**
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:     (334) 954-7555
Larry.golston@beasleyallen.com
Leon.hampton@beasleyallen.com
Jessi.haynes@beasleyallen.com

/s/ L. Shane Seaborn
L. Shane Seaborn
Attorney for Plaintiff

**OF COUNSEL:**
**PENN & SEABORN LLC**
1442 S. Eufaula Avenue
Eufaula, Alabama 36027
(334) 687-5555 – telephone
(334) 687-5111 – facsimile
sseaborn1@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/EFC participants, or if not a CM/ECF participant, it has been served by U.S. mail, postage prepaid.

Carter P. Schondelmayer
**PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.**
1111 Bay Avenue 3rd floor
P.O. Box 1199
Columbus, GA 31902-1199
carter@pagescrantom.com
*Counsel for Defendants United States Tennis Association, Inc.*
*and USTA Player Development, Inc.*

**Defendant Grassroots Tennis Association, LLLP**
1016 Peachtree Drive
Columbus, GA 31906
*c/o Caylin Edley,  Registered Agent*

**Defendant Dorothea L. Joyner**
1016 Peachtree Drive
Columbus, GA 31906

**Defendant In Depth Academy**
1016 Peachtree Drive
Columbus, GA 31906

**Defendant Leroy Thomas Joyner, Jr.**
Inmate #18079-002
Yazoo City Low FCI
POB 5000
Yazoo City, MS 39194